UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DAVID J. CAMPBELL,

                    Plaintiff,

v.

CITY OF BINGHAMTON, NY, City of New York;      3:24-CV-0067
JARED M. KRAHAM, The Mayor of Binghamton,   (AMN/ML)
New York; BINGHAMTON POLICE DEP'T,
A Department of Binghamton, New York;
CHIEF JOSEPH ZIKUSKI, Chief of Binghamton
Police Dep't; DETECTIVE BRYAN SOSTOWSKI,
A Detective of Binghamton Police Dep't; BROOME
COUNTY, A County of New York; BROOME
COUNTY CLERK'S OFFICE, A Dep't of Broome
County; JUDITH E. OSBURN, Chief Clerk of
Broome County Supreme Courts and County
Courts; HONORABLE JUDGE JOSEPH
A. CAWLEY, A 6th Dist. Judge of Broome County;
and UNKNOWN(S),

                  Defendants.

_____

APPEARANCES:                            OF COUNSEL:

DAVID JOHN CAMPBELL
  Plaintiff, *Pro Se*
5 Bradley Street
Binghamton, New York 13904

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>ORDER and REPORT-RECOMMENDATION</u>

      The Clerk has sent a complaint in the above captioned action together with an amended

application to proceed *in forma pauperis* and letter motion, filed by David John Campbell

("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 5, 6.)  For the reasons discussed below, I (1)

grant Plaintiff's amended *in forma pauperis* application (Dkt. No. 5), (2) recommend that

Plaintiff's Complaint (Dkt. No. 1) be dismissed (a) in part with leave to amend, and (b) in part

without leave to amend, and (3) recommend that Plaintiff's Letter Request/Motion (Dkt. No. 6)

be denied as moot.

## I.    INTRODUCTION

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that his rights were

violated by Defendants City of Binghamton, Jared M. Kraham, Binghamton Police Department,

Chief Joseph Zikuski, Detective Bryan Sostowski, Broome County, Broome County Clerk's

Office, Judith E. Osburn, Honorable Judge Joseph A. Cawley, and Unknown(s) (collectively

"Defendants").  (*See generally* Dkt. No. 1.)

As best as the undersigned can decipher, the Complaint alleges that on January 13, 2023,

Plaintiff attempted to report a crime against his private property and vehicle in Binghamton, New

York.  (Dkt. No. 1 at 4.)  The Complaint alleges that when Binghamton police officer Mushalla

(not a party to this action) responded to Plaintiff's report, he seized items from Plaintiff's home.

(*Id.*)  The Complaint alleges that on January 17, 2023, Defendant Sostowski sought judicial

intervention and obtained two TERPOs and two ERPOs without proper notice or due process.[2]

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest.
*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).

[2]    New York law provides for the issuance of a temporary emergency risk protection order
("TERPO") "upon a finding that there is probable cause to believe the respondent is likely to
engage in conduct that would result in serious harm to himself, herself or others."  N.Y. C.P.L.R.
§ 6342(1).  In addition, New York law provides for the issuance of a final emergency risk
protection order ("ERPO") upon a finding by "clear and convincing evidence, that the
respondent is likely to engage in conduct that would result in serious harm to himself, herself or
others."  N.Y. C.P.L.R. § 6343(2).

(*Id*. at 4-5.)  The Complaint alleges that all orders have since expired and Defendants have not returned Plaintiff's seized property.  (*Id*. at 5.)

Based on these factual allegations, Plaintiff asserts the following two causes of action: (1) a claim that Defendant Cawley conspired with Defendant Sostowski to deprive Plaintiff of his due process rights; (2) a claim that Defendant Sostowski extorted Plaintiff by obtaining a second TERPO and seizing Plaintiff's wife's rifle and ammunition without just cause.  (Dkt. No. 1 at 5-7.)  As relief, Plaintiff seeks, *inter alia*, (1) a declaration that Defendants violated Plaintiff's and his wife's constitutional rights, (2) removal of Defendants from their positions with an apology to the community, Plaintiff, and his wife for their actions, (3) compensatory damages in the amount of $20,000 per item seized from Plaintiff's residence per day beginning on January 13, 2024, and continuing until the present day, (4) punitive damages in the amount of $2,000,000, and (5) an order that Defendants "be added to *BRADY LIST*."  (Dkt. No. 1 at 7-9.)

## II.    PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[3]  After reviewing Plaintiff's

_____

[3]      The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

amended *in forma pauperis* application (Dkt. No. 5), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted.[4]

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief

---

[4]    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed.

A.      **Claims Against Defendant Judge Cawley**

I recommend that Plaintiff's claims against Defendant Judge Cawley be dismissed based on the doctrine of judicial immunity.

Under this doctrine, judges are absolutely immune from suit for claims seeking damages for any actions taken within the scope of their judicial responsibilities.  *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).  Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature).  However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff asserts claims that appear to arise from the efforts of Defendant Judge Cawley, in his capacity as a Broome County Court Judge, to assess whether Plaintiff was a danger to himself or others.  Defendant Judge Cawley is therefore immune from suit under the doctrine of judicial immunity.  As a result, I recommend that Plaintiff's claims against Defendant Cawley in his individual capacity be dismissed based on the doctrine of judicial immunity.

Moreover, I recommend that Plaintiff's claims against Defendant Cawley in his official capacity be dismissed pursuant to the Eleventh Amendment.  *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges."); *Aron v. Becker*, 48 F. Supp. 3d 347, 366-67 (N.D.N.Y. 2014) (McAvoy, J.) (dismissing the plaintiff's claims against a state court judge in his official capacity based on the doctrine of Eleventh Amendment immunity).

## B.     Claims Against Defendant Broome County Clerk's Office

"The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity."  *Russell v. Dunston,* 896 F.2d 664, 667 (2d Cir.1990) (citations omitted); *see also Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001).

Defendant Broome County Clerk's Office is immune from suit under the Eleventh Amendment because it is an arm of the State of New York.  *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (finding that the New York State Unified Court System, of which a county court is a part, is an "arm of the State," and therefore entitled to Eleventh Amendment

7

immunity); *Manko v. Steinhardt*, 11-CV-5430, 2012 WL 213715, at *3 (E.D.N.Y. Jan. 24, 2012) (dismissing claim against the Kings County Supreme Court of the State of New York Clerk's Office because it was barred by Eleventh Amendment immunity as an arm of the State of New York).

As a result, I recommend that Plaintiff's claims against Defendant Broome County Clerk's Office be dismissed as it is immune pursuant to the Eleventh Amendment.

### C.    Claims Against Defendant Binghamton Police Department

Defendant Binghamton Police Department—which is merely a department of municipal Defendant City of Binghamton, NY—is not amenable to suit.  *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.  Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")) ("Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal . . . department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).  As a result, I recommend that Plaintiff's claims against Defendant Binghamton Police Department be dismissed because it is not an entity amenable to suit.

### D.       Claims Against Defendant Judith E. Osburn

Absolute immunity extends to nonjudicial officers who perform acts that "are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004). Plaintiff's Complaint identifies Defendant Osburn as "Chief Clerk of Broome County Supreme Courts and County Courts." (Dkt. No. 1 at 4.) Quasi-judicial immunity protects court clerks and sheriffs from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." *Garcia v. Hebert*, 08-CV-0095, 2013 WL 1294412, at *12 (D. Conn. Mar. 28, 2013) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)), *aff'd*, 594 F. App'x 26 (2d Cir. 2015) (summary order), *cert. denied*, No. 14-9720 (Oct. 5, 2015).

As a result, I recommend that Plaintiff's claims against Defendant Osburn in her individual capacity be dismissed, because she is immune from suit.[5] *See Leftridge v. Judicial Branch*, 22-CV-0411, 2023 WL 4304792, at *9 (D. Conn. June 30, 2023) (dismissing the plaintiff's claims against the state court clerks of court based on the doctrine of quasi-judicial immunity where "their alleged actions arose out of or related to [plaintiff]'s child support and child custody proceedings."); *Braithwaite v. Tropea*, 23-CV-1431, 2023 WL 4207907, at *4 (E.D.N.Y. June 27, 2023) (citing *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against the Chief Clerks of several state courts based on the doctrine of judicial immunity))

---

[5]       In the alternative, I recommend that Plaintiff's claims against Defendant Osburn be dismissed because the Complaint fails to allege the personal involvement of her in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Here, although Plaintiff names Defendant Osburn as a party to the action, the body of the Complaint lacks any allegations of wrongdoing by her. (*See generally* Dkt. No. 1.) As a result, I recommend that, in the alternative, Plaintiff's claims against Defendant Osburn be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

(dismissing as frivolous the plaintiff's claims against the clerk of the court because he was entitled to absolute immunity); *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *inter alia, Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10, 2012) (same)) (noting that courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.").

Moreover, I recommend that Plaintiff's claims against Defendant Osburn in her official capacity as Chief Clerk of Broome County Supreme Court and County Courts be dismissed because the Broome County Supreme Court and County Courts are an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment. *Braithwaite*, 2023 WL 4207907, at *4 (collecting cases) (holding that the plaintiff's claims against the Chief Clerk of the Suffolk County Court in his official capacity are barred by the Eleventh Amendment).

### E.    Claims Against Defendants Kraham, Zikuski, and Unknown(s)

The Complaint failed to allege the personal involvement of Defendants Kraham, Zikuski, and Unknown(s) in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal

quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.").  The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Here, although Plaintiff names Defendants Kraham, Zikuski, and Unknown(s) as defendants, the body of the Complaint lacks any allegations of wrongdoing by them.  (*See generally* Dkt. No. 1.)  As a result, I recommend that Plaintiff's claims against Defendants Kraham, Zikuski, and Unknown(s) be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

### F.    Claims Against Defendants City of Binghamton and Broome County

The Complaint fails to allege facts plausibly suggesting that municipal Defendants City of Binghamton and Broome County violated Plaintiff's constitutional rights through the execution of their policies.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (outlining the limited circumstances under which a municipality may be liable under Section 1983 and holding that only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (holding that official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law.").  A municipality may not be held liable solely because it employs a tortfeasor.  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).

Here, there is no basis for municipal liability alleged in the Complaint.  Plaintiff essentially complains of discrete incidents, during which an officer or officers employed by Defendants City of Binghamton and Broome County did not act properly.  There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts.  In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendants City of Binghamton and Broome County.

As a result, I recommend that Plaintiff's claims against Defendants City of Binghamton and Broome County be dismissed for failure to state a claim upon which relief may be granted. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### G.    Claims Against Defendant Sostowksi

First, the undersigned recommends that, to the extent the Complaint is construed as asserting an "extortion" claim against Defendant Sostowski, it be dismissed.  (Dkt. No. 1 at 6.) The Complaint's bare heading stating "**Extortion**" under the second cause of action, is simply a legal conclusion that fails to suggest a plausible legal claim.  (Dkt. No. 1 at 6.)  Moreover, "the claim[] for . . . extortion . . . [is] not [a] cognizable civil claim[]."  *Murphy v. Certain*, 217 A.D.3d 455, 456 (N.Y. App. Div. 1st Dep't 2023) (citing *Arts4All, Ltd. v. Hancock*, 5 A.D.3d 106, 111 (N.Y. App. Div. 1st Dep't 2004); *Minnelli v. Soumayah*, 41 A.D.3d 388, 388-89 (N.Y. App. Div. 1st Dep't 2007), *lv dismissed* 9 N.Y.3d 1028 (N.Y. 2008)); *see Perez v. de la Cruz*,

09-CV-0264, 2013 WL 2641432, at *13-14 (S.D.N.Y. June 12, 2013) (holding that "the law simply does not recognize a civil claim premised on tortious extortion.").

Second, to the extent that the Complaint is construed as asserting a procedural due process claim, I recommend it also be dismissed.

To sustain a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege "that he: (1) had a protected liberty or property interest and (2) was deprived of that interest without due process." *Johnson v. City of New York*, 16-CV-2879, 2018 WL 1175139, at *3 (E.D.N.Y. Mar. 5, 2018) (citation and internal quotation marks omitted); *Roman-Malone v. City of New York*, 11-CV-8560, 2013 WL 3835117, at *3 (S.D.N.Y. July 25, 2013) ("To state a claim for a violation of procedural due process, Plaintiff must allege that [ ]he was deprived [of] a protected interest in liberty or property, without adequate notice or opportunity to be heard."). "Deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under [Section] 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." *David v. N.Y.P.D. 42nd Precinct Warrant Squad*, 02-CV-2581, 2004 WL 1878777, at *5 (S.D.N.Y. Aug. 23, 2004) (collecting cases); *see also Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (summary order); *Johnson*, 2018 WL 1175139, at *3.

Here, the Complaint does not allege that the deprivation of Plaintiff's firearms was due to an established state procedure (*see generally* Dkt. No. 1), nor are there any facts plausibly "suggesting that there is any infirmity in the established procedures used by [the New York State Courts] in seizing property from [Plaintiff] at the time [the TERPO and ERPOs were issued]." *Watts v. N.Y.C. Police Dep't*, 100 F. Supp. 3d 314, 329 (S.D.N.Y. 2015). Therefore, "when a plaintiff brings a procedural due process claim '[b]ased on random unauthorized acts by state

employees,' the state satisfies procedural due process requirements so long as it provides a

meaningful post-deprivation remedy."  *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254

(E.D.N.Y. 2014) (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101

F.3d 877, 880 (2d Cir. 1996)).  "Accordingly, the only remaining question is whether New York

has provided an adequate post-deprivation remedy."  *Watts*, 100 F. Supp. 3d at 329.

The undersigned finds that New York has adequate post-deprivation remedies that

Plaintiff could have used to retrieve his personal belongings—or to receive monetary

compensation in the event that his belongings were lost.  *Winters v. New York*, 20-CV-8128,

2020 WL 6586364, at *4 (S.D.N.Y. Nov. 9, 2020) (citing *Hudson v. Palmer*, 468 U.S. 517, 533

(1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988); *Love v. Coughlin*, 714 F.2d 207,

208-09 (2d Cir. 1983)).  Plaintiff's "failure to take advantage of the state procedures does not

convert his cause of action into a constitutional due process claim."  *Watts v. New York City*

*Police Dep't*, 100 F. Supp. 3d 314, 329 (S.D.N.Y. 2015).

As a result, I recommend that Plaintiff's claims against Defendant Sostowski be

dismissed for failure to state a claim upon which relief may be granted.

## V.  OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

justice so requires.").  An opportunity to amend is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact

sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

Here, an amended pleading cannot cure the defects outlined above with respect to

Plaintiff's claims against Defendants (1) Crawley, Osburn, and Broome County Clerk's Office,

because they are immune from suit, and (2) Binghamton Police Department because it is not an

entity amenable to suit.  As a result, I recommend that the claims against those defendants be

dismissed without prejudice but without leave to amend.

Although I have serious doubts about whether Plaintiff can replead to assert actionable

claims against Defendants (1) Kraham, (2) Zikuski, (3) Unknown(s), (4) City of Binghamton,

and (5) Broome County, given that this is the Court's first review of Plaintiff's pleading, out of

an abundance of caution and in light of Plaintiff's status as a *pro se* litigant, I recommend that he

be permitted leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this

circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient

unless they contain some specific allegations of fact indicating a deprivation of rights, instead of

---

[6]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp.

35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.

1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y.

May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth

facts that give rise to the claims, including the dates, times, and places of the alleged underlying

acts, and each individual who committed each alleged wrongful act.  In addition, the revised

pleading should allege facts demonstrating the specific involvement of any of the named

defendants in the constitutional deprivations alleged in sufficient detail to establish that they

were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.

1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing

complaint, and must be a wholly integrated and complete pleading that does not rely upon or

incorporate by reference any pleading or document previously filed with the Court.  *See Shields*

*v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an

amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI.    PLAINTIFF'S LETTER REQUEST/MOTION

On March 26, 2024, Plaintiff filed a Letter Request/Motion.  (Dkt. No. 6.)  To the extent

that the Court adopts the recommendations contained herein which recommend dismissal of the

Complaint, I recommend that Plaintiff's Letter Request/Motion be dismissed as moot.

In the alternative, as best as the undersigned can glean from Plaintiff's Letter

Request/Motion, Plaintiff is merely requesting that the Court rule on his motion for IFP.  (Dkt.

No. 6.)  This Order and Report-Recommendation rules on Plaintiff's amended IFP application

and thus, Plaintiff's Letter/Motion is moot.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 5) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) Kraham, (2) Zikuski, (3) Unknown(s), (4) City of Binghamton, and (5) Broome County, because it is fails to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) Crawley, Osburn, and Broome County Clerk's Office, because they are immune from suit, and (2) Binghamton Police Department because it is not an entity amenable to suit, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DENY** Plaintiff's Letter Request/Motion (Dkt. No. 6) as moot; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

---

[7]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: April 19, 2024
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[8]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 3:24-cv-00067-AMN-ML Document 7 Filed 04/19/24 Page 19 of 140

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen, Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY., N.Y.; and Valerie Bertram, Individually and as Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box 40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI, ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP, Attorneys for Defendants, 9 Washington Square, Suite 201, P.O. Box 15085, Albany, NY 12212-5085.

## **DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action filed by William Pflaum ("Plaintiff") against the Town of Stuyvesant ("Town") and Valerie Bertram, Town Supervisor ("Bertram") (collectively, "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 59.) For the reasons set forth below, Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

As a result of the Court's prior decisions (Dkt. Nos. 17, 26), Plaintiff's sole remaining claim in this action is his First Amendment retaliation claim. More specifically, as articulated in his Complaint (which was drafted by Plaintiff, *pro se*, and therefore must be construed with special solicitude), that claim alleges three separate ways he was retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges of ethical violations against Defendant Bertram, she (a) "collaborated with and supported" the Town's Fire Chief to deny and/or threaten to deny fire protection to Plaintiff, (b) "supported and encouraged" various Town employees to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his business," and (c) "supported and encouraged" the Town Assessor's "campaign to intimidate Plaintiff by linking [his] political speech [with his] real estate assessment." (Dkt. No. 1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing columns on his Internet blog regarding corruption among the Town's public officials, the Town filed false criminal charges against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for criticizing Bertram, the Town Assessor, and the Town, the Town Assessor used his authority to raise taxes in order to intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### B. Defendants' Motion for Summary Judgment

**\*2** In their motion for summary judgment, Defendants request the dismissal of Plaintiff's Complaint in its entirety. (Dkt. No. 59.) In support of their motion, Defendants make the following four arguments. First, Defendants argue that there was no adverse action against Plaintiff in that there was no actual chilling of Plaintiff's First Amendment speech or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law].)

Second, Defendants argue that, in any event, any such adverse action was not motivated or substantially caused by Plaintiff's First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was not personally involved in any deprivation of fire protection services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law

Generally construed, Plaintiff makes five arguments in opposition to Defendants' motion. First, Plaintiff argues that he engaged in protected speech by creating an Internet blog on which he publicly criticized Town officials and exposed

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 20 of 140

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a) (3) in his response to their statement of material facts, their statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter,* 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension*

Case 3:24-cv-00067-AMN-ML Document 7 Filed 04/19/24 Page 21 of 140

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*& Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendants' factual assertions); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

## 2. Undisputed Material Facts

**\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that

Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local

Case 3:24-cv-00067-AMN-ML Document 7 Filed 04/19/24 Page 22 of 140

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

 **\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 23 of 140

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at *7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v.*

*Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at *5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at *5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden

of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011,

and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed

by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff

interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 26 of 140

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

## Footnotes

1    Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2    The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3    As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4    The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5    For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 5625440
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Cecil Roy KING, Plaintiff,

v.

NEW YORK STATE, James Francis Mathews [sic],
William B. Rebolini, Howard Heckman, Defendants.

23-CV-3421(GRB)(ST)
|
Signed August 31, 2023

**Attorneys and Law Firms**

Cecil Roy King, Coram, NY, Pro Se.

Lori L. Pack, Office of the New York State Attorney General,
Hauppauge, NY, for Defendants New York State, James
Francis Mathews, William B. Rebolini.

**ORDER**

GARY R. BROWN, United States District Judge:

 **\*1** Before the Court is the fee paid *pro se* complaint of Cecil
Roy King ("Plaintiff") brought pursuant to 42 U.S.C. § 1983
against New York State ("NYS") and three NYS judges: Hon.
James Francis Matthews ("Judge Matthews"), Hon. William
B. Rebolini ("Judge Rebolini"), and Hon. Howard Heckman
("Judge Heckman" and collectively, "Defendants"). *See*
Docket Entry "DE" 1; Receipt No. 200001582. Upon initial
review of Plaintiff's complaint and Defendants' letter motion
requesting a pre-motion conference in anticipation of filing
a motion to dismiss the complaint (DE 5), the Court ordered
Plaintiff to show cause within thirty days why the claims set
forth in the complaint should not be dismissed for lack of
subject matter jurisdiction. (DE 7.) Plaintiff has responded
by filing a "Response to Order to Show Cause & Temporary
Restraining Order." [1] (DE 8.)

For the reasons that follow, the Court lacks subject matter
jurisdiction to adjudicate Plaintiff's claims. Accordingly, the
complaint is dismissed without prejudice pursuant to Federal
Rule of civil Procedure 12(h)(3). Given the dismissal of the
complaint, the request for a restraining order is denied.

**BACKGROUND**

**1. Summary of the Complaint**

Plaintiff's complaint is brought against NYS and three state
judges arising from an underlying state mortgage foreclosure
action and subsequent eviction proceedings. *See* DE 1. The
brief complaint is submitted on the Court's form for civil
rights actions brought pursuant to Section 1983 and has
an additional 169 pages of attachments. [2] *Id.* According to
the complaint, Defendants violated Plaintiff's civil rights by
depriving Plaintiff of property rights without due process of
law. *Id.* at ¶ II.B. In its entirety, Plaintiff's Statement of Claim
alleges:

> Mortgage was illegally assigned to
> PHH Mortgage. Original mortgage
> was Fleet Bank in 2003. Assigned
> to PHH on 12/16/10. Referee's deed
> executed 2/14/20. Referee's deed
> executed 2/14/20 and sold in a no
> due process foreclosure sale. James
> Mathew denied plaintiff's motion to
> have fair trial 11/2/22. Judge Heckman
> signed illegal foreclosure with equal
> protection of law. Promissory note was
> illegally assigned to PHH Mortgage
> on 12/16/10. Referee's deed was
> executed without due process denying
> the plaintiff equal protection of law
> and depriving plaintiff of life, liberty
> and property without due process
> or no recourse. Plaintiff's property
> was sold to Federal National Corp
> – not sure when they became the
> owner – defendant took Plaintiff to
> District Court on 9/28/22 as the owner/
> petitioner of the home. PHH Mortgage
> and Federal National Mortgage does
> not have standing. There is a title
> dispute as to who owns the property.

*Id.* at ¶ III. In the space on the form complaint that calls for
a description of any injuries sustained as a result, Plaintiff
wrote:

**\*2** The Plaintiff did not get a fair and impartial procedure/trial/ hearing in Supreme Court or District Court. The defendants conspired and acted with deliberate indifference to the Constitution and federal laws when making decisions without investigating the facts. The defendants were provided notice that there is a title dispute. Plaintiff suffered wrongful eviction, slander, libel and intentional infliction of emotional distress.

Id. at ¶ IV. For relief

plaintiff requests 20 million dollar payment on this claim to be divided among the defendants. The plaintiff requests the state and district court judges licenses to practice law revoked. The judges assets to be liquidated to pay the judgement in full. The plaintiff demands complete control of the state's corporate charter and to have all records of illegal assignments, deed and all records to the plaintiff.

Id. ¶ V.

**2. Plaintiff's Response to the Order to Show Cause**

By Order to Show Cause dated June 16, 2023, the Court ordered Plaintiff to show cause why the claims in the complaint should not be dismissed without prejudice for lack of subject matter jurisdiction. DE 7. The Court explained that Eleventh Amendment immunity, absolute judicial immunity, and the *Rooker-Feldman* doctrine appeared to divest the Court of subject matter jurisdiction and set forth the legal and factual bases for that circumstance. Id. at 5-9. The Court invited Plaintiff to demonstrate why these doctrines do not bar adjudication of Plaintiff's claims in this Court and suggested that Plaintiff consult with the Hofstra Law *Pro Se* Clinic. Id. at 9.

Plaintiff's twenty-two page response does not address any of the issues raised by the Court and, instead, re-alleges the claims set forth in the complaint and argues the merits thereof. *See* DE 8, *in toto.* The only mention of "immunity" is at page 14 of Plaintiff's submission where in a single paragraph asserts that:

The judge has qualified immunity when he/she follows the constitution and the law. The Tucker Act exposes the government to liability for certain claims. Specifically, the Act extended the court's jurisdiction to include claims for liquidated or unliquidated damages arising from the Constitution (including takings claims under the Fifth Amendment), a federal statute or regulation, and claims in cases not arising in tort. The relevant text of the Act is codified in 28 U.S.C. §§ 1346(a) and 1491. The Tucker Act (March 3, 1887, Ch. 359, 24 Stat. 505, 28 U.S.C. § 1491) is a federal statute of the United States by which the United States government has waived its sovereign immunity with respect to lawsuits pertaining to 5th Amendment violations of due process.

Id. at 14.

**LEGAL STANDARDS**

Regardless of whether a plaintiff has paid the Court's filing fee, a district court may *sua sponte*, that is, on its own, dismiss a frivolous *pro se* complaint. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (*per curiam*) ("[D]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee" because "as courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."); *Clark v. Schroeder*, 847 F. App'x 92, 93 (2d Cir. 2021) (summary order) ("District courts have the inherent power to dismiss a complaint as frivolous, even when, as here, the plaintiff has paid the filing fee."); *Hawkins-El III v. AIG Fed. Sav. Bank*, 334 F. App'x 394, 395 (2d Cir. 2009) (affirming the district court's *sua sponte* dismissal of fee paid frivolous complaint).

**\*3** A claim is "frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v.*

*Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). In addition, a complaint is frivolous where it seeks relief from defendants who are immune from suit. *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit.") (internal quotation marks omitted).

*Pro se* complaints are to be examined with "special solicitude," *Tracy v. Freshwater*, 620 F.3d 90, 102 (2d Cir. 2010), and are to be "interpreted to raise the strongest arguments they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citation omitted).

Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 70-01 (2d Cir. 2000). Lack of subject matter jurisdiction cannot be waived and may be raised at any time or by the court *sua sponte. Id.*; *see also* FED. R. CIV. P. 12(h)(3)("Whenever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits."). Although *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, *Erickson v. Pardus*, 551 U.S. 89 (2007), a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law", *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983), and still must establish that the Court has subject matter jurisdiction over the action. *Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. 2005).

Even where subject matter is established, the Court may be divested of subject matter jurisdiction in certain circumstances, such as where the defendant is immune from suit. *See,* e.g., *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (federal courts lack subject matter jurisdiction over claims against judges relating to the exercise of their judicial functions on immunity grounds); *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity[.]").

## DISCUSSION

### I. Eleventh Amendment Immunity

**\*4** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens in federal court. *See,* e.g., *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges. *Thomas v. Martin-Gibbons*, No. 20-3124, 2021 WL 2065892 (2d Cir. May 24, 2021) (summary order) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity).

However, sovereign immunity "is not absolute," and the Supreme Court "ha[s] recognized ... two circumstances in which an individual may sue a State." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). First, "a State may waive its sovereign immunity by consenting to suit." *Id.* Second, "Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment." *Id.*; *see also Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 80 (2000). Neither of these exceptions applies in this case. It is well-established that New York State has not waived its sovereign immunity from Section 1983 claims. *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order). Moreover, Congress did not abrogate that immunity when it enacted Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity[.]"); *Clark v.*

*Schroeder*, 847 F. App'x 92, 93-94 (2d Cir. 2021) ("Absent the State's express waiver or a congressional abrogation of immunity, the Eleventh Amendment renders a state immune from federal lawsuits brought either by its own citizens or by citizens of another state.").

Thus, the Eleventh Amendment precludes Plaintiff's claims against NYS and the individuals Defendants sued in their official capacities. *See, e.g.*, *Parker v. New York*, No. 22-CV-3170(GRB)(AYS), 2022 WL 2441215, at *3 (E.D.N.Y. July 1, 2022) (finding New York state has not waived its Eleventh Amendment immunity and dismissing *pro se* plaintiff's Section 1983 claims against New York State). Plaintiff does not argue otherwise having been given an opportunity to do so. *See* DE 8. Accordingly, the Court lacks subject matter jurisdiction to adjudicate Plaintiff's Section 1983 claims brought against NYS and the individual Defendants in their official capacities. Thus, such claims are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3). [3]

### II. Judicial Immunity

Judges have absolute immunity from suit for judicial acts performed in their judicial capacities. *Mireles*, 502 U.S. at 11 ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damages."). Indeed, "judicial acts -- even if they are alleged to have been done maliciously or corruptly -- are not subject to civil liability." *Davis v. Gillespie*, No. 22-CV-6207, 2023 WL 5002553, at *5 (E.D.N.Y. Aug. 4, 2023) (citing *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (finding state court judge absolutely immune from § 1983 suit where that judge had power to entertain and act upon motions in an underlying case)). "The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *See Brady v. Ostrager*, 834 F. App'x 616, 618 (2d Cir. 2020) (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)). Absolute judicial immunity "is not overcome by allegations of bad faith or malice," and a judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Mireles*, 502 U.S. at 11 (internal quotation marks omitted); *Bliven*, 579 F.3d at 209.

**\*5** Here, the challenged conduct of the individual Defendants occurred during the course of the underlying state court proceedings and any actions they took in those cases were judicial acts for which they are afforded absolute judicial immunity. Accordingly, Plaintiff's claims against the individual Defendants are dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). [4]

### III. State Law Claims

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court explained that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of a plausible federal claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time over any state law claims that may be reasonably construed from the complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over any potential state-law claims contained in Plaintiff's complaint and dismisses any such claims without prejudice.

### IV. Leave to Amend

A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). However, leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Given that Plaintiff's claims could not be cured with amendment, leave to amend would be futile and is, thus, denied.

### CONCLUSION

Based on the foregoing, Plaintiff's complaint is dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). Given the dismissal of the complaint, Plaintiff's request for injunctive relief is denied and Defendants' request for a pre-motion conference is denied as moot. The Clerk of the Court shall enter judgment accordingly and mark this case closed. The Clerk of the Court shall also mail a copy of this Order to the *pro se* Plaintiff at the address of record and note service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**\*6 SO ORDERED**.

**All Citations**

Slip Copy, 2023 WL 5625440

## Footnotes

1    Plaintiff also seeks an order "restrain[ing] the [D]efendants from any further state court action until the federal court dispute is adjudicated. Plaintiff also requests the court to vacate any state court judgments or orders in the interest of justice," (DE 8 at 21.)

2    The exhibits are largely excerpts from law treatises, copies of cases, and state and federal statutory laws, well as several reports prepared on Plaintiff's behalf concerning the mortgage at issue in the underlying state case. *See* DE 1-1.

3    Plaintiff's Section 1983 claims against NYS are frivolous for the additional reason that New York State is not a "person" within the meaning of Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (State is not a "person" for the purpose of § 1983 claims); *Zuckerman v. Appellate Div., Second Dep't Supreme Court*, 421 F.2d 625, 626 (2d Cir. 1970) (Court not a "person" within the meaning of 42 U.S.C. § 1983).

4    Given that the Eleventh Amendment and judicial immunity divest this Court of subject matter jurisdiction, the Court need not address the application of the *Rooker-Feldman* doctrine and declines to do so.

End of Document                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 32 of 140

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE
DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** This is a civil rights action brought by *pro se* plaintiff
Jeramie White, a New York State prison inmate, pursuant to
42 U.S.C. § 1983, against the Syracuse Police Department
("SPD") and five of its officers. In his complaint, plaintiff
alleges that defendants violated his constitutional rights
during the course of his arrest on February 13, 2017. Plaintiff's
complaint and accompanying application for leave to proceed
*in forma pauperis* ("IFP") have been referred to me for
review. Based upon my consideration of those materials, I will
(1) grant plaintiff's amended IFP application, (2) recommend
dismissal of his claim against the SPD with leave to replead,
and (3) recommend that his complaint otherwise be accepted
for filing.

**I. BACKGROUND**
Plaintiff commenced this action on or about December 20,
2018. Dkt. No. 1. According to plaintiff, he and two friends
were on their way to play indoor basketball when their vehicle
was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at
4. Plaintiff alleges that after the stop, defendant William Kittle
forcibly removed White from the vehicle and that Kittle, in
addition to defendants Abraham Mamoun and Shawn Hauck,
proceeded to use excessive force against him during the
course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No.
1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda

and Fiorini were present and had an obligation to intervene
and prevent the unlawful use of force, but failed to do so. *Id.*
at 5, 7.

Plaintiff was ultimately arrested and charged with resisting
arrest, in violation of N.Y. Penal Law § 205.30, and
second-degree obstruction of governmental administration, in
violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4. As
relief, plaintiff seeks compensatory and punitive damages in
the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application [1]
When a civil action is commenced in a federal district court,
the statutory filing fee, currently set at $400, must ordinarily
be paid. 28 U.S.C. § 1914(a). A court is authorized, however,
to permit a litigant to proceed IFP if it determines that he
is unable to pay the required filing fee. 28 U.S.C. § 1915(a)
(1). [2] Because I conclude that plaintiff meets the requirements
for IFP status, his amended application for leave to proceed
without prepayment of fees is granted. [3]

B. Sufficiency of Plaintiff's Complaint

1. Governing Legal Standard

**\*2** Because I have found that plaintiff meets the financial
criteria for commencing this case IFP, I must next consider
the sufficiency of the claims set forth in his complaint in light
of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when
a plaintiff seeks to proceed IFP, "the court shall dismiss the
case at any time if the court determines that ... the action ...
(i) is frivolous or malicious; (ii) fails to state a claim on
which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b)
directs a court to review any "complaint in a civil action in
which a prisoner seeks redress from a governmental entity
or officer or employee of a governmental entity," and to
"identify cognizable claims or dismiss the complaint, or any
portion of the complaint, if the complaint ... is frivolous,
malicious, or fails to state a claim upon which relief may be
granted; or ... seeks monetary relief from a defendant who is
immune from such relief." 28 U.S.C. § 1915A(b); *see also
Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We have
found both sections [1915 and 1915A] applicable to prisoner
proceedings *in forma pauperis*.").

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 33 of 140

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

### 2. Analysis of Plaintiff's Claims

**\*3** Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the

individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. [4]

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

## II. SUMMARY, ORDER, AND RECOMMENDATION

**\*4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 35 of 140

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

## Footnotes

1   Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

2   The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

3   Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

4   The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

5   If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 36 of 140

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through
Barbara McGREGOR, as Administratrix of
the Estate of Kylie Ann Turczyn, Plaintiff,
v.
CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel, Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq., Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel, Utica, NY, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff Kylie Ann Turczyn, deceased, by and through Barbara McGregor, as administratrix of the estate of Kylie Ann Turczyn, commenced this action against defendants City of Utica, City of Utica Police Dept., and Elizabeth Shanley alleging substantive due process claims pursuant to 42 U.S.C. § 1983 and separate state law causes of action. (Am.Compl., Dkt. No. 12.) Pending is defendants' motion to dismiss for failure to state a claim. (Dkt. No. 19.) For the reasons that follow, the motion is granted in part and denied in part.

### II. *Background*

**A.** *Facts* [1]

Shanley, an Oneida County domestic violence investigator, was at all relevant times assigned by the Police Department to accomplish the goals of reducing "occurrence[s] of domestic violence by increasing reporting and by identifying and tracking repeat victims and/or offenders," and "increas[ing] victims' access to supportive services by encouraging [them] to report their abuse, thereby increasing arrest rates for domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012, Thomas Anderson, Turczyn's former boyfriend and the father of her daughter, broke into Turczyn's home armed with a 9 mm rifle. (*Id.* ¶ 11) Anderson repeatedly shot Turczyn, taking her life in view of their four-year-old daughter, G.T. (*Id.*) Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn made between five and ten complaints to Utica police officers, "including informing them of a specific threat by Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told Shanley "that Anderson was armed and had threatened to kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic violence between Turczyn and Anderson, neither Shanley, New York State Police, nor Utica Police took any steps to arrest Anderson, investigate Turczyn's complaints, or follow-up with Anderson "as is the policy and protocol of the domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of protection, which she attempted to do, but was told by an unknown person at the Oneida County Family Court to return the following day because the court was " 'too busy.' " (*Id.* ¶¶ 15–16.) The following day, Turczyn left a voice message for Shanley, explaining that she was unable to obtain an order of protection and that Anderson had a gun and planned to kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge, "Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly believed that Turczyn's issues with Anderson were outside of the purview of Utica Police and should, instead, be dealt with by New York State Police; however, "she did not inform any other police agency or take any action herself." (*Id.* ¶¶ 18, 19, 20.)

**B.** *Procedural History*

Turczyn commenced this action by filing a complaint on October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved to dismiss, (Dkt. No. 10.) In response, Turczyn filed an amended complaint as of right, which is now the operative pleading. (*See generally* Am. Compl.) In her amended complaint, Turczyn alleges the following causes of action: (1) a denial of substantive due process rights under the Fifth and Fourteenth Amendments due to deliberate indifference; (2) a *Monell* [2] claim against the City; (3) negligence; (4)

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 37 of 140

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

a "derivative action" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

### III. *Standard of Review*

**\*2** The standard of review under Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

**A.** *Preliminary Matters*

At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201–02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendant causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendant state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390, 2014 WL 2176148, at *6 (N.D.N.Y. May 22, 2014) (internal

quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

**\*3** The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at *3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19, Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of

Case 3:24-cv-00067-AMN-ML Document 7 Filed 04/19/24 Page 38 of 140

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

## B. *Rule 8*

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.,* the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See Gierlinger v. Gleason,* 160 F.3d 858, 872 (2d Cir.1998) ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

## C. *Rule 12(b)(6)*

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

**\*4** Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to protect an individual from private violence, *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), potentially applies in this case. That exception imposes liability for failure to

protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." *Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 428 (2d Cir.2009) (internal quotation marks and citation omitted); *see Pena v. DePrisco,* 432 F.3d 98, 110 (2d Cir.2005). "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Okin,* 577 F.3d at 428 (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 99 (2d Cir.1993)). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id.* at 428–29 (quoting *Pena,* 432 F.3d at 111)). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id.* at 429.

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 431 (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting *Lewis,* 523 U.S. at 850). Accordingly, the inquiry is highly fact specific.

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions[3] when Shanley knew of

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 39 of 140

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) "This is so even though none of the defendants are alleged to have communicated the approval explicitly." *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under § 1983 attaches when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others" (quoting *Pena,* 432 F.3d at 111)).

**\*5** The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ ¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable substantive due process violation. As for whether or not the right was clearly established, which is a prerequisite to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is "clearly established," under the state-created danger theory, "that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply." *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that "the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* ——U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

**\*6** Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at \*10 (D.Vt. Dec.9, 2013) (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y.,* No. 12–CV–6151, 2014 WL 1224257, at \*13 (E.D.N.Y. Mar. 24, 2014).

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 40 of 140

## V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby **DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby **DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

## Footnotes

1     The facts are presented in the light most favorable to plaintiff.

2     *See Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3     In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." *Okin,* 577 F.3d at 428.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 974824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE DEPARTMENT; Abraham
Mamoun, Syracuse Police Dept.; William Kittle,
Syracuse Police Dept.; Shawn Hauck, Syracuse
Police Dept.; Altimonda, Syracuse Police Dept.;
and Fiorini, Syracuse Police Dept., Defendants.

5:18-CV-1471 (GTS/DEP)
|
Signed 02/28/2019

**Attorneys and Law Firms**

JERAMIE WHITE, 18-B-0311, Plaintiff, Pro Se, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, New York
13118.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jeramie White ("Plaintiff") against the
Syracuse Police Department and five of its employees
("Defendants"), is United States Magistrate Judge David
E. Peebles' Report-Recommendation recommending that (1)
Plaintiff's Complaint be accepted for filing by the Court
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini, and (2) Plaintiff's remaining cause of action against
the Syracuse Police Department be dismissed with leave to
replead within thirty days of the issuance of an Order adopting
the Report-Recommendation. (Dkt. No. 9.) Plaintiff did not
submit an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.) [1]

Based upon a review of this matter, the Court can find
no clear error in the Report-Recommendation: [2] Magistrate
Judge Peebles employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. As a result, the Court accepts and adopts the Report-
Recommendation for the reasons stated therein; Plaintiff's
Complaint is accepted for filing with respect to his Fourth
Amendment cause of action against Defendants Mamoun,
Kittle, Hauck, Altimonda and Fiorini; and Plaintiff's
remaining cause of action against the Syracuse Police
Department is dismissed with leave to replead within thirty
days of the issuance of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Peebles' Report-
Recommendation (Dkt. No. 9) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint is accepted for filing
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini; and it is further

**\*2 ORDERED** that Plaintiff's remaining cause of action
against the Syracuse Police Department is **DISMISSED with
leave to replead within THIRTY (30) DAYS** of the issuance
of this Decision and Order.

**ORDERED** that, in the event Plaintiff files an Amended
Complaint within the above-referenced thirty-day period, it
shall be referred to Magistrate Judge Peebles for review; and
it is further

**ORDERED** that, in the event Plaintiff does not file an
Amended Complaint within the above-referenced thirty-
day period, this action shall move forward with respect to
his Fourth Amendment cause of action against Defendants
Mamoun, Kittle, Hauck, Altimonda and Fiorini, and the Clerk
of the Court is directed to issue summonses and USM-285
forms at that time for service by the U.S. Marshal Service.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 974824

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 42 of 140

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

### Footnotes

1       The Court notes that, on January 11, 2019, Plaintiff filed a letter from the City of Syracuse Citizen Review
        Board dated December 31, 2018, outlining its findings with respect to this matter. (Dkt. No. 10.) In its letter,
        the Citizen Review Board upheld Plaintiff's claim for excessive force against "Det. One," recommended a
        written reprimand against that individual, and absolved "Det. Two," "Sgt. One," and "Lt. One" from wrongdoing
        regarding the use of excessive force. (*Id.*) The Court does not liberally construe this letter as any sort of
        Objection to the Report-Recommendation.

2       When no objection is made to a report-recommendation, the Court subjects that report-recommendation to
        only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing
        such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record
        in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at
        *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's]
        report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal
        quotation marks omitted).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    2

KeyCite Yellow Flag - Negative Treatment
Opinion Supplemented by   Garcia v. Hebert,   D.Conn.,   March 28, 2014

2013 WL 1294412
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Fortunato GARCIA, Plaintiff,
v.
Robert HEBERT et al., Defendants.

No. 3:08CV95 (DFM).
|
March 28, 2013.

**Attorneys and Law Firms**

Gabriel North Seymour,  Gabriel North Seymour, Falls
Village, CT, Whitney North Seymour, Jr., New York, NY, for
Plaintiff.

Edward R. Giacci, Shelton, CT, Maite Barainca, Nicole
Demers, Thomas J. Davis, Jr., Attorney General's Office,
Hartford, CT, for Defendants.

*RULING ON MOTIONS FOR SUMMARY JUDGMENT*

DONNA F. MARTINEZ, United States Magistrate Judge.

 **\*1**  Plaintiff Fortunato Garcia brings this action
against police officers and courthouse employees alleging
misconduct in connection with his arrest and prosecution
on state criminal charges. Pending before the court are
plaintiff's Motion in Limine (doc. # 225), defendants' Motions
for Summary Judgment (docs. # 217, # 218 and # 220)
and plaintiff's Cross–Motions for Summary Judgment (docs.
# 227, # 230 and # 233). For the reasons that follow,
plaintiff's Motion in Limine is denied, the defendants'
Motions for Summary Judgment are granted and plaintiff's
Cross–Motions are denied.

**I. *Procedural History***
Plaintiff commenced this action in January 2008. (Doc. #
1.) His Second Amended Complaint alleges deprivations
of his rights under the Fourth, Fifth, Sixth and Fourteenth
Amendments pursuant to 42 U.S.C. § 1983; false arrest,
malicious prosecution, abuse of process under § 1983 and
state law; and defamation and intentional infliction of

emotional distress under state law. (Doc. # 137.) The case
has been partially resolved by way of rulings. In June 2008,
the court granted default judgment against defendant Robert
Hebert. (Doc. # 39.) In March 2009, the court dismissed
defendant Assistant State's Attorneys Magdalena Campos
and Andrew Wittstein and dismissed the official capacity
claims against defendant Lisa Killiany. (Docs.# 94, # 99.) In
April 2009, the court denied plaintiff's motion for summary
judgment against those defendants as moot. (Doc. # 100.) In
December 2009, the Second Circuit affirmed the rulings of
dismissal on interlocutory appeal. (Doc. # 127.) In December
2011, the court declined to vacate its ruling of dismissal as to
the official capacity claims against Killiany, and it dismissed
the official capacity claims against defendant Jane Serafini.
(Docs.# 192, # 193, # 202.) In April and May 2012, the parties
filed the pending cross-motions for summary judgment, with
separate statements of facts from each party pertaining to each
of the six motions. [1]  In September 2012, they consented to
the authority of the undersigned magistrate judge pursuant to
28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Doc. # 276.)

**II. *Jurisdiction***
Plaintiff brings both federal and state claims. The court has
original jurisdiction over the federal claims under 28 U.S.C.
§ 1331. Because the state-law claims "derive from a common
nucleus of operative fact," *United Mine Workers of Am. v.
Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218
(1966), and "the values of judicial economy, convenience,
fairness, and comity" militate in favor of supplemental
jurisdiction, *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343,
350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the court exercises
supplemental jurisdiction under 28 U.S.C. § 1367(a). [2]

**III. *Undisputed Facts***
The following facts are undisputed. On November 23,
2006, a Thanksgiving holiday, defendant Robert Hebert went
shopping at a Kmart in Torrington with defendant Lisa
Killiany. The two were married at the time, and Hebert
recently had begun working as a police officer in the Town of
Winchester. (Hebert Dep. at 7; Pl.'s 56(a)(1), doc. # 230–1 at ¶
2; Killiany's 56(a)(2), doc. # 259 at ¶ 2.) A store surveillance
video from that day shows that Hebert reached the cash
register at 12:49 p.m. He handed his wallet to Killiany, who
removed cash, handed it back and walked away. Hebert placed
his wallet on a side counter and proceeded to unload the
shopping cart. After the cashier had scanned all his purchases,
Hebert paid with a credit card and walked away without

retrieving his wallet. (Kmart Video, doc. # 223 at 12:49–51.) Plaintiff Fortunato Garcia was the next customer in line. (Garcia Dep., doc. # 222–11 at 105.) Plaintiff placed his wallet on the main counter in front of him. Then he took Hebert's wallet from the side counter, placed it on top of his own wallet and covered it with his hand, concealing it from the cashier. (Kmart Video, doc. # 223 at 12:52.) Plaintiff handed cash to the cashier and, when she turned to the cash register, he put both wallets in his jacket pocket. Simultaneously, Hebert appeared at the end of the checkout line, looking all around. (Kmart Video at 12:52.) Hebert panicked because his wallet contained money, credit cards and his police badge. He said to Killiany: "I don't know what I'm going to do." (Hebert Dep. at 12; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 3; Killiany's 56(a)(2) at ¶ 3.) Plaintiff received change from the cashier and walked away with his receipt and purchases. (Kmart Video, doc. # 223 at 12:53.) As plaintiff walked toward the exit, Hebert and Killiany stopped him and asked in in English, "Did you see a wallet on the counter?" Plaintiff said "No" and walked out of the store. (Hebert Dep. at 12; Killiany Dep. at 10–11; Garcia Dep. at 105–106.)

**\*2** Defendant Hebert had only been employed as a police officer for a short while and was anxious that his employer would "bust his stones" for losing his badge. (Hebert Dep. at 13; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 3; Killiany's 56(a)(2) at ¶ 3.) He could have been written up. (Hebert Dep. at 29–32.) He notified the Winchester Police Department, which logged the incident as "Officer lost wallet." (Hebert Dep. at 13; Activity Log, doc. # 233–11.) Hebert then reported the incident to the Torrington Police Department. The duty officer was defendant Officer John Guerrera, who was in his seventh year as a police officer with the Torrington Police Department. (Guerrera Dep. at 6; Pl. 56(a)(1), doc. # 233–1 at ¶ 1.) Officer Guerrera met Hebert at Kmart, where they viewed a surveillance video of the incident. ((Pl.'s 56(a)(1), doc. # 233–1 at ¶¶ 2–3; Guerrera's 56(a)(2), doc. # 254 at ¶¶ 2–3; Killiany's 56(a)(1), doc. # 219 at ¶¶ 7–8, Pl.'s 56(a)(2), doc. # 229 at ¶¶ 7–8.) Officer Guerrera took the video to the Torrington Police Department, where it was viewed by another police officer. (Pl.'s 56(a)(1), doc. # 230–1 at ¶ 4; Killiany's 56(a)(1) at ¶ 13.) That officer thought he recognized the man who took the wallet as someone named Weston, and he went out in a patrol car to look for him. (Pl.'s 56(a)(1), doc. # 233–1 at ¶¶ 3–4; Guerrera's 56(a)(2), doc. # 254 at ¶¶ 3–4.)

Later that afternoon, plaintiff and a relative brought Hebert's wallet to the Torrington Police Department. Defendants Killiany and Hebert were there. On seeing plaintiff, Killiany

said "Remember me, motherf——er?" (Killiany Dep. at 33; Pl.'s 56(a)(1), docs. # 233–1 at ¶ 5, # 230–1 at ¶ 5.) She was angry and frustrated because she and Hebert had missed their Thanksgiving dinner while looking for Hebert's wallet. (Killiany Dep. at 132; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 21.) Defendant Officer Guerrera knew that Killiany worked at the Superior Court in Bantam because he occasionally delivered paperwork to her office. (Pl.'s 56(a)(1), doc. # 233–1 at ¶ 6, Guerrera's 56(a)(2) at ¶ 6.)

Plaintiff was wearing the same brown jacket he had worn at Kmart, with the same maroon cap in his pocket. He stated that he did not speak English. Another policeman spoke with him in Spanish. (Incident Report, doc. # 222–5 at 2; Guerrera Dep. at 20–21, 26, 36.) Officer Guerrera was not aware that plaintiff had made any attempts to return the wallet prior to arriving at the police station.[3] (Pl.'s 56(a)(1), doc. # 233–1 at ¶ 8; Guerrera's 56(a)(2) at ¶ 8.)

Defendant Officer Guerrera arrested plaintiff on a charge of larceny in the 6th degree. (Guerrera's 56(a)(1), doc. # 222 at ¶ 19; Pl.'s 56(a)(1), doc. # 233–1 at ¶ 15.) Other officers processed the arrest (Guida Dep. at 62–65; Pl.'s 56(a)(1), doc. # 233–1 at ¶ 11) and seized a Kmart receipt from plaintiff's wallet. (Seizure Inventory, doc. # 222–3.) Hebert signed a victim statement positively identifying plaintiff as the man that was in line behind them at Kmart and stating: "I wish to press charges against this male for the theft of my wallet." Killiany signed the statement as a witness. (Doc. # 222–6.) Guerrera worked an extra half-hour after the end of his shift to complete the investigative paperwork. (Guerrera Dep. at 54; Pl.'s 56(a)(1), doc. # 233–1 at ¶ 16.) Police returned the wallet to Hebert, and he found nothing missing. (Pl.'s 56(a)(1), doc. # 230–1 at ¶ 9; Killiany's 56(a)(2) at ¶ 9.)

**\*3** In a letter to the Torrington police chief dated November 30, 2006, defendant Killiany commended the police officers for their efforts. Her letter states: "I heard several times from your officers that they wanted to 'help one of their own.' " (Doc. # 233–4.)

On December 4, 2006, plaintiff went to the Bantam courthouse for his first court date on the larceny charge. Defendant Killiany worked at the Bantam courthouse in the Family Services Unit. (Killiany Dep. at 5–7; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 1; Killiany's 56(a)(2), doc. # 259 at ¶ 1.) When she saw plaintiff, she pointed him out to her friend, Assistant State's Attorney Magdalena Campos. (Pl.'s 56(a)(1), doc. # 230–1 at ¶ 18; Killiany's 56(a)(2) at ¶ 18.)

Attorney Campos conversed with plaintiff in the vestibule of the prosecutor's office. [4] (Campos Dep. at 91–97, 150–53.) After the conversation, plaintiff left the courthouse. (Serafini's 56(a)(1), doc. # 217–1 at ¶ 5; Pl.'s 56(a)(2), doc. # 226 at ¶ 5.) As plaintiff was leaving the courthouse, Killiany told him, "I wish you would say you were sorry. I missed my Thanksgiving." Plaintiff's sister informed Killiany they had tried to return the wallet to defendant Hebert's prior residence. (Killiany Dep. at 69–70, 121; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 17.)

After plaintiff left the building, State's Attorney Campos called his case in court. She requested a continuance date, and Superior Court Judge Richard M. Marano granted it. (Tr. 12/4/06, doc. # 28 at 3–4.) Defendant Jane Serafini, who was acting as courtroom clerk that day, marked the court file "NG" to indicate a plea of not guilty, checked the box for jury election and wrote "1–5" as the continuance date. (Court File, doc. # 150 at 6; Serafini's 56(a)(1) at ¶ 7; Pl.'s 56(a)(2), doc. # 226 at ¶ 7.)

Serafini had been working as an administrative assistant for the Superior Court at Bantam for fourteen years. (Serafini Dep. at 6–8; Pl.'s 56(a)(1), doc. # 227–1 at ¶¶ 3–4.) She has no formal legal education. (Serafini Aff., # 217–4 at ¶ 2; Serafini's 56(a)(1), doc. # 217–1 at ¶ 3; Pl.'s 56(a)(2), doc. # 226 at ¶ 3.) Her work required her to attend court proceedings and make notations in the court file of procedural developments. (Serafini Dep. at 6–8; Pl.'s 56(a)(1), doc. # 227–1 at ¶¶ 3–4.) Serafini did not witness plaintiff's conversation with Assistant State's Attorney Campos. (Serafini's 56(a)(1), doc. # 217–1 at ¶ 5; Pl.'s 56(a)(2), doc. # 226 at ¶ 5.) When she entered notations in plaintiff's case file on December 4, 2006, Serafini assumed that Attorney Campos had informed him of the continuance date. It was common practice at the Bantam courthouse for the state's attorney to meet with a criminal defendant on the first appearance date and give him a continuance date, after which the state's attorney would announce the continuance date in court in the defendant's absence. This practice occurred multiple times per week. (Serafini Dep. at 119–29; Wittstein Dep. at 57; Serafini's 56(a)(1) at ¶¶ 12–13; Pl.'s 56(a)(2), doc. # 226 at ¶¶ 12–13.)

**\*4** On January 5, 2007, defendant Serafini again was acting as courtroom clerk when plaintiff's case was called by Superior Court Judge Charles D. Gill. Plaintiff did not appear, and the judge ordered his rearrest on a charge of failure to appear. Supervising State's Attorney Andrew Wittstein

recommended a "substantial bond," and the judge set a $5000 cash or surety bond. [5] (Tr. 1/5/07, doc. # 28 at 7–8.) On January 29, 2007, the order of rearrest and bond was noted in the police blotter of a local newspaper, the Torrington Register–Citizen. (Doc. # 231–8.)

On January 10, 2007, defendant Serafini generated an arrest warrant application on the failure to appear charge. The application included a form affidavit stating that "the accused" was "directed to appear" and "failed to appear ... when legally called according to terms of his/her bail bond promise to appear" and that the court "ordered that a warrant be issued for the arrest of the accused for failure to appear and set the following conditions for release." Serafini filled in plaintiff's case data including the charge of larceny in the 6th degree, the date on which he failed to appear (January 5, 2007), the $5000 cash or surety bond and the new charge of Failure to Appear in the 2nd degree. She then dated and signed the affidavit. (Arrest Warrant, doc. # 150 at 9.) In a typical week, Serafini signs ten such affidavits after confirming the data in the case file, after which a state's attorney signs the warrant application and submits it to a judge. (Serafini's 56(a) (1) at ¶ 20; Pl.'s 56(a)(2), doc. # 226 at ¶ 20.) On January 11, 2007, a state's attorney signed the application portion of the document, and Judge Marano signed the warrant. (Doc. # 150 at 9.) Plaintiff was arrested and charged with failure to appear in the 2nd degree. (Serafini's 56(a)(1) at ¶ 22; Pl.'s 56(a)(2), doc. # 226 at ¶ 22.)

On March 1, 2007, at a hearing before Judge Marano at which defendant Serafini was acting as courtroom clerk, plaintiff argued through counsel that he had not been arraigned properly. At the judge's request, Serafini read her notations from the court file. State's Attorney Wittstein then explained that plaintiff had not physically appeared before a judge on December 4, 2006 but instead had spoken to Attorney Campos, who gave plaintiff a continuance date. Judge Marano asked Serafini to read the charges, took plaintiff's not-guilty pleas and jury election and set a continuance date. (Tr. 3/1/07 at 9–10, 13.)

On April 17, 2007, at his next appearance before Judge Marano, plaintiff moved to dismiss the failure to appear charge, arguing that on December 4, 2006 he had neither appeared before a judge nor received notice of the January 5th continuance date. (Tr. 4/17/07, doc. # 88–6 at 43–44.) The State objected that Attorney Campos had orally conveyed the continuance date to plaintiff on December 4th, after which the court "entered a not guilty plea automatically as it

does for statistical purposes." (*Id.* at 45–46.) Judge Marano indicated that he understood the parties' positions. (*Id.* at 48–50.) On May 8, 2007, in a written ruling, Judge Marano found probable cause to sustain the failure to appear charge and denied plaintiff's motion to dismiss. (Doc. # 88–12 at 22–25.) On May 24, 2007, Judge Marano denied plaintiff's motion for reconsideration. (Doc. # 88–12 at 32–33, 41.)

**\*5** On September 25, 2007, the State entered a *nolle prosequi,* explaining that difficulties with witnesses made it unwise to proceed with the prosecution. On plaintiff's motion, the charges were dismissed. (Tr. 9/25/07, doc. 88–6 at 62.)

During the pendency of the criminal case, defendants Killiany and Officer Guerrera had contact with the prosecuting attorneys. Defendant Killiany spoke to Assistant State's Attorney Campos four times about the case. (Killiany Dep. at 61; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 21; Killiany's 56(a)(2) at ¶ 21.) She spoke to Supervisory Assistant State's Attorney Wittstein about the case three times. The first time was during a court recess [6] when she described the Thanksgiving Day incident to him. The second time he informed her that plaintiff had been rearrested, and the third time he informed her that the case would be dismissed. Attorney Wittstein made notes on the prosecutor's file including "Do *Not* Nolle," and "speaks English." He also wrote "Victim Pissed" in reference to Killiany. He assumed that she was speaking both for herself and for Hebert and thought of her as the "combined victim." (Prosecutor's File, doc. # 230–9; Wittstein Dep. at 28–41; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 21; Killiany's 56(a) (2) at ¶ 21 .) The prosecutor's file also contained an undated, typed victim's letter with Hebert's name listed at the bottom. (Doc. # 230–5.) Killiany "contributed" to this letter. Hebert did not write the letter. (Killiany Dep. at 118–20; Hebert Dep. at 47–48, 86–90; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 24; Killiany's 56(a)(2) at ¶ 24.) The letter included the following statement: "Given [plaintiff's] skillful and swift actions, I am certain this is not the first time this man has stolen from someone. What was also concerning was that the arresting police officer stated that Mr. Garcia is employed as a CNA. It is frightening to think that a thief could be working [with] elderly and sick people who are easy targets for being victimized." (Doc. # 230–5.)

At some point while the criminal case was pending, Attorney Wittstein asked defendant Officer Guerrera to contact plaintiff's employer to ask whether plaintiff understood and spoke English. The employer responded that plaintiff needed to understand and speak English for his job. Guerrera verbally

informed Attorney Wittstein, who asked him not to generate a supplemental written report. (Guerrera Letter, doc. # 222–7; Guerrera Dep. at 85–86; Pl.'s 56(a)(1), doc. # 233–1 at ¶ 35.)

During the period in which she took clerical actions in plaintiff's criminal case, defendant Serafini did not speak to anyone about the larceny charge or the underlying incident. (Serafini Dep. at 33–34; Serafini Aff., doc. # 217–4 at 3–4; Serafini's 56(a)(1) at ¶ 24; Pl.'s 56(a)(2), doc. # 226 at ¶ 24.)

## IV. *Standard of Review*

A party is entitled to summary judgment if the record, including pleadings, depositions, answers to interrogatories, admissions and affidavits, establishes that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56. The moving party has the initial burden of showing an absence of evidence to support an essential element of the opposing party's claim. *See* *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To overcome this showing, the party opposing summary judgment "bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.' " *Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) (quoting *Celotex,* 477 U.S. at 324). The court must view the evidence in the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *See* *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000). On cross motions for summary judgment, the same standard applies. *Morales v. Quintel Entertainment,* Inc., 249 F.3d 115, 121 (2d Cir.2001). Each party's motion is examined on its own merits, and the court need not enter judgment for either party. *Id.; Marcoux v. American Airlines, Inc.,* 645 F.Supp.2d 68 (E.D.N.Y.2008).

**\*6** "On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial." *Nora Beverages v. Perrier Group of Am.,* 164 F.3d 736, 746 (2d Cir.1998).

## V. *Plaintiff's Motion in Limine (doc. # 225)*

As a preliminary matter, plaintiff seeks to exclude from consideration the Kmart surveillance video offered by defendants Officer Guerrera and Killiany. (Docs.# 93, # 223.) He argues that it is inadmissible on two grounds.

Plaintiff's first ground for exclusion is authenticity. He argues that the video cannot be properly authenticated because it is

a duplicate copy. Rule 1002 of the Federal Rules of Evidence provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." However, Rule 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." At his deposition, plaintiff admitted that the video shows him taking defendant Hebert's wallet. (Garcia Dep. at 96–105.) The police evidence custodian affirmed that the exhibit is an authentic copy of that video. (Murphy Aff., doc. # 251–1 at ¶¶ 18–19.) In view of this evidence, there is no genuine question as to authenticity.

Plaintiff's second ground for exclusion of the video is based on a series of suppositions. When defendants showed the video to plaintiff at his deposition, he admitted that it shows him taking defendant Hebert's wallet. He agreed that he saw a video of these events on a prior occasion but thought it had been shot from a different angle. (Garcia Dep., doc. # 222–11 at 96–102.) From that testimony, plaintiff speculates that there must have been two videos, one shot from the other angle (which he labels the "original" video) and the one defendants offer into evidence (which he labels the "substitute" video). Plaintiff next seizes on a notation in the evidence log stating "Destroy per Kmart." (Doc. # 225–6 at 3.) Although other pages in the evidence file clarify that the video was not among the items destroyed (docs.# 225–9, # 251–3), plaintiff advances an argument that defendants destroyed the alleged "original" video because the so-called "substitute" was more favorable to their case. (Pl.'s Mem., doc. # 225–1 at 4–5.)

The court is not persuaded that defendants have concealed, destroyed or substituted video evidence. The affidavit of the police evidence custodian affirms that he destroyed other evidence but not the surveillance video. [7] (Murphy Aff., doc. # 251–1 at ¶¶ 9–12.) The custodian adds: "I made two true and accurate DVD copies of the [original video]tape for Officer Guerrera for use in this case. A second or substitute tape has never existed. The original VHS tape was not destroyed. It remains in my custody." (*Id.* at ¶¶ 18–19.) In light of the foregoing, the exhibit is admitted for purposes of summary judgment.

## VI. *Guerrera Cross Motions (docs.# 220, # 233)*

**\*7** As to defendant Officer John (Giovanni) Guerrera, plaintiff claims false arrest, malicious prosecution and other Fourth Amendment violations under 42 U.S.C. § 1983

(Counts Two and Four) and state law (Counts One and Three). He also brings a state-law claim of intentional infliction of emotional distress (Count Twelve).

### A. *False Arrest and Malicious Prosecution*

To prevail on a § 1983 claim for either false arrest or malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment by establishing the elements of the parallel claim under state law. [8] *Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir.2002) (false arrest); *Davis v. Rodriguez,* 364 F.3d 424, 433–34 (2d Cir.2004) (malicious prosecution). Claims of false arrest and malicious prosecution implicate the Fourth Amendment right to be free from unreasonable seizures. *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003). Under Connecticut law, a plaintiff claiming false arrest or malicious prosecution has the burden of proving the absence of probable cause. *Estrada v. Torres,* 646 F.Supp.2d 253, 257 (D.Conn.2009) (citing *Bhatia v. Debek,* 287 Conn. 397, 410–11, 948 A.2d 1009 (2008) (malicious prosecution); *Beinhorn v. Saraceno,* 23 Conn.App. 487, 491, 582 A.2d 208 (1990) (false arrest)). The existence of probable cause is an absolute defense to claims of false arrest and malicious prosecution. *Ruttkamp v. De Los Reyes,* No. 3:10cv392(SRU), 2012 WL 3596064, at \*5 (D.Conn. Aug. 20, 2012) (citing *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002)).

Officer Guerrera seeks summary judgment on the ground that he had probable cause to arrest and charge plaintiff with larceny in the 6th degree. [9] "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir.2007). In other words, the court must assess "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch,* 439 F.3d 149, 153 (2d Cir.2006) (citing *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)). Because probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," it is a lower standard than preponderance of the evidence. *United States v. Juwa,* 508 F.3d 694, 701 (2d Cir.2007) (quoting *Illinois v. Gates,* 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Plaintiff offers several arguments against probable cause. He argues that because one form of larceny, a charge of larceny

of mislaid property, requires "fail[ure] to take reasonable measures to restore the property to a person entitled to it," Conn. Gen.Stat. § 53a–119(4), his alleged attempt to return the wallet to Hebert's home address and his eventual delivery of the wallet to the police station insulated him from liability. [10] He also accuses Officer Guerrera of failing to investigate thoroughly, making the arrest without a positive identification, and basing the probable cause determination on "false material" and "omitted information."

**\*8** None of these arguments is availing. When plaintiff arrived at the police station, he had the wallet in his possession, Officer Guerrera recognized his jacket from the surveillance video, and Killiany verbally identified him as the man he had seen earlier. [11] On the video, Officer Guerrera saw plaintiff concealing the wallet from the cashier, and he was aware that plaintiff, regardless of his English proficiency, had declined an opportunity to interact with Hebert as he exited the store with Hebert's wallet. These facts were sufficient for a person of reasonable caution to believe that plaintiff had committed larceny. Once he had probable cause to arrest, Officer Guerrera was not required to investigate whether plaintiff had attempted to return the wallet, nor was he required to believe to a certainty that the charge would be successfully prosecuted despite plaintiff's delivery of the wallet to the police station. As the Second Circuit has instructed, once a police officer has probable cause, he is not "required to explore and eliminate every theoretically plausible claim of innocence" before arresting a suspect. *Panetta v. Crowley,* 460 F.3d 388, 398 (2d Cir.2006) (quoting *Curley v. Village of Suffern,* 268 F.3d 65, 70 (2d Cir.2001)). In fact, he is "neither required nor allowed" to continue investigating, sifting and weighing information. *Id.* (quoting *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989)). Nor is the officer required to "believe with certainty that the arrestee will be successfully prosecuted." *Id.* at 396 (quoting *Curley,* 268 F.3d at 70). *See also Southerland v. City of New York,* 681 F.3d 122, 127 (2d Cir.2012) ("[w]hile probable cause requires more than 'mere suspicion,' ... it does not demand 'hard certainties' ") (citations omitted); *cf. Dawkins v. Williams,* 511 F.Supp.2d 248, 276 (N.D.N.Y.2007) (no probable cause to charge where evidence before police investigator included "conspicuous exculpatory statements").

Finally, plaintiff's argument that the probable cause determination was based on "false material" and "omitted information" is inapt. He bases his argument on case law involving issues of false statements or material omitted from arrest warrant affidavits presented to a magistrate. *See, e.g.,*

*Golino v. New Haven,* 950 F.2d 864, 870 (2d Cir.1991) (summary judgment properly denied where arrest warrant affidavit contained false statements and omitted information that was critical to finding of probable cause). Here, Officer Guerrera effected a warrantless arrest, so case law regarding the content of a warrant affidavit does not apply.

Because Officer Guerrera had probable cause to arrest and charge him, plaintiff cannot prevail on his claims of false arrest and malicious prosecution under § 1983.

### B. *Other § 1983 Fourth Amendment Claims* [12]

Plaintiff next maintains that Officer Guerrera violated his Fourth Amendment rights when he searched his wallet and seized the Kmart receipt after plaintiff was arrested. The claim cannot be levied at Officer Guerrera given plaintiff's concession that his wallet was searched by a different police officer. (Doc. # 237 at 12, 29–30.) Regardless, "it is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson,* 414 U.S. 218, 224 (1973).

**\*9** In addition, plaintiff argues that Officer Guerrera handcuffed him unreasonably. There is no evidence to support the claim that Officer Guerrera handcuffed him. [13] Nonetheless, even assuming that Officer Guerrera did handcuff him and that a jury could find this use of force unreasonable, Officer Guerrera is entitled to qualified immunity. Qualified immunity shields government officials from liability for civil damages unless (1) viewed in the light most favorable to the party asserting the injury, the facts as alleged amount to a violation of a constitutional or statutory right, and (2) the right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). At the time of plaintiff's arrest, " '[n]either the Supreme Court nor the Second Circuit [had] established that a person has a right not to be handcuffed in the course of a particular arrest.' " *Warner v. Gyle,* No. 3:09–CV–199(RNC), 2010 WL 3925211, at \*2 (D.Conn. Sept.30, 2010) (quoting *Soares v. Connecticut,* 8 F.3d 917, 922 (2d Cir.1993)).

### C. *Intentional Infliction of Emotional Distress*

Plaintiff also claims intentional infliction of emotional distress (Count Twelve) in connection with his arrest. To

prevail on a claim of intentional infliction of emotional distress in Connecticut, a plaintiff must prove:

> (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

*Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton v. Board of Educ. of Town of Stonington,* 254 Conn. 205, 210–11, 757 A.2d 1059 (2000) (citing 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)). This is initially a question for the court and becomes a factual issue only where reasonable minds disagree. *Id.* at 210, 757 A.2d 1059.

As a matter of law, absent other factors that may constitute "extreme and outrageous" conduct, a routine arrest will not be considered intentional infliction of emotional distress if the arresting officer has probable cause to arrest. *Moreno v. City of New Haven Dept. of Police Service,* 604 F.Supp.2d 364, 376 (D.Conn.2009). Here, Officer Guerrera had probable cause to effect the routine arrest, and he is entitled to summary judgment on the intentional infliction claim.

VII. *Killiany Cross–Motions (docs.# 218, # 230)*
With respect to defendant Lisa Killiany, plaintiff claims false arrest and malicious prosecution in connection with the larceny charge under 42 U.S.C. § 1983 (Counts Two and Four) and state law (Counts One and Three). He brings the same claims under § 1983 (Counts Six and Eight) and state law (Counts Five and Seven) in connection with the failure to appear charge. Finally, he brings state-law claims of defamation (Count Eleven) and intentional infliction of emotional distress (Count Twelve).

A. *False Arrest and Malicious Prosecution*
**\*10** Although defendant Killiany did not directly arrest or charge plaintiff with larceny and failure to appear, plaintiff alleges that she collaborated with defendant Officer Guerrera, defendant Serafini and State's Attorneys Campos and Wittstein to trump up charges against him as revenge for ruining her Thanksgiving dinner and to shield defendant Hebert from discipline for losing his police badge. [14] "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." [15] *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003). Under Connecticut law, a plaintiff claiming false arrest or malicious prosecution has the burden of proving the absence of probable cause. *Estrada v. Torres,* 646 F.Supp.2d 253, 257 (D.Conn.2009) (citing *Bhatia v. Debek,* 287 Conn. 397, 410–11, 948 A.2d 1009 (2008) (malicious prosecution); *Beinhorn v. Saraceno,* 23 Conn.App. 487, 491, 582 A.2d 208 (1990) (false arrest)). The existence of probable cause is an absolute defense to claims of false arrest and malicious prosecution. *Ruttkamp v. De Los Reyes,* No. 3:10cv392(SRU), 2012 WL 3596064, at \*5 (D.Conn. Aug. 20, 2012) (citing *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002)).

In light of the court's finding *supra* that Officer Guerrera had probable cause to arrest plaintiff, Killiany is entitled to summary judgment on the claims of false arrest and malicious prosecution regarding the larceny charge. As for the failure to appear charge, that was a secondary development in the criminal case for which no reasonable jury would find Killiany responsible. She was not present when Attorney Campos allegedly gave plaintiff a continuance date or at any of the subsequent court proceedings. There is no evidence that she sought rearrest or encouraged prosecution on the failure to appear charge. She did not discuss plaintiff's case with Serafini, the administrative assistant who prepared the rearrest warrant. In fact, Killiany first learned of the failure to appear charge in a passing conversation with Attorney Wittstein after rearrest already had been ordered. Negative inferences from Killiany's thank-you letter to the Torrington Police Department, friendship with Attorney Campos and communication with the prosecution as a purported victim are not sufficient to establish that she instigated plaintiff's rearrest and prosecution on the charge of failure to appear. For these reasons, she is entitled to summary judgment on the claims of false arrest and malicious prosecution. [16]

B. *Defamation*

Killiany is also entitled to summary judgment on plaintiff's claim that she defamed him by calling him "motherf——er" at the police station in Torrington. [17] To establish a *prima facie* case of defamation, a plaintiff must demonstrate that (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement. *Cweklinsky v. Mobil Chemical Co.,* 267 Conn. 210, 217, 837 A.2d 759 (2004). A communication injures a plaintiff's reputation if it "tends to ... lower him in the estimation of the community or to deter third persons from associating or dealing with him." 3 Restatement (Second), Torts § 559, *quoted in QSP, Inc. v. Aetna Cas. and Sur. Co.,* 256 Conn. 343, 356, 773 A.2d 906 (2001). No reasonable jury could find that directing a general expletive at plaintiff in the presence of his relative and several police officers caused an actionable injury to his standing in the community or would deter third persons from associating or dealing with him.


C. *Intentional Infliction of Emotional Distress*

**\*11** Plaintiff next claims of intentional infliction of emotional distress (Count Twelve). To prevail on a claim of intentional infliction of emotional distress in Connecticut, a plaintiff must prove:


> (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.


*Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton v. Board of Educ. of Town of Stonington,* 254 Conn. 205, 210–11, 757 A.2d 1059 (2000) (citing 1 Restatement

(Second), Torts § 46, comment (d), p. 73 (1965)). This is initially a question for the court and becomes a factual issue only where reasonable minds disagree. *Id.* at 210, 757 A.2d 1059.


Plaintiff contends that Killiany exploited her connections as a courthouse employee and wife of a police officer to convince the police, the prosecutors and the courtroom clerk to prosecute him with unusual vigor. He theorizes that she wanted revenge because her Thanksgiving holiday was ruined and her husband was embarrassed in front of his brother officers, citing circumstantial evidence such as Killiany's use of an expletive at the police station, her thank-you note to the Torrington police for treating Hebert as "one of your own," her conversations with prosecutors and her drafting of a letter to the prosecutor over Hebert's name.


Although the circumstances of plaintiff's initial appearance at the Bantam courthouse are disturbing, [18] Killiany's own conduct was not extreme or outrageous. With respect to the expletive, "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Appleton v. Board of Educ. of Town of Stonington,* 254 Conn. 205, 211, 757 A.2d 1059 (2000). As for her communication with prosecutors, Article 1, § 8 of the Constitution of the State of Connecticut gives a victim of a crime the right to communicate with the prosecution and the right to notification of court proceedings. *See also* Conn. Gen.Stat. § 1–1k ("crime victim" means an individual who suffers direct or threatened physical, emotional or financial harm as a result of a crime). It is apparent by their notations on the case file that Assistant State's Attorneys Campos and Wittstein considered Killiany to be a crime victim. As a result, her communications with the state's attorneys were within the "bounds of decency" as expressed in the state constitution. To the extent that plaintiff might be contending that the state's attorneys gave Killiany a degree of access to which she was not entitled by statute, the responsibility for that decision is theirs. In sum, Killiany is entitled to summary judgment on the claim of intentional infliction of emotional distress.


VIII. *Serafini Cross–Motions (docs.# 217, # 227)*

**\*12** Turning to the allegations against defendant Jane Serafini, plaintiff claims false arrest, malicious prosecution and abuse of process [19] under 42 U.S.C. § 1983 (Counts Six, Eight and Ten) and state law (Counts Five, Seven and

Nine) in connection with his arrest and prosecution on the failure to appear charge. He also claims intentional infliction of emotional distress (Count Twelve) under state law.

The relevant undisputed facts are as follows. Although plaintiff was not present when his case was called on his initial court date, courtroom clerk Serafini entered a continuance date, not-guilty plea and jury election in the court file on December 4, 2006. After he failed to appear on the continuance date and the judge ordered his rearrest, Serafini generated an arrest warrant affidavit stating that he had been "directed to appear" on the continuance date. Finally, she read the contents of the court file when so ordered by the judge during a subsequent proceeding. Both the notations in the file and the generation of the affidavit were undertaken pursuant to established courthouse practices. Plaintiff urges the court to infer from Serafini's actions that she deliberately misled the court so as to trump up charges against plaintiff at defendant Killiany's behest.

Serafini maintains that she is entitled to absolute quasi-judicial immunity because her actions were part of the judicial process. Judicial immunity does not attach *per se.* It depends on "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Under this functional approach, [20] court clerks are immune from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997). Specifically, quasi-judicial immunity attaches when a court clerk undertakes "discretionary acts that implement judicial decisions or that are performed at the discretion or under the supervision of a judge." *Bliven v. Hunt,* No. 05–CV–4852 (SJF/LB), 2005 WL 3409620, *2 (E.D.N.Y. Dec.12, 2005) (citations omitted). Additionally, court clerks are absolutely immune from suit for "functions which are administrative in nature if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court." [21] *Humphrey v. Court Clerk for the Second Circuit,* No. 5:08–CV–0363, 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008). The Connecticut state courts apply the same "functional approach" to determine whether quasi-judicial immunity attaches to state-law claims. *See Gross v. Rell ("Gross I"),* 585 F.3d 72, 81–82 (2d Cir.2009) (citing *Carrubba v. Moskowitz,* 274 Conn. 533, 542–43, 877 A.2d 773 (2005)), *question certified to Gross v. Rell,* 304 Conn. 234, 273–281 (2012) (applying *Cleavinger* factors).

Defendant Serafini's actions in this case were an integral part of the judicial process. Her notations in the court file, generation and signing of an affidavit and recitation of the file contents were done either at a judge's direction or pursuant to established practices of the state court at Bantam. *See, e.g., McKnight v. Middleton,* 699 F.Supp.2d 507, 525–26 (E.D.N.Y.2010) (court clerk immune from claim that he "failed to process" plaintiff's submissions), *Humphrey v. Court Clerk for the Second Circuit,* No. 5:08–CV–0363, 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (court clerk immune from claim that she failed to timely inform plaintiff that his appeal was dismissed and neglected to update him on status of appeal); *Pikulin v. Gonzales,* No. 07–CV–412, 2007 U.S. Dist. LEXIS 25551, *6, 2007 WL 1063353 (E.D.N.Y. April 5, 2007) (filing and docketing tasks are integral part of judicial process); *Humphrey v. Court Clerk, NDNY,* No. 5:05–CV–1159 (NAM), 2005 WL 2490155, * (N.D.N.Y. Oct.7, 2005) (court clerks immune from claim that they failed to advise plaintiff that e-mail address was not acceptable under local rule for purposes of service and correspondence). The fact that Serafini's actions were subject to review by the judge—and, moreover, were reviewed—is further indication of their quasi-judicial nature. *See Gross v. Rell ("Gross II"),* 695 F.3d 211, 213–14 (2d Cir.2012) (citing *Cleavinger* factors including "the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct"); *Bimler v. Crouch,* No. 3:04CV1478 (WWE), 2005 WL 1074419, at *3 (D.Conn. May 02, 2005) (support enforcement officer immune from claim that he "misrepresented material facts" when drafting order because family support magistrate reviewed the order).

 **\*13** For these reasons, Serafini is entitled to absolute quasi-judicial immunity on all claims.

IX. *Civil Conspiracy*

Finally, plaintiff claims that Officer Guerrera, Killiany and Serafini are civil conspirators and therefore liable for the tortious acts of the other defendants. Civil conspiracy is not an independent cause of action. Under § 1983, a claim of civil conspiracy requires proof of an underlying violation of a federal right. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995) ("the [conspiracy] lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right"). Similarly, under Connecticut law, "a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Master–Halco, Inc. v. Scillia, Dowling & Natarelli, LLC,* 739 F.Supp.2d 104, 106–107 (D.Conn.2010) (quoting *Macomber v. Travelers*

*Property & Casualty Corp.,* 277 Conn. 617, 636, 894 A.2d 240 (2006)). Because the defendants are entitled to summary judgment on all underlying substantive claims, the civil conspiracy claims fail as a matter of law. *DeStefano v. Duncanson,* No. 08 CIV. 3419(GBD), 2011 WL 651452, at *4 (S.D.N.Y. Feb.10, 2011) (dismissing § 1983 conspiracy claim); *Presley v. Pepperidge Farm, Inc.,* 356 F.Supp.2d 109, 136–37 (D.Conn.2005) (summary judgment on state conspiracy claim).

X. *Conclusion*

For the foregoing reasons, plaintiff's Motion in Limine (doc. # 225) is DENIED; defendants' Motions for Summary Judgment (docs.# 217, # 218, # 220) are GRANTED; and plaintiff's Cross–Motions (docs.# 227, # 230, # 233) are DENIED.

This is not a recommended ruling. The parties have consented to the authority of a magistrate judge in all proceedings in this case including the entry of final judgment pursuant to 28 U.S.C. 636(c) and Fed.R.Civ.P. 73. (Doc. # 276.)

SO ORDERED at Hartford, Connecticut this 27th day of March, 2013.

**APPENDIX of Filings by ECF Number**

| | Serafini | Killiany | Guerrera |
|---|---|---|---|
| **P's Motion in Limine** | | | **# 225** |
| **P's Memo** | | | # 225–1 |
| **Ds' Responses** | | | # 251, 261 |
| **P's Reply** | | | # 267 (268) |
| **D's SJ** | **# 217** | **# 218** | **# 220** |
| **D's 56(a)(1)** | # 217–1 | # 219 | # 222 |
| **D's Memo** | # 217–2 | # 219–8 | # 221 |
| **P's 56(a)(2)** | # 226 | # 229 | # 232–1 |
| **P's Cross–SJ** | **# 227** | **# 230** | **# 233** |
| **P's 56(a)(1)** | # 227–1 | # 230–1 | # 233–1 (232) |
| **P's Memo/Response** | # 236 (239) | # 235 (238) | # 237 (240) |
| **D's Response/Reply** | # 256 | # 258 (260) | # 252 (253) |
| **D's 56(a)(2)** | # 257 | # 259 | # 266 (254) |
| **P's Reply** | # 270 | # 271 | # 269 |

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1294412

# Footnotes

1   The filings that pertain to the pending motions are voluminous. *See* Appendix of Filings by ECF Number.

2   The court is mindful that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720, (1988), *quoted in Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003). Here, considerations of economy, convenience and fairness militate in favor of supplemental jurisdiction. Discovery is complete, and all issues are ripe for adjudication. The court has decided a motion for default judgment and two motions to dismiss, one of which was relitigated in an interlocutory appeal and motion to vacate. Plaintiff also filed a prior motion for summary judgment, which the court denied as moot. There are no novel questions of state law. *See, e.g., Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055 (2d Cir.1990) (exercising supplemental jurisdiction where discovery was complete; the court had decided three dispositive motions; the case was trial-ready; and the state-law claims involved only settled principles).

3   Plaintiff alleges that after he left Kmart, he attempted to return the wallet at a condominium address listed on Hebert's driver's license. No one answered the door, so plaintiff left a note with his sister's phone number. On his way home, his sister informed him that the resident of the condominium had called to say that he had not lost a wallet. Plaintiff's relative then telephoned the Winchester Police Department and reported that plaintiff had found Hebert's wallet. The duty officer told them to take the wallet to the Torrington Police Department. (Second Am. Compl., doc. # 137 at 4–5.)

4   Campos testified that she gave plaintiff a continuance date of January 5, 2007. (Campos Dep. at 150–53.) Plaintiff disputes that testimony.

5   Sometimes when a defendant missed a court appearance, judges at the Bantam courthouse ordered a warning to be mailed (called a bail notice) in lieu of immediate rearrest. (Campos Dep. at 54–56.) Plaintiff alleges that Attorney Wittstein advocated for rearrest and substantial bond in this case at Killiany's behest.

6   Killiany was often in court because it was her duty to make recommendations to the court during arraignment proceedings on domestic violence charges. (Killiany Dep. at 5–7; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 1.)

7   The full inventory of evidence was two Kmart receipts and one surveillance video. The receipts were destroyed pursuant to a state court order because they were not claimed after six months. (Docs.# 225–6, # 225–9, # 251–3.)

8   The Connecticut Supreme Court has articulated the elements of these claims as follows. To prevail on a claim of false arrest, a plaintiff must prove that "his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." *Berry v. Loiseau,* 223 Conn. 786, 820, 614 A.2d 414 (1992). With respect to malicious prosecution, a plaintiff must prove that: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *McHale v. W.B.S. Corp.,* 187 Conn. 444, 447, 446 A.2d 815 (1982).

9   Officer Guerrera urges the court to apply the doctrine of collateral estoppel to bar plaintiff from challenging probable cause, an issue that the state court addressed in the criminal case. Plaintiff responds that collateral estoppel should not apply because he did not receive a full and fair hearing in the Superior Court. (Pl's Mem.,

doc. # 237 at 35–36.) Because the court finds that Officer Guerrera had probable cause, it need not reach collateral estoppel.

10    "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to: ... (4) Acquiring property lost, mislaid or delivered by mistake. A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of larceny if, with purpose to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to it." Conn. Gen.Stat. § 53a–119. "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a–119 and the value of the property or service is five hundred dollars or less." Conn. Gen.Stat. § 53a–125b.

11    After Officer Guerrera brought the surveillance video to the police station, another police officer misidentified the man on the video as a transient named "Weston." That officer then went out looking for Weston. (Guida Dep. at 49–60.) Plaintiff appears to argue that he was arrested on the basis of his resemblance to Weston and/or because he is "a dark-skinned Hispanic." (Pl.'s Mem., doc. # 237 at 11–12, 28–29.) The argument is unpersuasive in light of the facts known to Officer Guerrera at the time of plaintiff's arrest.

12    Besides his Fourth Amendment allegations, plaintiff contends that Officer Guerrera violated his "Fifth and Sixth [A]mendment guarantees against self-incrimination and right to counsel." (Pl.'s Mem., doc. # 237 at 18.) Because he supplies no evidence or argument to substantiate the contentions, the court does not address them. Plaintiff also argues that procedural deficiencies in the April 17, 2007 court proceeding deprived him of his right to confront witnesses under the Sixth Amendment. (*Id.* at 37, 446 A.2d 815.) This is a futile argument. The state court, not Officer Guerrera, decided how the criminal case would proceed.

13    Plaintiff testified that "another policeman came, a younger guy. He cuffed me, and took me to the back." (Garcia Dep. at 80.) Officer Guerrera testified that he could not recall who processed the arrest. (Guerrera Dep. at 38–39.) In deposition testimony, a different police officer inferred from the paperwork that he (not Guerrera) had booked plaintiff but could not recall handcuffing him. (Guida Dep. at 62–64.)

14    Plaintiff alleges without further explanation that Killiany was acting under color of state law. Although Killiany was a state employee, "mere employment by the state does not mean that the employee's every act can properly be characterized as state action." *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 230 (2d Cir.2004) (citing *West v. Atkins,* 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ("generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law")). Alternatively, a private individual may be deemed a state actor for § 1983 purposes "if he or she willfully collaborated with an official state actor in the deprivation of the federal right." *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993); *see also Khulumani v. Barclay Nat. Bank Ltd.,* 504 F.3d 254, 316 (2d Cir.2007) (private actor "must jointly participate in the wrongful conduct, pursuant to a common design or plan"); *Shattuck v. Town of Stratford,* 233 F.Supp.2d 301, 313 (D.Conn.2002) (private actor may be liable for § 1983 false arrest or malicious prosecution if she instigated the arrest or commenced the proceedings). Because the claim fails on other grounds, the court need not linger on this issue.

15    *See* elements of false arrest and malicious prosecution *supra* at n. 8.

16    In Counts Four and Eight, plaintiff appears to allege that Killiany is responsible for the fact that he was not informed on December 4, 2006 of an indigent's Sixth Amendment right to appointed counsel. (Second Am. Compl., doc. # 137 at ¶¶ 19B, 36, 54.) Because he supplies no evidence or argument to substantiate the contentions, the court does not address it.

17    In his brief, plaintiff also claims that he was defamed by the mention of his rearrest in the newspaper's police blotter (doc. # 234–8) and by Killiany's statements in the victim letter in his court file (doc. # 230–5). These claims were not alleged in the complaint (doc. # 137) and cannot be raised for the first time on summary judgment. Regardless, Killiany is not liable for the newspaper's statement because she did not make it. Nor for that matter could any party be liable for publishing the fact of plaintiff's rearrest. *Holmes v. Town of East Lyme,* 866 F.Supp.2d 108, 133 (D.Conn.2012) ("truth is a complete defense to a claim of defamation"). As for Killiany's contributions to the victim letter, those statements are privileged from a claim of defamation because they were made for the purpose of marshaling the state's evidence for a judicial proceeding. *See Rioux v. Barry,* 283 Conn. 338, 343, 927 A.2d 304 (2007) (public policy justifies immunity from defamation suit for "those who provide information in connection with judicial and quasi-judicial proceedings"); *Kelley v. Bonney,* 221 Conn. 549, 572–74, 606 A.2d 693 (1992) (communications made to discrete group for purpose of marshaling evidence for quasi-judicial proceeding were privileged from defamation suit).

18    The Second Circuit affirmed this court's dismissal of plaintiff's claims against the state's attorneys on the basis of absolute prosecutorial immunity but noted that it was "disturbed by the allegations of prosecutorial conduct" and described the practices as "if not unconstitutional, likely illegal and certainly improper." *Garcia v. Hebert,* No. 09–1615–CV, 352 Fed. Appx. 602 (unpublished), 2009 WL 3765549 (2d Cir. Nov.12, 2009).

19    *See* elements of false arrest and malicious prosecution *supra* at n. 8. To prevail on a claim of abuse of process, a plaintiff must prove that the defendant used a legal process against another primarily to accomplish a purpose for which it was not designed. *Mozzochi v. Beck,* 204 Conn. 490, 494, 529 A.2d 171 (1987).

20    Whether quasi-judicial immunity attaches under the functional approach may be determined by the so-called *Cleavinger* factors:

    (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

    *Cleavinger v. Saxner,* 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), *cited in Gross v. Rell ("Gross II"),* 695 F.3d 211 (2d Cir.2012).

21    By contrast, court officers are not entitled to quasi-judicial immunity when they perform "purely ministerial and administrative" tasks that are non-judicial in nature or when they act outside the scope of her official duties. *Quitoriano v. Raff & Becker, LLP,* 675 F.Supp.2d 444, 450 (S.D.N.Y.2009). *See, e.g., Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (judge not entitled to absolute immunity for decision to demote and fire probation officer); *Atherton v. D.C. Office of Mayor,* 567 F.3d 672, 683–86 (D.C.Cir.2009) (court officer's dismissal of allegedly disruptive grand juror was administrative, not adjudicative, and not subject to absolute quasi-judicial immunity).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

🏳 KeyCite Blue Flag – Appeal Notification

Appeal Filed by   Leftridge v. Judicial Branch,   2nd Cir.,   July 14, 2023

2023 WL 4304792

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Vernon J. LEFTRIDGE, Jr., Plaintiff,

v.

State of Connecticut JUDICIAL
BRANCH et al., Defendants.

No. 3:22-cv-411 (JAM)
|
Signed June 30, 2023

**Attorneys and Law Firms**

Vernon J. Leftridge, Jr., Hagerstown, MD, Pro Se.

Blake Thomas Sullivan, Timothy J. Holzman, State of CT, Office of the Attorney General, Hartford, CT, for Defendants Judicial Branch, Joan Andrews, Cassandra Williams, Andrea Gaines, Steven Samalot, Richard Julius, Carolyn Anderson, David Gage, Leanne Shaughnessy.

Tanya Feliciano DeMattia, State of CT, Office of the Attorney General, Hartford, CT, for Defendant Connecticut Department of Social Services.

Bobbi Lynn Wallace, Office of the Attorney General, Baltimore, MD, Timothy J. Holzman, State of CT, Office of the Attorney General, Hartford, CT, for Defendant Alyson Saunders.

**ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS**

Jeffrey Alker Meyer, United States District Judge

**\*1** The plaintiff has filed a complaint *pro se* and *in forma pauperis* against the Connecticut Department of Social Services, the Connecticut Judicial Branch, several state court employees, state prosecutors, and other state employees for actions relating to the plaintiff's various child support and child custody cases. For the reasons set forth below, I will grant the defendants' motions to dismiss.

**BACKGROUND**

The complaint spans 97 pages—not including 226 pages of exhibits—and numbers 361 paragraphs. [1] Here I recite only those alleged facts that appear relevant to this ruling and I assume these alleged facts to be true solely for purposes of this ruling.

Plaintiff Vernon J. Leftridge is a disabled African American and Native American male. [2] Leftridge has a minor child, R.L., who resides in Maryland, and an adult child, Juwan James Leftridge ("Juwan"), who resides in Maine. [3] His claims in this case revolve around custody and child support orders entered by the state courts of Connecticut and Maryland.

In 2005, Norwich Superior Court Judge Cynthia Sweinton awarded Leftridge primary custody of Juwan. [4] At some point, David Gage, Chief Clerk of New London and Norwich Judicial Districts, along with Norwich Superior Court Deputy Chief Clerks Corinne McCarthy and Cara Parkinson, modified the court order to remove Leftridge's custody award and insert a $50 weekly child support requirement. [5] Leftridge and his attorney were "victims of severe racial discrimination, harassment, racism and unlawfully kicked out" of the Norwich Superior Courthouse by Gage and a Connecticut Assistant Attorney General. [6] The Appellate Court of Connecticut later vacated and remanded Judge Sweinton's order on the ground that Leftridge had not been served with Connecticut's motion to modify the child support obligation. [7] See *Leftridge v. Wiggins*, 44 A.3d 217, 220–21 (Conn. App. 2012).

Fast forward to 2017, when R.L.'s mother, Niambi Kafi Heyward, filed a paternity and support petition in Maryland. [8] Leftridge was not served with Heyward's petition and was not notified of the subsequent hearing. [9] On the date of the hearing, in which Connecticut Assistant Attorney General Andrea Gaines represented the State of Connecticut, Family Magistrate Judge David A. Dee ordered Heyward to file an amended petition. [10] The Hartford Interstate Support Enforcement Supervisor removed the court order from the website of the State of Connecticut Judicial Branch ("Judicial Branch"). [11]

In April 2018, Judge Dee entered a default order for retroactive child support without notifying Leftridge or Heyward. [12] During the course of these proceedings, Gaines appeared *ex parte* before Judge Dee and made numerous misrepresentations. [13] In August 2018, Uniform Interstate Family Support Act ("UIFSA") Support Enforcement Supervisor Richard Julius falsely certified that Leftridge has been served with process in the Heyward action. [14]

 **\*2**  In January 2019, Leftridge asked Gaines for a copy of documents in the Heyward action, but Gaines refused and "became very hostile towards plaintiff in a racially motivated derogatory t[o]ne of voice." [15] Leftridge then filed a misconduct complaint against Gaines with the Connecticut Statewide Grievance Committee, which he followed up with two additional complaints against Gaines. [16]

On May 9, 2019, Family Magistrate Judge Glady I. Nieves modified Leftridge's child support obligations and arrearage to zero because Leftridge became unable to work due to disability. [17] Nieves ordered Gaines and Connecticut Assistant Attorney General Steven Samalot to produce documents relating to the child support proceedings pertaining to Juwan, but they did not do so. [18] Leftridge subsequently served discovery requests on Heyward, who did not complete them because Gaines told her not to. [19] Leftridge also alleges that Gaines and "unknown defendants she involved" "robbed [him] of his favorable May 9, 2019 court ruling." [20]

In September 2019, Family Court Clerk Cassandra Williams, Family Court Clerk Carolyn Anderson, and Gaines disclosed Leftridge's medical records to Judicial Branch employees. [21] Family Court Clerk Manager Leanne Shaughnessy is Williams's and Anderson's supervisor. [22] Leftridge filed requests for electronic access and for information relating to his court records, but the Judicial Branch and Williams denied them. [23]

At a December 2019 hearing before Family Magistrate Judge Donald Green, Gaines, Anderson, and Williams made numerous misrepresentations, withheld documents, and refused to produce witness statements. [24] Leftridge also alleges that Williams, Anderson, and unknown employees modified court records and that Gaines, Williams, and Anderson attempted to have Leftridge "arrested, prosecuted,

and convicted" for not paying his child support. [25] As a result of the hearing, the Connecticut Department of Social Services ("DSS") reported Leftridge's credit information to credit reporting agencies. [26] The day after the hearing, Judge Green's rulings at the hearing were vacated but Judge Nieves's modification of Leftridge's child support obligation to zero was not restored, which Leftridge alleges was because of "continued lies by [Connecticut Assistant Attorney General] Andrews and Anderson." [27]

In September 2021, Leftridge requested family court records from Child Support Specialist Alyson Saunders, an employee of the Maryland Department of Human Services, who denied his requests. [28] In October 2021, Leftridge attended an appeals hearing before Judge Klau and alleges that Andrews once again made misrepresentations to the court. [29] Later that month, Williams denied Leftridge's request for copies of court documents, and Judicial Branch Deputy Chief Clerk Rene L. Roberston returned his motion for review on the ground that it was premature. [30]

 **\*3**  In April 2022, DSS refused to provide Leftridge with documents that form the basis of DSS's negative reports to credit bureaus. [31] DSS also refused to alter the credit information that it reported to credit bureaus. [32]

I previously entered an order to show cause explaining that Leftridge's original complaint did not comply with Rule 8 of the Federal Rule of Civil Procedure. This rule requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation must be simple, concise, and direct." *See Leftridge v. Jud. Branch*, 2022 WL 867543, at \*2–3 (D. Conn. 2022) (quoting Fed. R. Civ. P. 8(a)(2) and 8(d)(1)). I also noted that it was unclear whether Leftridge's original complaint complied with Rule 20's limits on permissive joinder of claims against multiple defendants. *See id.* at \*3.

Now Leftridge has filed an amended complaint *pro se* and *in forma pauperis* alleging 26 claims against the following defendants: Assistant Attorney General for the Connecticut Office of the Attorney General Andrea Gaines, Assistant Attorney General Joan Andrews, Assistant Attorney General Steven Samalot, UIFSA Support Enforcement Supervisor Richard Julius, Family Court Clerk Carolyn Anderson, Family Court Clerk Cassandra Williams, Family Court Clerk Manager Leanne Shaughnessy, Maryland

Department of Human Services Child Support Specialist Alyson Saunders, Chief Clerk of New London and Norwich Judicial Districts David Gage, "unknown employees," the Connecticut Department of Social Services, and the State of Connecticut Judicial Branch. [33] Leftridge names all but the last two defendants in their individual and official capacities. [34]

*Counts One and Seventeen.* Leftridge alleges that the defendants deprived him of his Fourteenth Amendment due process rights as enforceable under 42 U.S.C. § 1983. [35]

*Count Two.* Leftridge alleges that the defendants violated the common law by engaging in the spoliation of evidence. [36]

*Count Three.* Leftridge alleges that the defendants engaged in witness tampering, manipulation of court records, and obstruction of court proceedings in violation of the United States Constitution and the Connecticut Constitution. [37] Leftridge does not cite which provision of the United States Constitution the defendants violated, but I will presume that he alleges a violation of his due process rights under the Fourteenth Amendment as enforceable under 42 U.S.C. § 1983.

*Count Four.* Leftridge alleges that the defendants discriminated against him on the basis of his gender and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a–60 *et seq.* [38]

*Count Five.* Leftridge alleges that the defendants discriminated against him on the basis of disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* [39]

**\*4** *Count Six.* Leftridge alleges that Shaughnessy engaged in negligent supervision of her employees Williams and Anderson. [40]

*Count Seven.* Leftridge alleges that the Judicial Branch denied Leftridge access to public accommodation by denying him electronic access to the court system. [41] Leftridge does not specify the statute the Judicial Branch violated, but I will presume that he alleges a violation of the ADA.

*Count Eight.* Leftridge alleges that the Judicial Branch denied him equal protection under state law. [42]

*Count Nine.* Leftridge alleges that DSS denied him equal protection under the law, violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.,* and violated Title IV-D of the Social Security Act ("SSA"), 42 U.S.C. § 651 *et seq.* [43]

*Counts Ten and Thirteen.* Leftridge alleges that the defendants violated the FCRA and state tort law, and that they discriminated against him on the basis of his age. [44] Leftridge does not specify which law the defendants violated in discriminating on the basis of age, but I will presume that he alleges a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

*Count Eleven.* Leftridge alleges that the defendants violated his First Amendment right to freedom of speech as enforceable under 42 U.S.C. § 1983. [45]

*Count Twelve.* Count Twelve is titled "pendent cause of action" and repeats several causes of action already alleged in prior counts. It also alleges that the defendants committed extortion and violated section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794. [46]

*Count Fourteen.* Leftridge alleges that the defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* [47]

*Count Fifteen.* Leftridge alleges that the defendants violated the "Consumer Fraud Act." [48] There is no federal statute by that name. Accordingly, I will assume he is trying to allege a claim under Connecticut's consumer-fraud statute: the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110a *et seq.*

*Count Sixteen.* Leftridge alleges that the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* [49]

*Count Eighteen.* Leftridge alleges that the defendants violated the Fourth Amendment as enforceable under 42 U.S.C. § 1983 by prosecuting him without probable cause. [50]

**\*5**  *Count Nineteen.* Leftridge alleges that the defendants violated § 1983 by failing to intervene in the deprivation of his constitutional rights. [51]

*Count Twenty.* Leftridge alleges that the defendants violated § 1983 by conspiring to deprive him of his civil rights. [52]

*Count Twenty-One.* Leftridge alleges that the Judicial Branch and DSS promulgated policies that resulted in the violation of Leftridge's constitutional rights. [53]

*Count Twenty-Two.* Leftridge alleges that the defendants maliciously prosecuted him. [54]

*Count Twenty-Three.* Leftridge alleges that the defendants engaged in intentional infliction of emotional distress. [55]

*Count Twenty-Four.* Leftridge alleges that the defendants conspired to deprive him of his rights in violation of state law. [56]

*Count Twenty-Five.* Leftridge alleges that the supervisor defendants are liable for the misconduct of their employees under the principle of *respondeat superior.* [57]

*Count Twenty-Six* (mislabeled as Count Twenty). Leftridge alleges that the government agencies of which the defendants are members are obligated to indemnify their employees and agents for their torts. [58]

Leftridge seeks compensatory and punitive damages, injunctive and declaratory relief, and attorney's fees and costs. [59]  The defendants have moved to dismiss all of Leftridge's claims. [60]  For the reasons set forth below, I will grant the defendants' motions.

## DISCUSSION

The standard that governs a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the Court's subject-matter jurisdiction as well as the plaintiff's grounds for relief. *See Brownback v. King,* 141 S. Ct. 740, 749 (2021); *Ashcroft v. Iqbal,* 556 U.S. 662,

678 (2009). [61]  The Court must "accept as true all factual allegations and draw from them all reasonable inferences," but it is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States,* 939 F.3d 191, 198 (2d Cir. 2019).

The Court must read the allegations of a *pro se* complaint liberally to raise the strongest arguments that they suggest. *See Meadows v. United Servs., Inc.,* 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See ibid.*

### Federal claims against DSS, the Judicial Branch, and the individual defendants in their official capacities

**\*6**  DSS and the Judicial Branch are agencies of the State of Connecticut, and the individual defendants are employees of various state agencies. The Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of subject matter jurisdiction over lawsuits by private citizens against the States, state government entities, and state government officials in their official capacities. *See generally Lewis v. Clarke,* 137 S. Ct. 1285, 1290–91 (2017); *T.W. v. N.Y. State Bd. of L. Examiners,* 996 F.3d 87, 92 (2d Cir. 2021). "The Eleventh Amendment, however, is not without exception." *We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.,* 579 F. Supp. 3d 290, 300 (D. Conn. 2022). "Congress may abrogate a state's immunity by statute, a state may waive its immunity, or a state official may be sued in his or her official capacity under the *Ex Parte Young* doctrine." *Ibid.* (citing *In re Deposit Ins. Agency,* 482 F.3d 612, 617 (2d Cir. 2007)); *see also Ex parte Young,* 209 U.S. 123 (1908).

I will dismiss Leftridge's claims alleging violations of 42 U.S.C. § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA because they do not fall within any exception to Eleventh Amendment sovereign immunity. First, Congress has not abrogated Eleventh Amendment immunity for claims arising under 42 U.S.C. § 1983, the FCRA, the FDCPA, SSA Title IV-D, and TILA. *See Quern v. Jordan,* 440 U.S. 332, 340–45 (1979) (§ 1983); *Badger v. CUNY Graduate Ctr.,* 2023 WL 35223, at \*5 (S.D.N.Y. 2023) (citing, *inter alia, Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 59 (1996)) (FCRA); *Banks v. ACS Educ.,* 638 F. App'x 587, 589 (9th Cir. 2016) (citing 15 U.S.C. § 1692a(6)(C)) (FDCPA); *Parent v. New York,* 786 F. Supp. 2d 516, 531 (N.D.N.Y. 2011) (SSA Title IV-D), *aff'd,* 485 F. App'x 500 (2d Cir. 2012); *Patel v.*

*Univ. of Md. Coll. Park*, 2023 WL 2023264, at *4 (D. Md. 2023) (citing, *inter alia*, 15 U.S.C. § 1612(b)) (TILA). The Supreme Court has rejected Congress's attempt to abrogate state sovereign immunity under the ADEA. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 66–67 (2000). Nor has Leftridge alleged that Connecticut has waived its immunity with respect to any of these laws. *Cf. Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 400 (2d Cir. 2017) ("[T]he plaintiff bears the burden of establishing that her claims fall within an applicable waiver.").

Finally, the *Ex parte Young* exception, which permits prospective injunctive and declaratory relief against state officials, does not apply. To invoke *Ex parte Young*, a plaintiff must "(a) allege[ ] an ongoing violation of federal law and (b) seek[ ] relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d at 618. Leftridge's claims arise out of alleged actions taken by the defendants in 2005, 2017–2019, and 2021–2022, but Leftridge does not state what, if any, actions of the defendants constitute ongoing violations of his federal rights. Nor does his request for injunctive relief—blanket requests that the Court order the defendants to "fully comply" with various federal laws—shed light on the matter.[62]

As best I can discern, the only ongoing harm Leftridge alleges is DSS's refusal to alter the credit information it reports to credit bureaus. But the *Ex parte Young* exception to state sovereign immunity "has no application in suits against the States and their agencies." *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022). And in any event, an injunction must "be 'more specific than a simple command that the defendant obey the law.' " *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011)).

 *7 For example, in *Burns v. Rovella*, 2020 WL 12863774 (D. Conn. 2020), the Court denied a plaintiff's "request[ ] that this court 'prohibit[ ] defendants from denying his rights protected by the [Family and Medical Leave Act],' and 'denying him his rights ... [under] the Fourteenth Amendment Due Process clause of the United [S]tates Constitution." *Id.* at *12. The Court reasoned that "[t]hese are simply requests that the court command the defendant to obey the law, and therefore, are insufficient to seek injunctive relief." *Ibid.* Like the plaintiff in *Burns*, the injunctive relief Leftridge seeks—a court order that defendants obey the law—does not give rise to a valid claim for injunctive relief.

The same goes for Leftridge's request for declaratory relief in the form of a "declar[ation] that the acts of the Defendants alleged in applicable Counts with respect to the acts, policies, practices, and customs deprived Plaintiff of federal rights."[63] "Courts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs." *Huminski v. Connecticut*, 2015 WL 1650845, at *5 (D. Conn. 2015). Leftridge's request for declaratory relief "asks the Court only to recognize a past wrong, which, in the context of declaratory relief, does not in itself 'amount to that real and immediate threat of injury necessary to make out a case or controversy.' " *Morales v. City of New York*, 59 F. Supp. 3d 573, 581 (S.D.N.Y. 2014) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)); *see also H.B. v. Byram Hills Cent. Sch. Dist.*, 648 F. App'x 122, 125 (2d Cir. 2016) ("[T]he requested declaratory relief is aimed at past conduct, a target that is impermissible."). In short, Leftridge is not entitled to declaratory relief that would fall within the *Ex parte Young* exception to Eleventh Amendment immunity.

Given that no exception to Eleventh Amendment immunity applies, I will dismiss Leftridge's claims arising under § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA with respect to the agency defendants and the individual defendants in their official capacities.

The defendants further argue that Eleventh Amendment immunity also bars Leftridge's ADA claims.[64] They cite *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 276 (N.D.N.Y. 2012) and *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 374 (2001), for the proposition that Title I did not abrogate the states' sovereign immunity.[65] But Title I of the ADA applies to disability discrimination by employers, *see* 42 U.S.C. § 12112(a), and Leftridge does not allege that he was employed by any of the entities involved in the lawsuit. As for Title II, which forbids discrimination by public services, programs, and activities, *see id.* § 12132, the extent to which Congress has abrogated the states' sovereign immunity remains unclear after the Supreme Court's decision in *United States v. Georgia*, 546 U.S. 151 (2006), which held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159. *See Schmiege v. New York*, 2022 WL 16922123, at *3 n.6 (W.D.N.Y. 2022) ("Since *Georgia*, courts in this Circuit have taken different approaches

when faced with the question of whether Congress has validly abrogated sovereign immunity under Title II.")[66]

**\*8** But "the Court need not wade into these turbulent constitutional waters." *Matagrano v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2020 WL 7338586, at \*18 (N.D.N.Y. 2020). The state entity bears the burden of demonstrating that Eleventh Amendment immunity applies. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006). Because the defendants make no argument and cite no law regarding Title II of the ADA, they have not carried their burden and I will consider Leftridge's ADA claims on the merits. I will similarly consider the merits of Leftridge's claims arising under the Rehabilitation Act and Title VII because the defendants do not contest that Congress waived the states' sovereign immunity for these two statutes. *See* 42 U.S.C. § 2000d–7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973."); *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 143 S. Ct. 1176, 1178 (2023) ("Title VII of the Civil Rights Act abrogates the immunity of "governments" and "governmental agencies" from all actions it authorizes.") (citing 42 U.S.C. §§ 2000e(a)–(b)).

I will begin with Leftridge's ADA and Rehabilitation Act claims. "[F]or a plaintiff to establish a *prima facie* violation under these Acts, she must demonstrate (1) that she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected on other grounds*, 511 F.3d 238 (2d Cir. 2004).

Leftridge's complaint fails to state a claim under the ADA or the Rehabilitation Act because it does not allege that he was discriminated against because of his disability. Leftridge's claims center on the defendants' "denying equal access to electronic filing, public accommodations and access to Judicial Branch state government' programs and services that was critical to plaintiff being able to file pleadings electronically for his defense of, and presentation of, his case in the Family Support Court."[67] But "[Leftridge's] complaint contains no plausible allegations that ... the Defendants' actions were taken *by reason* of his [disability], or even that

they were *aware* of his [disability]." *Barone v. Lawyers' Fund for Client Prot.*, 2023 WL 1975783, at \*2 (2d Cir. 2023). Without more, Leftridge fails to state a claim under the ADA, *see ibid.*, or the Rehabilitation Act, *see Harris v. Mills*, 572 F.3d 66, 75 (2d Cir. 2009).

Leftridge's Title VII claim fails as well. Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "Consequently, the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). Because Leftridge does not allege that he had an employment relationship with any of the defendants, his Title VII claim fails. *See, e.g.*, *Pandozy v. Tobey*, 335 F. App'x 89, 91 (2d Cir. 2009) ("[Plaintiff's] complaint fails to state a cause of action under Title VII, since he does not allege an employer-employee relationship between himself and any of the Defendants.").

**\*9** Accordingly, I will dismiss Leftridge's claims arising under the ADA, the Rehabilitation Act, and Title VII with respect to the agency defendants and the individual defendants in their official capacities. Having already dismissed Leftridge's claims arising under § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA with respect to the agency defendants and the individual defendants in their official capacities, I will turn to Leftridge's claims against the individual defendants in their individual capacities.

### Federal claims against the individual defendants in their individual capacities

The individual defendants filed motions to dismiss Leftridge's individual-capacity claims on various grounds.[68] For the reasons set forth below, I will grant their motions.

Defendants Anderson, Williams, Shaughnessy, and Gage are state court clerks or supervisors of state court clerks. Defendant Julius is a UIFSA Support Enforcement Supervisor who Leftridge alleges had falsely certified that Leftridge had been served in the 2017 paternity and support action brought by Heyward.

"Courts have extended the absolute judicial immunity afforded judges to individuals, such as prosecutors and witnesses, who perform functions closely associated with the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). "[A]cts arising out of, or related to, individual cases before the judge" are entitled to absolute quasi-judicial immunity because they are considered "judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). The relevant inquiry "is the nature and function of the act, not the act itself." *Mireles v. Waco*, 502 U.S. 9, 13 (1991). "A defendant entitled to quasi-judicial immunity loses that privilege only if she acts 'in the clear absence of all jurisdiction.' " *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). That a defendant is alleged to have acted erroneously, maliciously, dishonestly, in bad faith, or in excess of her authority does not undermine quasi-judicial immunity. *See ibid.*; *Mireles*, 502 U.S. at 11.

For example, in *Leftridge v. Support Enforcement Services*, 2013 WL 1947174 (D. Conn. 2013), the Court determined that quasi-judicial immunity barred Leftridge's claims against Support Enforcement Officers and court employees for actions related to Leftridge's child custody and child support proceedings "since all of the allegations asserted against these defendants pertain to their performance of official duties integral to the judicial process." *Id.* at *6; *see also Skipp v. Conn. Jud. Branch*, 2015 WL 1401989, at *8 (D. Conn. 2015) ("As all of the challenged actions of court employees were taken in relation to plaintiff's divorce and custody proceedings, the court employees and agents are immune from a claim for money damages.").

Leftridge does not allege that Anderson, Williams, Shaughnessy, Gage, or Julius acted in the clear absence of all jurisdiction. Instead, all of their alleged actions arose out of or related to Leftridge's child support and child custody proceedings before Judge Sweinton, Judge Dee, Judge Nieves, Judge Green, and Judge Klau. Accordingly, quasi-judicial immunity bars Leftridge's claims against these five defendants.

The state prosecutor defendants—Gaines, Andrews, and Samalot—are entitled to absolute immunity as well. "Prosecutors are entitled to absolute immunity with respect to their prosecutorial functions, which include their actions as advocates and when their conduct involves the exercise of discretion." *Bouchard v. Olmsted*, 775 F. App'x 701, 703 (2d Cir. 2019). For example, in *Barrett v. United States*, 798 F.2d 565 (2d Cir. 1986), the Second Circuit held that an Assistant Attorney General, "representing [the] state as its attorney" in state court, was entitled to absolute immunity. *Id.* at 573. According to the Court, "[t]he fact that [the attorney] may or may not have engaged in questionable or harmful conduct during the course of his representation of the State in that litigation is irrelevant. The immunity attaches to his function, not to the manner in which he performed it." *Ibid.*; *see also Contreras v. Perimenis*, 562 F. App'x 50, 51 (2d Cir. 2014) (affirming district court's finding that Assistant Attorney General for the Connecticut Department of Children and Families "was entitled to absolute immunity because he was sued in his capacity as a government advocate prosecuting child welfare cases").

**\*10**  And again, in *Leftridge v. Support Enforcement Services.*, 2013 WL 1947174, the Court determined that absolute immunity barred Leftridge's claims concerning "assistant attorney generals' conduct in carrying out their jobs as assistant attorney generals." *Id.* at *6; *see also Coke v. Samalot*, 2021 WL 4034168, at *7 (D. Conn. 2021) ("As an Assistant Attorney General, Mr. Samalot has immunity while serving in his function as an advocate for the state.").

As with the court-affiliated defendants, Leftridge's allegations regarding Gaines, Andrews, and Samalot pertain exclusively to their roles in Leftridge's child support and child custody proceedings. Absolute prosecutorial immunity thus bars Leftridge's claims against these three defendants.

I turn next to Leftridge's claims against defendant Saunders. Saunders is a Child Support Specialist employed by the Maryland Department of Human Services who Leftridge alleges refused his requests for family court records.

Saunders has moved to dismiss in part for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[69] A court lacks personal jurisdiction over an out-of-state defendant if the defendant is not subject under state law to the "long-arm" jurisdiction of the courts of that State, or if exercise of jurisdiction over the defendant would not comport with constitutional principles of fairness and due process. *See U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 149 (2d Cir. 2019); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). "[T]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a

*prima facie* showing." *Ibid.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits," *ibid.*, but the Court may dismiss for lack of personal jurisdiction when the plaintiff "failed to controvert the defendants' affidavits showing that the court lacked personal jurisdiction," *Emiabata v. Seton Healthcare Fam.*, 2021 WL 4256846, at *2 (2d Cir. 2021).

Under Connecticut's long-arm statute, "a court may exercise personal jurisdiction over any non-resident individual ... who in person or through an agent ... commits a tortious act outside the state causing injury to a person or property within the state ... if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Conn. Gen. Stat. § 52–59b(a). The statute also extends to any person or agent who "uses a computer ... or a computer network ... located within the state." *Ibid.*

Saunders has attached to her motion an affidavit stating that she has been a Maryland resident since 2003, she has worked as a Maryland state employee for the Montgomery County Office of Child Support for the past 15 years, she has never transacted or solicited business in Connecticut, she does not engage in any persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered in Connecticut, and she does not use a computer or computer network in Connecticut. [70]

 **\*11**  To make out a *prima facie* case, a plaintiff must plead "non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015). Leftridge has not done so. Saunders and Leftridge are Maryland residents, and all of Saunders's alleged actions took place in Maryland in her capacity as an employee for the Maryland Department of Human Services. [71] Moreover, Leftridge does not controvert Saunders's affidavit. He does not allege, even in conclusory fashion, that Saunders satisfies prong (A) or (B) of § 52–59b(a), that Saunders uses a computer or computer network in Connecticut, or that Saunders's actions otherwise satisfy Connecticut's long-arm statute. Because there is no statutory long-arm jurisdiction over Saunders, I need not

consider whether exercising jurisdiction over Saunders would be consistent with constitutional due process.

Even if the Court had personal jurisdiction over Saunders, dismissal would nonetheless be proper because Leftridge does not state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6) and because the complaint does not comply with Rule 8's pleading requirements. Leftridge's only allegations against Saunders—appearing in 3 of the complaint's 361 paragraphs—are that Saunders refused to provide him with family court records. Leftridge does not explain how Saunders's conduct violated state or federal law. Indeed, none of the 26 counts in his complaint mention Saunders at all. Instead, some counts mention defendants other than Saunders, and the remaining counts refer collectively to the "Defendants," of whom there are at least 11.

Drafting a complaint in this way runs afoul of Rule 8's requirement that each defendant have "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Mohammad v. N.Y. State Higher Educ. Servs. Corp.*, 422 F. App'x 61, 62–63 (2d Cir. 2011); *see also* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief."). A complaint does not satisfy Rule 8 "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (affirming dismissal of "shotgun pleading" complaint on Rule 8 grounds where it was "nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief"). Because the Court lacks personal jurisdiction over Saunders and Leftridge does not state a plausible or Rule-8-compliant claim for relief against her, I will grant Saunders's motion to dismiss.

In sum, I will grant the individual defendants' motions to dismiss Leftridge's claims against them in their individual capacities. With no federal claims remaining against the defendants in either their individual or official capacities, the Court finds it unnecessary to address the defendants' additional arguments for dismissal on grounds of qualified immunity, litigation privilege, the *Rooker-Feldman* doctrine, or improper service of process.

### Federal claims against unknown employees

Leftridge mentions "unknown employees" at various points in his complaint, whom he identifies as either employees of the Judicial Branch or the Executive Branch of Connecticut. [72] As explained above, Rule 8 requires that the complaint gives each defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Mohammad*, 422 F. App'x at 62–63. Naming "unknown employees" or "unknown defendants" does not comply with Rule 8's fair notice requirement where, as here, the allegations are so vague as to make it impossible to identify them. *See, e.g.*, *Matthews v. NYPD*, 2023 WL 3505634, at *1–2 (S.D.N.Y. 2023)* (dismissing *pro se* complaint against "unknown employees" because "Plaintiff's complaint does not include allegations about 'unknown employees' that are sufficient to put them or the Court on notice of her claims against them. She also does not plead facts that are sufficient to identify such Defendants."); *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 237 (S.D.N.Y. 2014) ("Although courts sometimes allow plaintiffs to plead causes of action against a 'John Doe' defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense.").

 **\*12** In any event, there are no freestanding allegations of wrongdoing by the unknown employees. All mentions of unknown employees are tacked on to allegations against other employees of the Judicial Branch and the Office of the Connecticut Attorney General. Having already concluded that all claims against the named employees fail, I will dismiss the claims against the unknown employees on the same grounds. *See, e.g.*, *Gabriel Cap., L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 269–70 (S.D.N.Y. 2000) ("I assume ... that the theory of liability [against the John Doe defendants] is the same as that pled against [named defendants]. As these claims have been dismissed, there is no reason to allow the [complaint] to stand against the Does. Therefore, the claims against John Does 1 through 50 are also dismissed.").

### State law claims

Having dismissed Leftridge's federal law claims, I turn to his state law claims. Leftridge argues that the Court has diversity jurisdiction over his state law claims because "[t]he plaintiff[ ] and some of the defendants to this case live in the State of Maryland." [73] *See* 28 U.S.C. § 1332 (federal diversity jurisdiction statute). But diversity jurisdiction exists only if there is "complete" diversity among the opposing parties—in other words, only if the plaintiff is a citizen of a different state than all of the defendants. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998); *Strawbridge v. Curtis*, 3 Cranch 267 (1806) (Marshall, C.J.). And as explained above, both Saunders and Leftridge are Maryland residents. In the absence of federal diversity jurisdiction, and because there are no facially plausible federal claims against the defendants, I conclude that the state courts of Connecticut are best positioned to address Leftridge's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013); *Williams v. Katz*, 2022 WL 3646200, at *6 (D. Conn. 2022). Accordingly, I decline to exercise supplemental jurisdiction over Leftridge's state law claims, which I will dismiss without prejudice to Leftridge's right to seek any relief that may be available in state court.

### CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motions to dismiss (Doc. #81, Doc. #123). In light of the granting of the motions to dismiss, the Court DENIES as moot all other pending motions (Docs. #136, #138, #140, and #150).

It is so ordered.

### All Citations

Slip Copy, 2023 WL 4304792

---

### Footnotes

1    *See* Doc. #18.

2    *Id.* at 3 (¶¶ 6–7).

3    *Id.* at 8 (¶¶ 20, 22).

4    *Ibid.* (¶ 25).

5    *Id.* at 8–11 (¶¶ 25–30, 34).

6    *Id.* at 10 (¶ 33). Leftridge does not specify the name of the Assistant Attorney General.

7    *Id.* at 39 (¶ 153).

8    *Id.* at 11 (¶ 35).

9    *Id.* at 12–13 (¶¶ 41–42).

10   *Id.* at 12 (¶¶ 38–39).

11   *Ibid.* (¶ 40). Leftridge does not specify the name of the Hartford Interstate Support Enforcement Supervisor.

12   *Id.* at 13 (¶ 43).

13   *Id.* at 12–15 (¶¶ 38–50).

14   *Id.* at 16 (¶¶ 55–57).

15   *Id.* at 18 (¶ 64).

16   *Ibid.* (¶ 64).

17   *Id.* at 21–22 (¶¶ 81–85).

18   *Id.* at 22 (¶¶ 87–88).

19   *Id.* at 25–27 (¶¶ 98, 102–03), 36 (¶ 141).

20   *Id.* at 56 (¶ 219).

21   *Id.* at 28–29 (¶¶ 109, 111).

22   *Id.* at 38 (¶ 150).

23   *Id.* at 29–30 (¶¶ 113, 118), 32 (¶ 124).

24   *Id.* at 32–36 (¶¶ 125–31, 137–39), 50–55 (¶¶ 191–204, 210, 212–17).

25   *Id.* at 34 (¶ 133), 40 (¶¶ 156–58), 53–54 (¶¶ 205, 207, 211), 56 (¶ 218).

26   *Id.* at 34 (¶ 132).

27   *Id.* at 34–35 (¶ 134), 37 (¶ 144).

28   *Id.* at 41–42 (¶¶ 162–64).

29   *Id.* at 44–45 (¶¶ 170–72).

30   *Id.* at 45 (¶¶ 173–74).

31    *Id.* at 47–48 (¶ 181).

32    *Id.* at 48 (¶ 182).

33    *Id.* at 1; *see id.* at 3–7 (¶¶ 9–19) (defendants' full names and positions); *id.* at 61–94 (¶¶ 237–361) (causes of action).

34    *Id.* at 1.

35    *Id.* at 61 (¶¶ 237–39), 75–80 (¶¶ 285–304).

36    *Id.* at 61 (¶¶ 240–42).

37    *Id.* at 61–62 (¶¶ 243–45).

38    *Id.* at 62–63 (¶¶ 246–48).

39    *Id.* at 63–64 (¶¶ 249–51).

40    *Id.* at 64–67 (¶¶ 252–54).

41    *Id.* at 67–68 (¶¶ 255–57).

42    *Id.* at 68 (¶¶ 258–60).

43    *Id.* at 68–69 (¶¶ 261–63).

44    *Id.* at 69–70 (¶¶ 264–66), 72–73 (¶¶ 273–75). Count Ten also alleges that the defendants violated the ADA, the Civil Rights Act of 1964, and the Connecticut Fair Employment Practices Act—allegations that are duplicative of the allegations in Counts Four and Five.

45    *Id.* at 70–71 (¶¶ 267–69).

46    *Id.* at 71–72 (¶¶ 270–72).

47    *Id.* at 73 (¶¶ 276–78).

48    *Id.* at 73–74 (¶¶ 279–81).

49    *Id.* at 74–75 (¶¶ 282–84).

50    *Id.* at 79–80 (¶¶ 297–304). Count Eighteen also alleges that the defendants deprived him of his Fourteenth Amendment due process rights as enforceable under 42 U.S.C. § 1983—an allegation that is duplicative of the allegations in Counts One, Three, and Seventeen.

51    *Id.* at 80–82 (¶¶ 305–12).

52    *Id.* at 82–83 (¶¶ 313–19).

53    *Id.* at 83–89 (¶¶ 320–40). Count Twenty-One also mentions policies of three additional agencies—the Maryland Department of Human Services, Montgomery Count Office; the Office of the Connecticut Attorney General; and the Connecticut Interstate Government UIFSA Department—but the complaint does not name these agencies as defendants. *See ibid.*

54    *Id.* at 89–91 (¶¶ 341–46).

55    *Id.* at 91 (¶¶ 347–49).

56    *Id.* at 91–92 (¶¶ 350–54).

57    *Id.* at 92–93 (¶¶ 355–57).

58    *Id.* at 93–94 (¶¶ 358–61).

59    *Id.* at 94–96.

60    Doc. #81; Doc. #123.

61    Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

62    Doc. #18 at 95–96.

63    *Id.* at 95 (¶ 8).

64    Doc. #81-1 at 8–9; Doc. #123-1 at 15–16.

65    Doc. #81-1 at 8–9.

66    To the extent Leftridge alleges that the defendants violated Title *III* of the ADA, Leftridge fails to state a claim because "Title III is not applicable to public entities." *Morales v. New York*, 22 F. Supp. 3d 256, 266–67 (S.D.N.Y. 2014) (citing cases).

67    Doc. #18 at 63–64 (¶ 250). Leftridge does not explain what acts the defendants took that violate the RA, but the Court takes them to be the same as those acts that Leftridge alleges violated the ADA. *Cf. Paystrup v. Benson*, 2015 WL 506682, at *11 (D. Utah 2015) (assuming plaintiff's RA claim to be "based on the same actions as the ADA claims" where it was unclear which of defendants' actions were alleged to violate the RA).

68    Doc. #81 at 10–22, Doc. #123 at 9–15, 17–22.

69    Doc. #123 at 11–14.

70    Doc. #123-3 at 1–2 (¶¶ 1–2, 5).

71    *See* Doc. #18-1 at 1, 7; Doc. #137 at 9 (Leftridge's opposition to defendants' motion to dismiss stating that "[t]he plaintiff[ ] ... live[s] in the State of Maryland").

72    Doc. #18 at 58 (¶¶ 225–26).

73    Doc. #137 at 9.

---

**End of Document**                                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4207907

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Keston BRAITHWAITE, Plaintiff,

v.

Frank TROPEA, Clerk of Court, County
Court, Suffolk County; Honorable John B.
Collins, Justice Supreme Court; and Susan
Conner, Senior Court Reporter, Defendants.

23-CV-1431(JS)(AYS)
|
Signed June 27, 2023

**Attorneys and Law Firms**

For Plaintiff: Keston Braithwaite, pro se, 22B4593, Sing Sing
Correctional Facility, 354 Hunter Street, Ossinig, New York
10562.

For Defendants: No appearance.

MEMORANDUM AND ORDER

SEYBERT, District Judge:

**\*1** By Order dated March 2, 2023 (the "Order"), the
Court granted the Application to Proceed in District Court
Without Paying Fees or Costs (Application, ECF No. 2)
filed by incarcerated Plaintiff Keston Braithwaite ("Plaintiff")
together with his pro se Complaint (Compl., ECF No. 1). [1]
(See Order, ECF No. 9.) The Complaint is brought pursuant to
42 U.S.C. § 1983 ("Section 1983") against Frank Tropea, the
Clerk of the Court, County Court Suffolk County ("Tropea"),
Honorable John B. Collins ("Judge Collins"), and Susan
Conner, [2] Senior Court Reporter ("Conner"; collectively, the
"Defendants").

Upon review of Plaintiff's Complaint (ECF No. 1) in
accordance with 28 U.S.C. § 1915A(a), the Court finds
that Plaintiff has not alleged a plausible claim for relief.
Accordingly, for the reasons that follow, the Complaint is
DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §
1915A(b). Given the dismissal of the Complaint, Plaintiff's
motion seeking a preliminary injunction (ECF No. 4) is
DENIED.

RELEVANT BACKGROUND AND
SUMMARY OF THE COMPLAINT

Plaintiff is a prolific filer in this Court; excluding the instant
action, since January 2022, he has filed eight unsuccessful pro
se in forma pauperis complaints relating to his arrest and state
court criminal prosecution. See Braithwaite v. Gaitman, No.
22-CV-0974, 2022 WL 14059127, at *1 n.2 (E.D.N.Y. Oct.
24, 2022) (identifying those eight other actions). In his present
Section 1983 Complaint, which relates to his arrest and state
court criminal prosecution, [3] Plaintiff asserts that: (1) (a) even
though Plaintiff requested specific documents and his entire
state-court file from May 5, 2022 from the County Court, (b)
the County Court responded to Plaintiff's request indicating
those documents were available, consisted of 220 pages, and
would cost $143 to copy, and (c) Plaintiff submitted the $143
copying fee (as a money order), Tropea failed to turn over the
requested copies of Plaintiff's state-court file (see Compl. at
ECF pp. 5-7, 11-12); (2) thereafter, "Tropea chose to forward
Plaintiff's $143 money order to Judge John B. Collins" (id.
at ECF p. 16); (3) in turn, Judge Collins returned Plaintiff's
$143 money order to Plaintiff's defense attorney in open court
"to block Plaintiff from inspecting his Court file" (id. at ECF
pp. 9, 12); and (4) on July 5, 2022, Plaintiff's defense attorney
handed Plaintiff a partial copy of his state-court file, which
did not include filings made prior to June 2022 (see id.; see
also id. at ECF p. 16), and which Plaintiff believes was done
under Tropea's and Judge Collin's directives (see id. at ECF
p. 15).

**\*2** As to Conner, Plaintiff alleges: "Conner[ ] deliberately
[sic] falsified documents for the District Attorney of Suffolk
County and Judge Collins to hinder Plaintiff's appeal," (id. at
ECF p. 16), to wit, "Conner[ ] chose not to record Plaintiff's
Statement 'Ping Data' in favor for her colleagues [sic] Jacob
Kubetz [the Assistant District Attorney] and Judge Collins."
(Id. at ECF p. 18.) Moreover, despite Plaintiff's requests
that Conner correct the sentencing transcript during which
Plaintiff referred to "Ping Data", she has not done so. (See id.)

Based upon these allegations, Plaintiff claims his First, Fifth,
Sixth, and Fourteenth Amendment Constitutional rights have
been violated. (See Compl. at ECF p. 4.) He further asserts
the following ten purported causes of action:

   1. denial of judicial records;

   2. fraud on the court;

3. concealment of records;

4. falsify evidence/documents;

5. altered transcripts;

6. procedural due process;

7. substantive due process;

8. Fourteenth Amendment violation;

9. Conspiracy to interfere with civil rights; and

10. Deprivation of civil rights.

(Compl. at ECF p. 19.) By way of relief, Plaintiff requests:

> [d]eclaratory relief, injunctive relief in that my court file that consist of 220 pages that was filed before May 5th, 2022, that the Clerk of the Court including Frank Tropea refrain from falsifying documents for the District Attorney Suffolk County, and Judge Collins such as back dating and filing Search and Arrest warrants after they admitted that there was no Search and Arrest warrants filed in their office, and Susan O'Conner [sic] fix errors in my sentencing transcripts so I can bring up those issues in my appeal. I am seek [sic] compensatory damages in that I would like my entire Court file with no pages missing (Certified, true and accurate filing dates), a True and accurate copy of my sentencing transcript, and the costs and fees I spent to prosecute this action, Past and future damages, Punitive damages. I would like all money damages in the sum of $30,000,000.00.

(Id. at ECF pp. 20-21.)

### DISCUSSION

## I. Legal Standards

### A. Consideration of the Complaint Under 28 U.S.C. § 1915A

Section 1915A of Title 28 requires federal district courts to screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's civil rights complaint, or any portion of that complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b); see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court is required to dismiss the action as soon as it makes such a determination. See 28 U.S.C. § 1915A; Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *2 (E.D.N.Y. May 18, 2021).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### B. Section 1983

**\*3** Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws,
shall be liable to the party injured....

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356
(2012). To state a claim under Section 1983, a plaintiff must "
'allege that (1) the challenged conduct was attributable at least
in part to a person who was acting under color of state law
and (2) the conduct deprived the plaintiff of a right guaranteed
under the Constitution of the United States.' " Rae v. County
of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting
Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

Plaintiff alleges a deprivation of his First, Fifth, Sixth, and
Fourteenth Amendment rights (Compl., ECF No. 1, at 4
(Section II.B)) and, as liberally construed, the Complaint
purports to allege denial of a fair trial, as well as procedural
and substantive due process claims.

## C. Application

Before addressing the merits of Plaintiff's Section 1983
claims, the Court first considers several threshold barriers to
the adjudication of his claims.

### 1. Immunity

#### a. Absolute Judicial Immunity

Plaintiff's Section 1983 claims against Judge Collins are
subject to dismissal because, as a judge employed by the
state of New York, he is absolutely immune from suit.
It is well-established that judges "generally have absolute
immunity" from suit for judicial acts performed in their
judicial capacities. Bliven v. Hunt, 579 F.3d 204, 209 (2d
Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9, 11 (1991));
Hardy-Graham v. Southampton Just. Ct., No. 20-CV-0981,
2021 WL 260102, at *5 (E.D.N.Y. Jan. 25, 2021) (Seybert,
J.). This absolute "judicial immunity is not overcome by
allegations of bad faith or malice," nor can a judge "be
deprived of immunity because the action he took was in
error ... or was in excess of his authority." Mireles, 502 U.S. at
11, 13 (internal quotation marks and citation omitted; ellipsis
in original). Rather, judicial immunity is overcome in only
two instances. The first instance is "liability for nonjudicial
actions, i.e., actions not taken in the judge's judicial capacity."
Bliven, 579 F.3d at 209 (quoting Mireles, 502 U.S. at 11). The
second instance is liability arising from actions taken " 'in the

complete absence' of all jurisdiction.' " Basile v. Connolly,
538 F. App'x 5, 7 (2d Cir. 2013) (quoting Mireles, 502 U.S.
at 11-12; emphasis in original).

Here, even upon a liberal construction, Plaintiff's allegations
do not suggest that either exception applies to overcome
absolute judicial immunity. Clearly Judge Collins acted
within his jurisdiction given that the alleged conducted
occurred in open court during the criminal prosecution that
lead to Plaintiff's state court conviction. There can be no doubt
that state court prosecution for violations of state laws relating
to drug possession and weapon possession is the very kind of
case over which state courts have jurisdiction. Accordingly,
Judge Collins is shieled from suit by absolute immunity. [4]

 **\*4** The absolute immunity afforded to judges is not
limited to judges alone, but also extends to "certain others
who perform functions closely associated with the judicial
process." Oliva v. Heller, 839 F.2d 37, 39 (2d Cir. 1988)
(citation omitted); see also McKeown v. N.Y. State Comm'n
on Judicial Conduct, 377 F. App'x 121, 124 (2d Cir. 2016).
Here, Tropea is entitled to absolute immunity given that
Plaintiff's allegations against him concern conduct that is
"closely related to the judicial process." Jackson v. Pfau, 523
F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal
pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section
1983 claims against judicial law clerk, the N.Y.S. Chief
Administrative Judge, court attorneys, and the Chief Clerks
of several state courts, finding "defendants were entitled to
judicial immunity, because [ ][the] allegations against each
of them concerned actions that were judicial in nature or
closely related to the judicial process") (citing Rodriguez v.
Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (noting that "[c]ourts
have extended the absolute judicial immunity afforded judges
to individuals ... who perform functions closely associated
with the judicial process," and holding that judges and their
supporting staff are absolutely immune in matters regarding
"[a] court's inherent power to control its docket")).

As a result, Plaintiff's Section 1983 claims against Judge
Collins and Tropea are not plausible as a matter of law and
are, therefore, DISMISSED WITH PREJUDICE pursuant to
28 U.S.C. § 1915A(b). See Mills v. Fischer, 645 F.3d 176,
177 (2d Cir. 2011) ("Any claim dismissed on the ground of
absolute judicial immunity is 'frivolous' for purposes of [the
IFP statute].").

#### b. Eleventh Amendment Immunity

" '[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity....' " Griggs v. Crim. Ct. of City of N.Y., No. 21-CV-1899, 2021 WL 1535056, at *2 (S.D.N.Y. Apr. 19, 2021), appeal dismissed (Oct. 28, 2021) (quoting Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original)). "This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief." Griggs, 2021 WL 1535056, at *2 (citing Green v. Mansour, 474 U.S. 64, 72-74 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)).

Plaintiff claims that Tropea failed to perform his duties; yet, there are no allegations that Tropea acted outside of his official capacity. (See Compl., in toto.) Indeed, Tropea is a state officer because he is the Chief Clerk of the Suffolk County Court, and the Suffolk County Court is an arm of the New York state court system.[5] See Gollomp, 568 F.3d at 366–67 ("[E]very court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is, and is therefore protected by Eleventh Amendment sovereign immunity."); Fishman v. Off. of Ct. Admin. N.Y.S. Cts., No. 18-CV-0282, 2020 WL 1082560, at *7 (S.D.N.Y. Mar. 5, 2020), aff'd, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28, 2021) ("[T]he Second Circuit has specifically held that the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity." (internal quotation marks and citation omitted)). Accordingly, Tropea is shielded from suit by the Eleventh Amendment, and Plaintiff's Section 1983 claims are therefore implausible. See Watanmaker v. Clark, No. 09-CV-3877, 2010 WL 3516344, at *7 (E.D.N.Y. Aug. 31, 2010) (dismissing Section 1983 claims alleged against the Chief Clerk of the Suffolk County District Court as barred by the Eleventh Amendment (citing Casaburro v. Guiliani, 986 F. Supp. 176, 182 (S.D.N.Y. 1997) (granting state court clerk's motion to dismiss official capacity suit on Eleventh Amendment grounds)); Davis v. State of N.Y., No. 90-CV-6170, 1991 WL 156351, at *2 (S.D.N.Y. Aug. 6, 1991) (dismissing claim against state-court officials on Eleventh Amendment grounds), aff'd 106 F. App'x 82 (2d Cir. 2004); see also Manko v. Steinhardt, No. 11-CV-5430, 2012 WL

213715, at *3 (E.D.N.Y. Jan. 24, 2012) (finding clerk of court immune from claims arising from alleged failure to perform duties where there were no allegations that clerk of court acted in individual capacity); Peterkin v. Carr, No. 20-CV-0524, 2020 WL 7186796, *3 (E.D.N.Y. Dec. 7, 2020) (finding court staff member named in his official capacity entitled to judicial immunity (citing Treistman v. McGinty, 804 F. App'x 98 (2d Cir. 2020)) (affirming district court's determination that family court employees were immune from suit))). Thus, Plaintiff's Section 1983 claims against Tropea are also barred by the Eleventh Amendment and are DISMISSED WITH PREJUDICE as pursuant to 28 U.S.C. § 1915A(b).[6]

#### c. Qualified Immunity

**\*5** Plaintiff's Section 1983 claims against Conner are not plausible because she is entitled to qualified immunity. Qualified immunity shields government officials from civil liability resulting from the performance of their discretionary functions only where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wallace v. Suffolk County Police Dep't, 396 F. Supp. 2d 251, 265 (E.D.N.Y. 2005) (Seybert, J.) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, courts consider "whether the facts shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." Tankleff v. County of Suffolk, No. 09-CV-1207, 2017 WL 2729084, at *17 (E.D.N.Y. June 23, 2017) (Seybert, J.) (quoting Estate of Devine v. Fusaro, 676 F. App'x 61, at *1 (2d Cir. 2017) (cleaned up)). Whether a right was clearly established should be analyzed from the perspective of a reasonable official, and the relevant inquiry is whether "it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." Id.

The United State Supreme Court has long extended qualified immunity to court reporters, such as Conner, where their conduct does not violate clearly established statutory or constitutional rights. See Antoine v. Byers & Anderson Inc., 508 U.S. 429 (1993) (holding that court reporters are qualifiedly, not absolutely, immune from suit); Harlow, 457 U.S. at 818 (discussing standard for establishing qualified immunity); see also Green v. v. Maraio, 722 F. 2d 1013, 1019 (2d Cir. 1983) (finding Rule 12(b)(6) dismissal of claim against court reporter on grounds of qualified immunity was appropriate where the complaint alleged court reporter acted

pursuant to judge's explicit instructions). Indeed, "there is no constitutional or federal statutory right to an absolutely accurate trial transcript." Burrell v. Swartz, 558 F. Supp. 91, 92 (S.D.N.Y. 1983). Thus, insofar as Plaintiff complains that Conner excluded the words "ping data" at pages 86 and 87 from the 121-page sentencing transcript, in the absence of any constitutional or federal statutory right to an "absolutely accurate" transcript, Conner is protected by qualified immunity.[7] McCaw v. McPartland, No. 17-CV-6431, 2018 WL 10701609, at *1 (S.D.N.Y. Apr. 2, 2018).

**\*6** Accordingly, Plaintiff's Section 1983 claims against Conner are not plausible and are thus DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b). See Green, 722 F. 2d at 1019 (affirming dismissal of claims against court reporter on basis of qualified immunity and stating: "allowing ... dismissal whenever the basis for finding qualified immunity applicable is established by the complaint itself 'permit[s] "[i]nsubstantial lawsuits [to] be quickly terminated" ' ") (quoting Harlow, 457 U.S. at 814; further citation omitted); Griggs v. Crim. Ct. of City of N.Y., No. 21-CV-1899, 2021 WL 1535056, at *3 (S.D.N.Y. Apr. 19, 2021), appeal dismissed (Oct. 28, 2021) (sua sponte dismissing Section 1983 claims pursuant to 28 U.S.C. § 1915(e)(2)(B) against two court reports in the absence of "any facts that suggest that the court reporters' conduct violated any of [p]laintiff's clearly established statutory or constitutional rights").

Given the dismissal of Plaintiff's federal claims against the Defendants on immunity grounds, the Court need not reach the merits. However, in light of his pro se status, the Court explains, to the extent that Plaintiff complains that the allegedly inaccurate sentencing transcript "deprived him of due process, such a claim would fail, because New York has adequate procedures for correcting alleged inaccuracies in transcripts." See id., (citing Curro, 884 F. Supp. at 720-23); Collins v. N.Y. City, No. 19-CV-7156, 2019 WL 4805692, at *3 (S.D.N.Y., 2019) (sua sponte dismissing Section 1983 claims upon initial screening, explaining "[t]o the extent [p]laintiff attempts to assert that inaccurate transcriptions deprived him of due process, such a claim would fail, because New York has adequate procedures for correcting alleged inaccuracies in transcripts") (citing Curro, 884 F. Supp. at 720-23) (discussing New York's transcript settlement procedures and finding they provide all the process due plaintiff). Notwithstanding having filed a complaint with the Tenth District Administrative Office, Suffolk County ("Tenth District AO") (see Compl. at ECF p. 18), Plaintiff has not

alleged to have availed himself of other available transcript settlement procedures and Plaintiff has other means to seek the correction of his sentencing transcript. See Curro, 884 F. Supp. at 718 ("In addition [to available N.Y.S. post-deprivation remedies], any significant unresolved questions concerning the transcript's accuracy could be raised on appeal, and if found to be substantial, would permit a remand of the proceedings back to the original trial judge to resettle the transcript.") (citations omitted).[8]

Moreover, "[a] claim that deficiencies in the trial transcripts were so great that the plaintiff's constitutional rights on appeal were violated is 'a direct challenge to the validity of the conviction and the legality of plaintiff's confinement.' " Stokes v. Kreidler, No. 18-CV-0113, 2018 WL 1226027, at *3 (N.D.N.Y. Jan. 30, 2018), report and recommendation adopted, 2018 WL 1229699 (N.D.N.Y. Mar. 8, 2018) (citing Davison v. Reyes, No. 11-CV-0167, 2012 WL 948591, at *3 (E.D.N.Y Mar. 20, 2012)). The sole remedy for a challenge to Plaintiff's conviction is under 28 U.S.C. § 2254, after exhausting his state court remedies. See, e.g., Bridgeforth v. County of Rensselaer, No. 08-CV-0779, 2008 WL 5156936, at *4 (N.D.N.Y. Dec. 8, 2008), adhered to on denial of reconsideration, 2009 WL 102959 (N.D.N.Y. Jan. 13, 2009) (dismissing Section 1983 claims alleging, inter alia, that the prosecutor, judge, and court reporter conspired to alter official court records because "any attack on the sentence for which Plaintiff is currently serving cannot be attacked in a § 1983 action without an indication that such sentence has been reversed") (citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)).

**\*7** Accordingly, as is readily apparent, Plaintiff's Section 1983 claims are not plausible even if the Court were to consider the merits.

## II. Leave to Amend

Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, see Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted. Here, because Plaintiff could not cure the substantive deficiencies set forth above with better pleading, amendment would be futile. Accordingly leave to amend the Complaint is DENIED.

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that, upon this Court's Section 1915A(a) screening of the Complaint, Plaintiff fails to allege a plausible claim for relief for the reasons set forth above; and

**IT IS FURTHER ORDERED** that the Complaint is DISMISSED pursuant to 28 U.S.C. § 1915A(b) given that it fails to state a claim and seeks monetary relief from Defendants who are immune from such relief and it is frivolous; and

**IT IS FURTHER ORDERED** that Plaintiff's motion seeking a preliminary injunction (ECF No. 4) is DENIED; and

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies any appeal from this Order would not be taken in good faith. Therefore, in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the pro se Plaintiff at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**All Citations**

Slip Copy, 2023 WL 4207907

## Footnotes

1   The Order also denied Plaintiff's Motion for Order to Show Cause seeking an order: (1) directing Defendants to show cause "why a preliminary injunction should not issue" enjoining "them from denying the Plaintiff access to the Records in his Case, County Court Ind. No. 308C-2020 and falsifying documents in the past and in the future," and (2) requesting Defendants temporarily be ordered to "restrain[ ] from commiting [sic] crimes including concealment of Records and falsifying documents." (Order at 1-2 (citing OSC Motion, ECF. No. 4, and Pl.'s Support Aff., ECF No. 4-1).) The Court ruled on Plaintiff's OSC Motion to the extent it sought a temporary restraining order ("TRO") and held in abeyance any determination regarding Plaintiff's request for a preliminary injunction pending its initial screening of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (See Order at 2 n.1.)

2   Notably, the Sentencing Transcript filed by Plaintiff as Exhibit 18 to his Complaint (see ECF No. 7-4 at 2) reflects that the Court Reporter's sur-name is "Connors" rather than "Conner". For consistency with Plaintiff's Complaint, the Court will use "Conner" in this Memorandum and Order.

3   The Court presumes familiarity with Plaintiff's underlying state court criminal action, but notes that according to the information maintained by the New York State Office of Court Administration on its public website, in Suffolk County Court, Criminal Term, Case No. 00308C-2020, on July 18, 2022, Plaintiff was convicted by a jury on a multi-count indictment including Operating as a Major Trafficker, a class A-1 felony, and Conspiracy in the Second Degree, a class B felony. See https://iapps.courts.state.ny.us/webcrim (last visited on Sept. 16, 2022). In sum, Plaintiff challenges his arrest and conviction, asserting that he was illegally apprehended, and then convicted, based upon cellphone "ping data" collected without a warrant; he also maintains that evidence used against him at trial was illegally obtained via a warrantless search of his apartment. (See Sept. 23, 2022 Sent'g Hr'g Tr., ECF No. 7-4, at ECF pp. 81-87; see also Compl. at ECF pp. 16-17, 19.)

4   Although "[t]he doctrine of judicial immunity does not shield judges from claims for prospective declaratory relief," Krupp v. Todd, No. 14-CV-0525, 2014 WL 4165634, at *4 (N.D.N.Y. Aug. 19, 2014), "[a]bsolute judicial immunity bars declaratory judgment claims that are retrospective in nature in that they seek a declaration that a judge's past behavior has violated the Constitution." Leathersich v. Cohen, No. 18-CV-6363, 2018 WL 3537073, at *4 (W.D.N.Y. July 23, 2018) (internal quotation omitted) (citing cases); see also Moore v. City

of N.Y., No. 12-CV-4206, 2012 WL 3704679, at *2 (E.D.N.Y. Aug. 27, 2012) ("Judicial immunity also bars ... claims for retrospective declaratory relief."). A review of the Complaint makes clear that it is targeted at Judge Collins's conduct in Plaintiff's concluded state court action. (See Compl., ECF No. 1, in toto.) Indeed, Plaintiff seeks not to vindicate some prospective right, but a declaration that Judge Collins's prior judicial actions were erroneous. Given that Plaintiff seeks retrospective relief, such claims are barred. Montesano v. New York, Nos. 05-CV-9574, 05-CV-10624, 2006 WL 944285, at *4 (S.D.N.Y. Apr. 12, 2006) (neither "injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments") (citing Huminski v. Corsones, 396 F.3d 53 (2d Cir. 2005)).

5       Although Plaintiff alleges Tropea is the Clerk of the Court, County Court of Suffolk County (see ECF No. 1 at 2), the information maintained by the New York State Office of Court Administration on its public website reflects that Tropea is the Chief Clerk of that court. See https://ww2.nycourts.gov/courts/10jd/suffolk/county.shtml (last visited on June 16, 2023).

6       Similarly, given that Judge Collins is also a New York state employee, he too is shielded from liability in his official capacity by the Eleventh Amendment. See Silvels v. New York, 81 F. App'x 361, 362 (2d Cir. 2003) (affirming dismissal of Section 1983 claims sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) on the grounds of judicial and Eleventh Amendment immunity). Moreover, given Conner's apparent employment by the New York State Office of Court Administration as an Official Senior Court Reporter, she too would be shielded from liability in her official capacity by the Eleventh Amendment. However, the Court need not reach that question for the reasons that follow.

7       Insofar as Plaintiff complains that the alleged transcript errors prejudice an appeal of his conviction, such facts may form the basis of a proper Section 1983 claim at the appropriate time. A criminal defendant possesses a due process right to a "substantially accurate" transcript in a criminal proceeding. Argentieri v. Majerowicz, 158 F. App'x 306, 307 (2d Cir. 2005) (summary order). However, "[m]ore than an inaccurate transcript is necessary to state a claim, [ ] [and] a [p]laintiff must also show that the alleged inaccuracies adversely affected the outcome of her proceedings." Wilson v. Richards, No. 14-CV-2459, 2014 WL 6682579, at *2 (S.D.N.Y. Nov. 25, 2014) (citing Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir. 1993) (internal quotation marks omitted); also citing Argentieri, 158 F. App'x at 308 (affirming summary judgment for defendant because plaintiff was not "deprived in any way of his access to courts or right to an effective appeal")). Any such claim is premature at this juncture given that the appeal filed by Plaintiff is not yet perfected. See People v. Braithwaite, No. 2022-09001, May 5, 2023 Decision and Order (N.Y. App. Div., 2d Dep't 2023) (granting Braithwaite leave to prosecute the appeal as a poor person, assigning appellate counsel, and granting extension to perfect appeal). In turn, any related claim of prejudice is currently speculative, making it implausible. See Burrell, 558 F. Supp. at 92 ("[I]f a state official intentionally alters a transcript in a way that prejudices a defendant's appeal, the due process clause of the fourteenth amendment might be violated.... To prove such a violation plaintiff would have to show ... the existence of intentional tampering; then, he would have to prove the alleged errors and omissions in the trial transcript prejudice his statutory right to appeal." (citations omitted)); Godfrey v. Irvin, 871 F. Supp. 577, 584 (W.D.N.Y. 1994) ("In order to demonstrate denial of a fair appeal, [plaintiff] must show prejudice resulting from the missing or incomplete transcript."). Thus, any substantive due process claim is not plausible given the absence of any allegation that Plaintiff suffered "some tangible harm." Curro v. Watson, 884 F. Supp. 708, 720 (E.D.N.Y. 1995), aff'd, 100 F.3d 942 (2d Cir. 1996); see also Collins, 438 F. Supp. 2d 399, 415–16 (2d Cir. 2006) (plaintiff alleging violation of right to access to the courts must allege an "actual injury"). Upon careful review of the Complaint, Plaintiff has not alleged any tangible harm. (See Compl., in toto.) Plaintiff does not allege that he was not successful in his Article 78 proceedings. Even if he was unsuccessful in those proceedings, he does not allege that any such failure stemmed from the transcriptions. Compare Collins, 438 F. Supp. 2d at 417 (prisoner adequately alleged tangible harm where he

alleged that his Article 78 proceeding was dismissed when prison officials failed to provide him with necessary copies of documents).

8    Plaintiff's allegation that the transcript was <u>deliberately</u> tampered with does not save his procedural due process claim because the state provides adequate post-deprivation remedies. <u>See</u> Curro, 884 F. Supp. at 717–19 (prisoner who alleged that court reporters deliberately altered the transcript of his criminal trial did not state procedural due process claim because New York provides a procedure for challenging inaccuracies in trial transcripts).

---

**End of Document**                                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 76 of 140

Mendez v. Johnson, Not Reported in Fed. Supp. (2022)

2022 WL 3587600
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Hiram Noel MENDEZ, Plaintiff,

v.

Reginald J. JOHNSON; Stephen A. Ronco;
Spencer Guerrero; Tina Cardinale; Belle Bowen;
Officer Dycktra; Officer Santos, Defendants.

22-CV-6811 (LTS)
|
Signed August 22, 2022

**Attorneys and Law Firms**

Hiram Noel Mendez, Cortland Manor, NY, Pro Se.

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, who is appearing *pro se*, invokes the
Court's federal question jurisdiction, alleging that Defendants
violated his civil rights. The Court construes the complaint
as asserting claims under 42 U.S.C. § 1983. Named as
Defendants are City of Peekskill Judge Reginald J. Johnson;
Assistant District Attorney (ADA) Stephen A. Ronco; City of
Peekskill Clerk of Court Spenser Guerrero; City of Peekskill
Chief Clerk Belle Bowen;[1] Tina Cardinale; and Officers
Dycktra and Santos. By order dated August 10, 2022, the
Court granted Plaintiff's request to proceed *in forma pauperis*
(IFP), that is, without prepayment of fees.

For the reasons set forth below, the Court dismisses Plaintiff's
claims against Judge Johnson, Clerk of Court Guerrero, and
Chief Clerk Bowen, and grants Plaintiff leave to file an
amended complaint with respect to the remaining defendants
within 60 days of the date of this order.

STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of
the complaint, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief

from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction
of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

BACKGROUND

The complaint alleges that Plaintiff's claims arose on January
12, 2020, in Peekskill, New York. The "facts" section of the
complaint states in its entirety:[2]

> I bealieve and do believe that I have
> concerning fiduciary relationships
> in the matter of HIRAM NOEL
> MENDEZ Estate Peekskill City Court
> claimed to be fiduciary's trustees over
> one's estate and they're also claiming
> to be beneficiaries so they're collecting
> on the estate I'm standing in there
> courts venue being auctioned off
> without my knowledge or concent or
> authorization and at the same time
> they're collecting. They want me to pay
> whether it's in my physical being or
> FRN what have you [F]ederal Reserve
> Notes. I do not wish to bring liability
> issues upon that court however my life
> has been place in jeopardy. I am being
> targeted and I require an advocate and
> the underline subject here is I don't

Mendez v. Johnson, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 77 of 140

want to be a party of any tax fraud. Nunc pro tunc.

**\*2**  (ECF 2, at 5.)

Plaintiff describes his injuries as the following: "I had to go to the hospital because my handcuff I mean there had cuffs hurt me so bad I was bleading I needed to get professional help." (*Id.* at 6.)

In the section of the complaint form to state the relief he is seeking, Plaintiff writes,

> I demand compensation from the state in the amount of $240,000.00 for the commercial injuries I have sustained from the loss of my property, loss of time from work and cost certify mailings and affidavit notice of man's and parties involved the cost of filing and according as well the expensive and curve traveling as resolved to being deprived of use my private property automobile.

(*Id.*)

## DISCUSSION

Because Plaintiff states that Defendants violated his civil rights, the Court construes the complaint as asserting claims under 42 U.S.C. § 1983. To state a claim under Section, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins,* 487 U.S. 42, 48-49 (1988).

## A. Judicial and Quasi-Judicial Immunity

The Court dismisses Plaintiff's claims against Judge Johnson, Clerk of Court Guerrero, and Chief Clerk Bowen. Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco,* 502 U.S. 9, 11 (1991). Generally, "acts

arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt,* 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation ...." *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

This immunity also applies to government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties. *See Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985); *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir. 1999); *see also Ali v. Pollak,* 182 F.3d 898 (2d Cir. 1999) (unpublished opinion) (extending judicial immunity to a pro se law clerk); *Oliva v. Heller,* 839 F.2d 37, 39-40 (2d Cir. 1988) (extending judicial immunity to a judge's law clerk); *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA,* No. 3:17-CV-2164, 2018 WL 2138631, at \*2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman,* No. 12-CV-4100, 2012 WL 4034038, \*2 (E.D.N.Y. Sept. 10, 2012) (same), *appeal dismissed,* 12-4080 (2d Cir. Jan. 31, 2013); *Gibson v. Brown,* No. 12-CV-0622, 2012 WL 1744845, at \*4-5 (E.D.N.Y. May 16, 2012) (extending judicial immunity to a pro se writ clerk), *appeal dismissed,* No. 12-2748 (2d Cir. Dec. 20, 2012).

**\*3**  Although the factual basis is not entirely clear, it appears that Plaintiff's claims against Johnson, Guerrero, and Bowen arise from actions taken with respect to a case before Judge Johnson in the Peekskill City Court. Plaintiff fails to allege any facts showing that these defendants acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles,* 509 U.S. at 11-12. Because Plaintiff sues Johnson, Guerrero, and Bowen for "acts arising out of,

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 78 of 140

Mendez v. Johnson, Not Reported in Fed. Supp. (2022)

or related to, individual cases before" Judge Johnson, these defendants are immune from suit for such claims. *Bliven*, 579 F.3d at 210. The Court therefore dismisses Plaintiff's claims against Johnson, Guerrero, and Bowen because they seek monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

### B. Claims against ADA Ronco

Plaintiff also asserts claims against ADA Ronco. However, prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are " ' intimately associated with the judicial phase of the criminal process.' " *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks and citations omitted)). In addition, prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 70-72 (2d Cir. 2019) (holding that ADAs' direction as to where criminal defendant would be arraigned was in preparation for a court proceeding in which the prosecutors were acting as advocates, and ADAs were therefore shielded by absolute immunity (citing, *inter alia*, *Van de Kamp*)).

Because the complaint does not allege any facts explaining how ADA Ronco allegedly violated Plaintiff's rights, the Court is unable to determine whether prosecutorial immunity applies. If Plaintiff believes that Ronco has committed acts outside of the scope of his official duties as a prosecutor that have violated Plaintiff's rights, Plaintiff may reassert his claims against Ronco in the amended complaint, and Plaintiff must allege facts suggesting that prosecutorial immunity does not apply.

### C. Claims against Dycktra, Santos, and Cardinale

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief

"that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

Here, Plaintiff does not allege facts suggesting a plausible Section 1983 claim against Officer Dycktra, Officer Santos, or Tina Cardinale. Plaintiff names the two police officers as defendants and states that he was bleeding due to handcuffs, but he does not allege any facts explaining how these two defendants were personally involved in causing such injuries. Furthermore, Plaintiff names Tina Cardinale as a defendant in the caption, but the complaint does not allege any facts regarding Cardinale, including who she is or how she was personally involved in violating Plaintiff's rights. The Court therefore grants Plaintiff leave to file an amended complaint that alleges facts suggesting that Officer Dycktra, Officer Santos, and Tine Cardinale violated his rights.

### LEAVE TO AMEND

**\*4** Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because it is not clear at this point that amendment would be futile, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his Section 1983 claims against ADA Ronco, Tina Cardinale, and Officers Dycktra and Santos. If Plaintiff chooses to reassert his claims against Ronco, he must allege facts suggesting that Ronco has committed acts outside

Mendez v. Johnson, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 79 of 140

of the scope of his official duties as a prosecutor that have violated Plaintiff's rights.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

The Court dismisses Plaintiff's claims against Johnson, Guerrero, and Bowen because they seek monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills,* 645 F.3d at 177 ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order,

caption the document as an "Amended Complaint," and label the document with docket number 22-CV-6811 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Attachment

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 80 of 140

Mendez v. Johnson, Not Reported in Fed. Supp. (2022)

**Defendant No. 2**   Name _____   Shield # _____
Where Currently Employed _____
Address _____

**Defendant No. 3**   Name _____   Shield # _____
Where Currently Employed _____
Address _____

Who did what?

**Defendant No. 4**   Name _____   Shield # _____
Where Currently Employed _____
Address _____

**Defendant No. 5**   Name _____   Shield # _____
Where Currently Employed _____
Address _____

**II.   Statement of Claim:**

State as briefly as possible the facts of your case.  Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.   In what institution did the events giving rise to your claim(s) occur?
_____
_____

B.   Where in the institution did the events giving rise to your claim(s) occur?
_____
_____

C.   What date and approximate time did the events giving rise to your claim(s) occur?
_____
_____
_____

What happened to you?

D.   Facts:_____
_____
_____

*Rev. 01/2010*                               2

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Was anyone else involved?

_____
_____

Who else saw what happened?

**III.   Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.
_____
_____
_____
_____
_____
_____
_____

**IV.   Exhaustion of Administrative Remedies:**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Administrative remedies are also known as grievance procedures.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?
Yes _____   No _____

*Rev. 01/2010*                               3

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).
_____
_____
_____

B.   Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?
Yes _____   No _____   Do Not Know _____

C.   Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?
Yes _____   No _____   Do Not Know _____
If YES, which claim(s)?
_____

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?
Yes _____   No _____
If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?
Yes _____   No _____

E.   If you did file a grievance, about the events described in this complaint, where did you file the grievance?
_____

1.   Which claim(s) in this complaint did you grieve?
_____

2.   What was the result, if any?
_____

3.   What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.
_____
_____
_____

F.   If you did not file a grievance:

1.   If there are any reasons why you did not file a grievance, state them here:
_____
_____

*Rev. 01/2010*                               4

_____
_____
_____

2.   If you did not file a grievance but informed any officials of your claim, state who you informed, when and how, and their response, if any:
_____
_____
_____
_____

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.
_____
_____
_____
_____
_____

**Note:**   You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

**V.   Relief:**

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). _____
_____
_____
_____
_____
_____
_____
_____

*Rev. 01/2010*                               5

Mendez v. Johnson, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 81 of 140

_____
_____
_____

**VI.    Previous lawsuits:**

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____  No _____

B.    If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____
Defendants _____

2. Court (if federal court, name the district; if state court, name the county) _____

3.    Docket or Index number _____
4.    Name of Judge assigned to your case _____
5.    Approximate date of filing lawsuit _____
6.    Is the case still pending?  Yes _____  No _____
       If NO, give the approximate date of disposition _____
7.    What was the result of the case?  (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____

C.    Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

Yes _____  No _____

D.    If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____
Defendants _____

2.    Court (if federal court, name the district; if state court, name the county) _____

3.    Docket or Index number _____
4.    Name of Judge assigned to your case _____
5.    Approximate date of filing lawsuit _____

*Rev. 01/2010*                                                                 6

6.    Is the case still pending?  Yes _____  No _____
       If NO, give the approximate date of disposition _____

7.    What was the result of the case?  (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____
_____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this _____ day of _____, 20___.

Signature of Plaintiff    _____
Inmate Number              _____
Institution Address         _____
                                     _____
                                     _____
                                     _____

Note:    All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff    _____

*Rev. 01/2010*                                                                 7

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3587600

## Footnotes

1    Plaintiff sometimes lists this defendant's last name as "Bowmen."

2    Plaintiff writes using irregular capitalization. For readability, the Court uses standard capitalization when quoting from the complaint. The Court otherwise quotes from the complaint verbatim and all grammar, spelling and punctuation are as in the original.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 82 of 140

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

2018 WL 2138631
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Linda Lan CHMURA, Plaintiff,

v.

NORTON, HAMMERSLEY, LOPEZ & SKOKOS
INVERSO PA, Acme Investment Group LLC,
John W. Deidre Jago, Sanctuary Pelican Pointe
Hoa, Progressive Community MGT Inc., Judd,
Ulrich, Scarlett, Wickman, Simmonti & Dean, PA,
Stephen H. Kurvin, Judges LoGalbo Jr., Haworth,
Bennett Jr., Dakin, Roberts, Rushing, Sheriff
Thomas Knight, The Florida Bar, Defendants.

No. 3:17-cv-2164 (MPS)
|
Signed 05/09/2018

**Attorneys and Law Firms**

Linda Lan Chmura, Stamford, CT, pro se.

<u>**INITIAL REVIEW ORDER**</u>

Michael P. Shea, U.S.D.J.

**I. Background**

**\*1** Plaintiff Linda Lan Chmura, appearing *pro se*, brings this action under 42 U.S.C. §§ 1983, 1985, the Racketeer Influences and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1965(a), *et seq.*, and other statutory provisions. She seeks declaratory and injunctive relief, as well as punitive damages, in connection with a foreclosure action filed against her in Sarasota County, Florida.

Ms. Chmura's complaint arises out of a foreclosure of a property she owned in Sarasota County, Florida ("the Property"). Ms. Chmura alleges that she retained a law firm, Norton, Hammersley, Lopez & Skokos PA ("Norton Hammersley"), to represent her in the foreclosure action. Eventually, as a result of disagreements between Ms. Chmura and her counsel, Norton Hammersley terminated its representation. Ms. Chmura filed a legal malpractice action against the firm in Florida state court (Case No. 09 CC 001986 NC) and retained attorney Stephen Kurvin to represent her. Norton Hammersley asserted counterclaims, including that

Ms. Chmura owed the firm unpaid fees. Ms. Chmura fired Kurvin in May 2010 and ultimately lost the suit against Norton Hammersley. On September 13, 2010, Judge LoGalbo of the Florida Circuit Court for Sarasota County entered final judgment against Ms. Chmura and in favor of Norton Hammersley. (ECF No. 1-2 at 36-38.)

On May 26, 2011, Sheriff Thomas Knight executed the judgment by foreclosing upon and selling the Property to Acme Investment Group, LLC ("Acme"). (ECF No. 1-2 at 50.) Ms. Chmura then filed another lawsuit (Case No. 11 CA 004853 NC) against Norton Hammersley and Acme, seeking a declaratory judgment that the foreclosure sale was void. (ECF No. 1-2 at 91-94.) On October 28, 2011, Judge Roberts of the Florida Circuit Court for Sarasota County entered final judgment against Ms. Chmura and in favor of Norton Hammersley and Acme, stating that Acme owned the Property. (ECF No. 1-2 at 34.)

Ms. Chmura brings this action against Norton Hammersley, Acme Investment Group, her former attorney Stephen Kurvin, the Florida state court judges who rendered rulings against her, Clerk of Court Karen Rushing, Sheriff Thomas Knight, the Florida Bar, and various other individuals and entities. She seeks a declaration that the Sheriff's foreclosure sale was void, an injunction granting her the right to repossess the Florida property, and punitive damages.

**II. Legal Standard**

Because Ms. Chmura seeks to proceed *in forma pauperis*, the Court must evaluate her complaint and determine whether it should advance. 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss [a] case at any time if the court determines that [the action] is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.") The Court must construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006). A *pro se* plaintiff, however, still must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 83 of 140

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

## III. Discussion

### A. Absolute Judicial Immunity

**\*2** Ms. Chmura's claims against Florida state court judges fail under the doctrine of absolute judicial immunity, which renders judges immune from suit for damages for judicial acts. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Absolute judicial immunity protects judges from liability for their judicial acts, even when the plaintiff alleges that the judge acted "maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Absolute immunity shields judges from all civil suits for damages, including suits under Section 1983, Section 1985, or civil RICO. *See, e.g., Peia v. U.S. Bankruptcy Court*, 62 Fed.Appx. 394, 396 (2d Cir. 2003) (summary order affirming dismissal of RICO claim as barred by judicial immunity); *Turner v. Boyle*, 116 F. Supp. 3d 58, 81-82 (D. Conn. 2015) (dismissing Section 1983 and 1985 claims as barred by judicial immunity).

Absolute immunity also bars Ms. Chmura's Section 1983 claim for injunctive relief. The 1996 amendments to Section 1983 make injunctive relief unavailable for claims against judges for actions taken in their judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Ms. Chmura's claims against Defendants LoGalbo, Haworth, Bennett, Dakin, and Roberts arise from acts the judges took in their judicial capacities while presiding over Ms. Chmura's Florida lawsuits. Ms. Chmura does not allege that any of the actions violated a declaratory decree or that declaratory relief was unavailable. Therefore, the claims against Florida state court Judges LoGalbo, Haworth, Bennett, Dakin, and Roberts are dismissed under the doctrine of judicial immunity and because they are frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis*] statute.").

### B. Absolute Quasi-Judicial Immunity

Clerk of Court Karen Rushing and Sheriff Thomas Knight are also immune from suit based on Ms. Chmura's allegations that Rushing entered writs of execution and Knight completed a Sheriff's sale as part of the foreclosure proceedings. Absolute immunity extends to nonjudicial officers who perform acts that "are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004). Quasi-judicial immunity protects court clerks and sheriffs from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." *Garcia v. Hebert*, No. 3:08CV95 (DFM), 2013 WL 1294412, at \*12 (D. Conn. Mar. 28, 2013) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) ), *aff'd*, 594 Fed.Appx. 26 (2d Cir. 2015) (summary order), *cert. denied*, No. 14-9720 (Oct. 5, 2015). *See also Tornheim v. Eason*, 363 F. Supp. 2d 674, 677 (S.D.N.Y. 2005) (sheriff had absolute quasi-judicial immunity for effectuating a judgment's mandate). Ms. Chmura's claims against Rushing and Knight arise out of acts that were integrally related to the Florida foreclosure proceedings. Therefore, the Court dismisses Ms. Chmura's claims against Rushing and Knight as frivolous.

### C. *Rooker-Feldman* Doctrine

The Court must also dismiss this action because it lacks jurisdiction over Ms. Chmura's claims under the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). That doctrine precludes federal district courts from reviewing final judgments of state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). The *Rooker-Feldman* doctrine applies where the plaintiff (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). The *Rooker-Feldman* doctrine "concerns a district court's subject-matter jurisdiction." *Lance v. Coffman*, 549 U.S. 437, 439 n.\* (2007).

**\*3** Ms. Chmura lost her cases in the Florida state courts before she filed this suit. She complains of injuries that she suffered as a result of those losses and requests that this Court declare that the foreclosure sale was void and order that she may take possession of the Property. Thus, Ms. Chmura's federal claims are "inextricably intertwined" with the Florida

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 84 of 140

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

state court judgments, and this Court lacks jurisdiction to hear those claims. *See, e.g., Andrews v. Citimortgage, Inc.*, No. 14-CV-1534 (JS)(AKT), 2015 WL 1509511, at *4 (E.D.N.Y. Mar. 31, 2015) (holding that *Rooker-Feldman* doctrine precluded federal court jurisdiction over claims alleging injuries that occurred as a result of a state court foreclosure judgment); *Done v. Option One Mortg.*, No. 09-CV-4770, 2011 WL 1260820, at *7 (E.D.N.Y. Mar. 30, 2011) ("Although plaintiff has made a cursory reference to seeking monetary damages, it is abundantly clear that the whole purpose of this action is to undo the foreclosure judgment. Therefore, *Rooker-Feldman* clearly applies."). Therefore, the Court dismisses Ms. Chmura's claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). [1]

### D. Statute of Limitations

Ms. Chmura's claims also fail because they are barred by the statute of limitations. The statute of limitations for a section 1983 claim is "that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The Connecticut statute of limitations for personal injury actions is three years. "When a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." *Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir. 1998). "RICO claims are subject to a four-year statute of limitations." *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 148 (2d Cir. 2012). "A cause of action to recover damages based on [a] RICO injury accrues to plaintiff at the time [she] discovered or should have discovered the injury." *Eno Farms Co-op. Ass'n., Inc. v. Corp.*

*for Indep. Living*, 2007 WL 3308016, at *4 (D. Conn. Nov. 5, 2007) (quoting *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988) ) (alterations omitted).

Here, all of the conduct underlying Ms. Chmura's claims occurred more than four years ago, with the most recent conduct occurring on October 28, 2011, when Judge Roberts entered final judgment against Ms. Chmura and in favor of Norton Hammersley and Acme. Ms. Chmura does not allege that she discovered her injuries at a later point in time. Therefore, Ms. Chmura's claims are barred by the statutes of limitations applicable to both Section 1983 and RICO claims and must be dismissed. [2]

### IV. Conclusion

**\*4** For the reasons stated above, Plaintiff's claims are DISMISSED. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. The motion for leave to proceed *in forma pauperis* (ECF No. 2), emergency petitions (ECF Nos. 3 and 7), and motion to appoint counsel (ECF No. 6) are DENIED as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2138631

---

## Footnotes

[1]    Further, the complaint fails to plead facts showing why the Court would have personal jurisdiction over any of the defendants. *See* Fed. R. Civ. P. 8(a)(1) (requiring allegations showing that the court has jurisdiction); *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (where defendants have not appeared in a case, the court may dismiss a case *sua sponte* for lack of personal jurisdiction).

[2]    While the statute of limitations is an affirmative defense, the Court may consider it upon the filing of the complaint if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008). Further, while the statute of limitations may be avoided where equitable tolling or other tolling doctrines apply, in this case the inapplicability of such doctrines is apparent because Ms. Chmura pleads no facts demonstrating that she was reasonably diligent in pursuing her claims and that extraordinary circumstances prevented her from filing her complaint within the limitations period. *See Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). The facts alleged indicate not only that she knew of the cause of action but that she was actively litigating related claims in another forum at a time that is well beyond the statute of

limitations. Ms. Chmura asserts a "fraud upon the court" but pleads no facts alleging "fraudulent concealment of the existence of a cause of action," as required for equitable tolling on the basis of "fraud." *See Pearl v. City of Long Beach*, 296 F.3d 76, 84 (2d Cir. 2002).

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

2012 WL 4034038
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Nella MANKO, Plaintiff,

v.

Leon RUCHELSMAN, individually and in his official
capacity as Justice of the N.Y.S. Supreme Court of Kings
County; Kagan, individually and in his official capacity
as Law Clerk of Part 16 of the Supreme Court of Kings
County; Leslie Torres, individually and in her official
capacity as Deputy Commissioner of the N.Y.S. Division
of Housing and Community Renewal Office of Rent
Administration; Jerry M. Scher, individually and in his
official capacity as Rent Administrator of the N.Y.S.
Division of Housing and Community Renewal Office of
Rent Administration; Mary Elizabeth Lacerenza, Esq.,
individually and in her official capacity as Attorney of
the N.Y.S. Division of Housing and Community Renewal
Office of Rent Administration; Susan E. Kearns, Esq.,
individually and in her official capacity as Attorney
of the N.Y.S. Division of Housing and Community
Renewal Office of Rent Administration; New York
State Division Of Housing And Community Renewal
Office Of Rent Administration; Shorefront Apartment
Co., in its individual and professional capacities;
Shorefront Apartments, LLC, in its individual and
professional capacities; Alan Polen, in his individual
and professional capacities; Robert Polen, in his
individual and professional capacities HOward M.
File, P.C., in his individual and professional capacities;
Sylvia O. Hinds–Radix, individually and in her official
capacity as Administrative Judge of the Supreme Court
of Kings County; Kings County Supreme Court of
the State of New York; Supreme Court of the State
of New York, Kings County; Chief Clerk Nancy T.
Sunshine, individually and in her official capacity as
County Clerk of the Kings County Clerk's Office; Kings
County Clerk's Office; William F. Mastro, Presiding
Justice, Appellate Division of the N.Y.S. Supreme
Court (Second Department); Appellate Division of
the N.Y.S. Supreme Court (Second Department); A.
Gail Prudenti, Former Presiding Justice, Appellate
Division of the N.Y.S. Supreme Court (Second

Department); CHief Judge Jonathan Lippman; New
York Court of Appeals; John Doe 1, individually and
in official capacity; John Doe 2, individually and in
official capacity; JOHN DOE 3, individually and
in official capacity; John Doe 4, individually and
in official capacity; John Doe 5, individually and in
official capacity; State of New York, Defendants.

No. 12–CV–4100 (KAM)(LB).
|
Sept. 10, 2012.

**Attorneys and Law Firms**

Nella Manko, Brooklyn, NY, pro se.

### *MEMORANDUM AND ORDER*

MATSUMOTO, District Judge.

**\*1** On August 13, 2012, *pro se* plaintiff Nella Manko
filed this action pursuant to 42 U.S.C. §§ 1983 and 1985,
alleging that defendants violated and conspired to violate
her constitutional rights during her 2008 and 2010 state
court housing actions, Kings County Supreme Court Index
Numbers 26610/2008 and 21055/2010. Plaintiff also alleges
various pendent state law claims. Plaintiff seeks damages
in the amount of $12 million. (*See* ECF No. 1, Complaint
("Compl.") at 37–38.) Plaintiff's request to proceed *in
forma pauperis* is granted solely for the purpose of this
Memorandum and Order, but the action is hereby dismissed
under 28 U.S.C. § 1915(e)(2)(B).

### 1. Litigation History

Plaintiff has filed five prior actions in this court, all of which
challenge decisions made in state court actions and allege
constitutional violations by judges, attorneys, court officers,
court reporters, and the courts involved in those state court
actions. *See Manko v. Finkelstein,* No. 11–CV–5054 (KAM)
(E.D.N.Y. filed Oct. 14, 2011, dismissed Feb. 7, 2012);
*Manko v. Steinhardt,* No. 11–CV–5103 (KAM) (E.D.N.Y.
filed Oct. 17, 2011, dismissed Jan. 27, 2012); *Manko v.
Steinhardt,* No. 11–CV–5430 (KAM) (E.D.N.Y. filed Oct.
31, 2011, dismissed Jan. 27, 2012); *Manko v. Steinhardt,*
No. 12–CV–1472 (KAM) (E.D.N.Y. filed March 21, 2012,
dismissed April 20, 2012); *Manko v. Steinhardt,* No. 12–CV–
2964 (KAM) (E.D.N.Y. filed June 12, 2012, dismissed June
20, 2012).

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Although each of the five actions plaintiff previously filed in this court names slightly different parties, each seeks to challenge the proceedings and outcomes of state court actions and alleges that the defendants violated her constitutional rights during the course of the proceedings. In every instance, plaintiff's case has been dismissed on the bases of the *Rooker–Feldman,* [1] res judicata, or judicial and sovereign immunity doctrines.

By Order dated February 7, 2012, under docket number 1 l–CV–5054, the court requested that the plaintiff "abstain from filing further duplicative or frivolous litigation in this court." *Manko v. Finkelstein,* 2012 WL 407092, at *1 (E.D.N.Y. Feb.7, 2012). In addition, under docket number 12–CV–1472, the court "notifie[d] plaintiff that similar future filings will subject her to a filing injunction." *Manko v. Steinhardt,* 12–CV–1472 (KAM), Order dated April 17, 2012, at 3, 6–7 (setting forth plaintiff's litigation history and giving notice that similar future filings will likely subject her to a filing injunction). Then, in its Order dated May 15, 2012, denying plaintiff's motion for reconsideration in *Manko v. Steinhardt,* No. 11–CV–5103 (KAM), the court reiterated its warning but did not yet enjoin plaintiff because she "filed this motion to reconsider on the same day that the court entered the Memorandum and Order in the subsequent action, *Manko v. Steinhardt,* 12–CV–1472." *Manko v. Steinhardt,* 2012 WL 1744836, at *2 (E.D.N.Y. May 15, 2012).

**\*2** Finally, by Order dated June 20, 2012, the court dismissed plaintiff's fifth duplicative action and ordered plaintiff to show cause within thirty days why she should not be barred from filing any new actions under the *in forma pauperis* statute without first obtaining the court's permission to do so. *Manko v. Steinhardt,* No. 12–CV–2964, slip op. at 7–8 (E.D.N.Y. June 20, 2012). On July 20, 2012, plaintiff requested an extension of time until August 20, 2012, to respond to the order to show cause. Although the court granted plaintiff's request, plaintiff's response failed to address the court's order to show cause. On August 30, 2012, the court entered an Order barring plaintiff from filing any new actions under the *in forma pauperis* statute without first obtaining the court's permission. Plaintiff filed this action on August 13, 2012, without seeking or obtaining prior court permission.

## 2. Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A court must construe a *pro se* litigant's pleadings liberally, however, *see Chavis v. Chappius,* 618 F.3d 162, 171 (2d Cir.2010), especially when those pleadings allege civil rights violations. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–93 (2d Cir.2008).

## 3. Deficiencies in the Complaint

Plaintiff is advised that, as currently stated, the complaint is barred by the doctrines of *Rooker–Feldman* and judicial, quasi-judicial and sovereign immunity. In *Hoblock v. Albany Cnty. Bd. of Elections,* the Second Circuit set forth four factors to determine whether the Rooker–Feldman doctrine applies: (1) plaintiff lost in state court; (2) plaintiff complains of the injury caused by the state court order; (3) plaintiff wants this court to review and reject the state court's determinations, and (4) the state court determinations in question were rendered before this action was commenced. 422 F.3d 77, 85 (2d Cir.2005). Each of the *Hoblock* requirements are met in the instant case which, in essence, asks for relief from a state court order against the plaintiff. Therefore, because the district court lacks subject-matter jurisdiction over this action, the court dismisses the complaint pursuant to Federal Rule of Civil Procedure 12(h)(3). *See id.* at 86.

In addition, each of the named state court employee defendants are protected from suit by absolute immunity. Because the claims against the judges are based solely on judicial acts performed in their judicial capacity, such claims against the judicial defendants are barred by the doctrine of judicial immunity. *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009). Moreover, a clerk of court, like defendant Sunshine named herein, and law clerks, like defendant Kagan, are absolutely immune from claims arising from their failure to properly manage the court calendar. *See Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) (finding that the court's "inherent power to control its docket is part of its function of resolving disputes between parties" and is therefore "a function for which judges and their supporting staff are afforded absolute immunity"); *Oliva v. Heller,* 839 F.2d 37, 39–40 (2d Cir.1988).

**\*3** Plaintiff has also named as defendants a host of private parties, including her apartment building and its operators.

These private parties are not subject to suit under 42 U.S.C. § 1983. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838–42, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (affirming dismissal of § 1983 claim because defendants not state actors); *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 155–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (stating § 1983 reaches only deprivations of rights by persons acting under color of law); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (distinguishing private conduct from state action).

Finally, plaintiff has named as defendants the State of New York, the New York State Division of Housing and Community Renewal Office of Rent Administration ("HCR"), and several New York state courts. All of these parties are absolutely immune from suit. The Eleventh Amendment bars § 1983 claims against states, absent their consent. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir.2009) (the New York State Unified Court System is an arm of the State, and therefore protected by Eleventh Amendment immunity); *Morris v. Katz,* No. 11–CV–3556, 2011 WL 3918965, at *5 (E.D.N.Y. Sept.4, 2011) (HCR is immune from suit under the Eleventh Amendment); *Mullin v. P & R Educ. Servs., Inc.,* 942 F.Supp. 110, 112–13 (E.D.N.Y.1996) (holding that § 1983 claims against former DMV Commissioners are barred by the Eleventh Amendment).

Finally, the court finds that the filing of this action is frivolous and malicious. 28 U.S.C. § 1915(e)(2)(B)(i).

### *CONCLUSION*

For the reasons set forth above, the complaint is dismissed. 28 U.S.C. § 1915(e)(2)(B). The court's Order enjoining plaintiff from filing any new *in forma pauperis* action without first obtaining permission from the court remains in effect. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is respectfully requested to serve a copy of this Memorandum and Order on plaintiff and note service on the docket.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4034038

---

### Footnotes

1    Under the *Rooker–Feldman* doctrine, cases "brought by [a] state-court loser[ ] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" are barred in federal courts, which lack subject-matter jurisdiction over such actions. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

---

**End of Document**                         © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 89 of 140

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

2019 WL 5002215
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,

v.

NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886 (TJM/ATB)
|
Signed 08/15/2019

**Attorneys and Law Firms**

LAYTONIA FLAGG, Plaintiff pro se

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

*\*1* The Clerk has sent me an amended [1] civil rights complaint filed by pro se plaintiff Laytonia Flagg. (Dkt. No. 3). Plaintiff Flagg has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 4).

**I. IFP Application**
A review of plaintiff's IFP application shows that she declares she is unable to pay the filing fee. (Dkt. No. 4). The court finds that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**
Plaintiff states that she is the mother of Mario Leslie, who at the time of the incidents described in the complaint, was on parole. (Amended Complaint ("AC") at 1). [2] On August 8, 2016, defendant New York State Parole Officer ("PO") Mark Saben went to Mr. Leslie's home at 514 Marcellus Street in Syracuse, New York, to conduct a "standard home visit." [3] (Id.) Mr. Leslie lived at the Marcellus Street address with his girlfriend, Tamacha Rodriguez. (Id.) Plaintiff claims that Ms. Rodriguez answered the door for PO Saben, and that Mr. Leslie was "summoned" from his bedroom to speak with defendant Saben. (Id.) After some discussion, PO Saben was walking toward the front door, when he spotted some glassine packets "known to contain heroin." (Id.) Upon discovering the glassine packets, defendant Saben informed Mr. Leslie that he was going to conduct a search of the entire residence according to the conditions of his parole release. (Id.)

*\*2* Plaintiff states that, as a result of the subsequent search, the officer discovered a safe, containing a loaded firearm and $31,925 in United States currency. Defendant Saben also discovered a key chain on which were a set

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 90 of 140

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

of keys that were identified as keys to plaintiff's residence. Plaintiff claims that "[a]t this point Sr. P.O. Rigby called the Syracuse Police Department." [4] (AC at 2). Plaintiff claims that defendant Rigby spoke to Sergeant A. Llukaci, a detective with the Syracuse Police Department, and Sergeant Llukaci told defendants Detectives William Summers and D.P. Proud to go to the Marcellus Street address. Plaintiff states that upon his arrival, defendant Proud stated that he spoke to Ms. Rodriguez, who told defendant Proud that Mr. Leslie kept his money at his mother's apartment "although there is no affidavit on file to attest to that assertion by the [sic] Det. Proud."

Defendant Summers obtained a warrant for the search of plaintiff's home at 112 Fordham Rd. in Syracuse, New York. (AC Ex. CM/ECF p.16-17). Plaintiff claims that she was not home when the "Syracuse Police" and defendant Saben arrived at her home to execute the search warrant. [5] (AC at 2). The officers entered with the key that was found at Mr. Leslie's Marcellus Street home. [6] (*Id.*) Plaintiff arrived shortly thereafter, but was denied entrance to her home while the search was being executed. (*Id.*) Plaintiff states that the officers searched plaintiff's apartment and recovered $40,000.00 in cash from a safe that was located in plaintiff's bedroom closet. Plaintiff alleges that the officers confiscated the money.

Plaintiff claims that the officers did not have probable cause to obtain the warrant to search her home because there was no proof that Ms. Rodriguez ever made the statement that Mr. Leslie kept his money at his mother's house, and thus, the warrant was obtained improperly. Plaintiff claims that her Fourth Amendment rights were violated as the result of the search of her apartment. Plaintiff then claims that after the seizure of her $40,000.00, she informed defendant Assistant District Attorney ("ADA") Sean Chase that the money did not belong to Mr. Leslie, and that the money was plaintiff's savings which she would be using to purchase a new home. (AC at 5). Plaintiff claims that ADA Chase told her that his "office would return the illegally seized money." (*Id.*)

Plaintiff states that, shortly after the incident, she also filed a "complaint" form to complain about the police "conduct in Plaintiff's home," and to request the "immediate return of the Plaintiff's money." (*Id.*) Plaintiff states that the District Attorney's Office responded to the "property release" request only after plaintiff obtained the intervention of "a 3[rd] party (Feldman, Kramer & Monaco, P.C.)" (*Id.*) Plaintiff claims that

the property release form showed that the plaintiff's "legally possessed currency was improperly forfeited along with the monies ($31,925.00) seized at 514 Marcellus St." (AC at 6).

Plaintiff claims that ADA Chase told plaintiff on three separate occasions that her money was going to be returned, but that this was a "stalling tactic" by the District Attorney's Office. ADA Chase told plaintiff that he was waiting to hear from Mr. Leslie's attorney "in hopes of persuading [Mr. Leslie] to sign a forfeiture document that later became clear to the Plaintiff that the forfeiture included what was seized at both residences...." (AC at 6). The forfeiture document states that Mr. Leslie stipulated to the forfeiture of $67,269.00, and that he was not aware of any other person who claimed to be the owner of the property. [7] (AC at 6). Plaintiff alleges that the $40,000.00 was not Mr. Leslie's to forfeit. Plaintiff also alleges that the amount on the stipulation of forfeiture that Mr. Leslie signed does not account for the entire amount seized, even though plaintiff was not given any of her money back. Plaintiff claims that the actual amount seized, including her $40,000.00 was $71,925.00, and that there is $4,656.00 missing from the total. (*Id.*) Plaintiff also claims that the individuals who seized her money did not have the "warrant in hand" and never gave her a receipt for the money that they took. (AC at 7). Plaintiff states that the money taken from her home was not specifically mentioned in any of the paperwork that was subsequently provided to plaintiff as the result of her inquiries. (AC at 8).

**\*3** Plaintiff states that she spoke to then-Chief of the Syracuse Police, Frank Fowler, who told plaintiff that her concerns would be "thoroughly investigated," but then did not provide plaintiff a report of the investigation and told plaintiff to file a Freedom of Information request if she wished to see the report. (*Id.*) Plaintiff has attached correspondence that she received from former Chief Fowler, stating that the report had been forwarded to him and that plaintiff could "be assured that [Fowler would] take the proper administrative action in this case." (AC Ex. CM/ECF p.19).

Although the AC contains a "Second Cause of Action," plaintiff essentially repeats that her Fourth Amendment rights were violated by the defendants' actions in conjunction with the search of her home and the seizure of her money. (AC at 8-9). Plaintiff states that she has not been afforded any documentation that would establish probable cause to search her home. (AC at 9). Plaintiff states that there is no connection between her and Mr. Leslie's "illegal activities," and there was nothing "illegal" found in plaintiff's apartment. (*Id.*) In

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 91 of 140

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

applying a very liberal reading of the AC,[8] the court could interpret plaintiff's second cause of action as a Fourteenth Amendment Due Process claim, asserting that the defendants deprived her of her money without due process of law when they did not return the money after she made various inquiries and did not allow her to challenge the ownership of the money after her son signed the waiver and stipulation.

As stated above, the plaintiff has attached various documents as exhibits to the AC, including (1) the search warrant issued by City Court Judge Kate Rosenthal for plaintiff's apartment at 112 Fordham Rd. (AC Ex. CM/ECF pp.16-17); (2) Plaintiff's Civilian Complaint Report (AC Ex. CM/ECF p.18); a letter to plaintiff from former Chief Fowler (AC Ex. CM/ECF p.19); a letter to plaintiff from David L. Chaplin, II, Esq. on behalf of the Citizen Review Board dated December 2, 2016 (AC Ex. CM/ECF p. 20); a letter to plaintiff from Kimberly M. Osbeck, a paralegal for the Onondaga County District Attorney's Office, dated March 6, 2018 (AC Ex. CM/ECF p. 21); a letter to plaintiff from the Public Integrity Bureau of the New York State Attorney General's Office (AC Ex. CM/ECF p. 22); an "Application for Release of Property," signed by plaintiff on November 2, 2017, together with the unsigned refusal to release the property because the "money [was] forfeited during [a] criminal prosecution." (AC Ex. CM/ECF pp.23-24); the "Waiver and Stipulation," signed by Mr. Leslie on February 28, 2017, relinquishing any rights to the seized money (AC Ex. CM/ECF pp.25-26); "CNYLEADS Narrative Supplement[s]" numbers 1-3, including an "offense page" and a "property supplement," detailing all the property taken from the Marcellus St. address. (AC Ex. CM/ECF pp.27-32).

Plaintiff seeks the return of the $40,000.00 that she claims was taken from her in August of 2016, compensatory damages for the "Syracuse Police Department trashing Plaintiff's two bedrooms at 112 Fordham Rd.," damages for "five hours" worth of lost income[9] on the day of the search, unspecified lost income for the day that she had to appear in court,[10] and "punitive" damages for emotional pain and suffering, including the damages for the delay in purchasing her dream home. (*Id.*)

## III. Eleventh Amendment/New York State Division of Parole

### A. Legal Standards

**\*4** The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). An action against state officers in their official capacities, or an action against an agency of the state, is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state).

### B. Application

In this case, in addition to the individual parole officers who were allegedly responsible for obtaining the warrant to search her apartment, plaintiff has named the "N.Y.S. Division of Parole." (AC at 1). The Eleventh Amendment prevents plaintiff from suing the N.Y.S. Division of Parole. Thus, to the extent that plaintiff seeks to sue the agency separately from the individual officers, the AC may be dismissed with prejudice, but as further discussed below, plaintiff may sue Mark Saben, one of the individuals who allegedly participated in obtaining the warrant for her home.[11]

## IV. Syracuse Police Department/Municipal Liability

### A. Legal Standards

Under New York law, departments, like the Syracuse Police Department that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality, and may not sue or be sued. *Hayes v. County of Sullivan*, Nos. 07-CV-667; 09-CV-2071, 2012 WL 1129373, at \*24 (S.D.N.Y. March 30, 2012) (citing inter alia *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).

### B. Application

To the extent that plaintiff is suing the Syracuse Police Department as an entity separate from the individual police officers who were allegedly involved in obtaining the warrant for her apartment, plaintiff may not do so. Unlike the State of New York itself, against which a suit for damages would be barred by the Eleventh Amendment, the City of Syracuse could be named instead of the Syracuse Police Department. However, the municipality itself may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an

individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

**\*5** As it is written, the AC makes no claims that would allow the plaintiff to name the City of Syracuse as a defendant in this action. Plaintiff essentially complains of a single incident, during which the officers did not act properly in obtaining a warrant for her home and did not act properly in executing the warrant in her case. There is no indication that plaintiff can assert a policy or custom which would support municipal liability based on these facts. While plaintiff may not sue the Syracuse Police Department in any event, and while the court will not sua sponte replace the Syracuse Police Department with the City of Syracuse, the court does not rule out that, upon proper pleading, plaintiff could amend her AC to assert such a claim against the City of Syracuse.

However, plaintiff is warned that any such facts must plausibly suggest her claim, and that simply making a conclusory allegation of a "policy or custom" is insufficient to assert municipal liability. *Sulaymu Bey v. City of New York*, No. 17-CV-3563. 2019 WL 1434597, at \*10 (E.D.N.Y. Mar. 29, 2019); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability) (citing inter alia *Genovese v. Town of Southhampton*, 92 F. Supp. 2d 8, 25 (E.D.N.Y. 2013)). A single incident, particularly if it involved individuals below the policy-making, level is insufficient to state a *Monell* claim. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). As discussed below, plaintiff may proceed against the individual officers who she claims violated her constitutional rights: Detective Summers, D.P. Proud; and Richard Curran.

## V. Prosecutorial Immunity/Personal Involvement

### A. Legal Standards

#### 1. Prosecutorial Immunity

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County*

*of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

#### 2. Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.* See also *Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*6** Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. See *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*.

*Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B. Application

Plaintiff has named the Onondaga County District Attorney, William J. Fitzpatrick, together with one of his Assistant District Attorneys, Sean Chase. (AC ¶ 3(c)). Plaintiff claims that she spoke to ADA Chase "right after the seizure," she explained to him that the money did not belong to her son, the money was hers, and she "produced tax returns" for the last five consecutive years in an effort to show that she "legally possessed the money." (AC at 5). She claims that "[k]nowing this," ADA Chase told plaintiff that his office would return the illegally seized money. (*Id.*) Plaintiff claims that notwithstanding ADA Chase's statement, he did not return the money, and allegedly "stalled" plaintiff until her son signed the waiver of forfeiture document, which included the total amount of money that was seized from both residences. (AC at 6). The initiation of civil asset forfeiture proceedings is a prosecutorial function that has been afforded absolute immunity. *See Byrne v. City of New York*, 736 Fed. App'x 263, 266 (2d Cir. 2018) (Second Circuit precedent affords absolute immunity to government attorneys who initiate civil suits) (quoting *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d Cir. 1992); *Mangiafico v. Blumenthal*, 471 F.3d 391, 395 (2d Cir. 2006)).

ADA Chase was allegedly handling the forfeiture proceeding, and even though he did not have to initiate court proceedings because Mr. Leslie signed the stipulation and waiver, the document stated that "I have concluded that the District Attorney would likely establish that the above-mentioned property is subject to forfeiture pursuant to Article 13-A [of the NY Civil Practice Law and Rules] and the District Attorney would likely prevail in such a forfeiture action." [12] (AC Ex. CM/ECF p.25). This document took the place of an in-court forfeiture proceeding, which would have been held pursuant to N.Y. Civ. Prac. L. & R. § 1311 (Forfeiture Actions). Thus, ADA Chase is entitled to absolute immunity with respect to his conduct relative to the forfeiture of the

money seized, even if plaintiff claimed that some of the money belonged to her. [13] This is true whether ADA Chase's conduct was proper or improper, and whether or not he was mistaken in obtaining Mr. Leslie's waiver and stipulation of forfeiture. Thus, to the extent that plaintiff raises due process violations with respect to her interest in the funds, they must be dismissed as against ADA Chase.

**\*7** Plaintiff has not asserted any facts against defendant Fitzpatrick. [14] He does not appear to have been involved in any way in obtaining the search warrant for plaintiff's apartment, in executing the search warrant for plaintiff's apartment, or in the forfeiture proceedings with respect to the money seized. Thus, any claims against him individually would fail for lack of personal involvement. If he had been personally involved in the forfeiture, he, like ADA Chase, would be entitled to absolute prosecutorial immunity. [15] Thus, plaintiff's amended complaint may be dismissed with prejudice as against defendants ADA Chase and DA Fitzpatrick.

## VI. Search and Seizure

### A. Legal Standards

"It is well-settled that in cases raising claims under the Fourth Amendment of unauthorized execution of a search warrant '[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to disclose, to the issuing Magistrate.' " *Arroyo v. City of Buffalo*, No. 15-CV-753, 2018 WL 4376798, at *3 (W.D.N.Y. Sept. 13, 2018) (quoting *Velardi v. Walsh*, 40 F.3d 569, 575 n. 2 (2d Cir. 1994) (internal quotation marks omitted)). A warrant is not invalid for section 1983 purposes if it is " 'based on seemingly reliable information which is later found to be erroneous.' " *Id.* (quoting *Lewis v. City of Mt. Vernon, N.Y.*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997)).

### B. Application

Although the court has concerns about the merits of this action, at this stage of the proceedings, the court finds that any Fourth Amendment claims that plaintiff may have against defendants Saben, Summers, Proud, and Curran may survive initial review. [16] Plaintiff seems to claim that the warrant for her home was based on false information given the court, which plaintiff claims was the only basis for the warrant. While it may be that a close review of the documents provided with the amended complaint, together with any other evidence

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 94 of 140

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

or argument by defendants in a properly supported dispositive motion, may show otherwise, the court is not currently in a position to make factual or other determinations regarding the validity of the warrant or any other claims that plaintiff may have regarding the search of her home.

**\*8** The court also notes that because of the waiver and stipulation, signed by Mr. Leslie, there was no formal forfeiture proceeding in New York State Court as provided in N.Y. Civ. Prac. L. & R. § 1311. Thus, it is unclear how the plaintiff could have challenged the forfeiture.[17] The court also makes no findings regarding the validity of any defenses that the defendants may assert regarding the incident in question.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 3) be **DISMISSED IN ITS ENTIRETY** as against defendants **N.Y.S. DIVISION OF PAROLE; SYRACUSE POLICE DEPARTMENT; WILLIAM J. FITZPATRICK; AND SEAN CHASE**, and it is

**RECOMMENDED**, that to the extent that the AC may be read as naming **SGT. LLUKACI or PO RIGBY**, the AC may be dismissed **WITHOUT PREJUDICE** for failure to state a claim, and it is

**RECOMMENDED**, that if the District Court adopts this Recommendation, the case be returned to me for further proceedings, including an order serving the remaining defendants: **SABEN, SUMMERS, PROUD, and CURRAN**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

### All Citations

Not Reported in Fed. Supp., 2019 WL 5002215

---

## Footnotes

1    When plaintiff filed her original complaint, the case was administratively closed due to plaintiff's failure to comply with the filing fee requirement. (Dkt. No. 2). Prior to re-filing her motion to proceed IFP, (Dkt. No. 4), plaintiff also filed an amended complaint, which the court will review as the operative pleading. The case was re-opened on August 1, 2019. (Dkt. No. 6).

2    Plaintiff numbered the pages of the "Fact" section of the amended complaint at the bottom of the page. The court will cite to the page numbers contained on the actual document. Plaintiff has attached a series of documents as exhibits to the amended complaint which she did not number. The court will cite to the plaintiff's exhibits ("AC Ex.") with the page number as assigned by the court's electronic filing system ("CM/ECF").

3    Plaintiff was not present for any of the incidents that she describes in her complaint until she arrived at her house during the subsequent search of her property. Plaintiff appears to be taking her recitation of the background facts from the police reports and other documents that she has attached to her amended complaint. (AC Ex. CM/ECF pp. 16-32). The court is stating the facts as plaintiff has described them in the amended complaint.

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 95 of 140

4    This is the first time that another parole officer was mentioned in plaintiff's statement of facts. The court will assume that defendant Rigby was at the residence from the beginning, but it is not completely clear from the papers.

5    Plaintiff does not allege that PO Rigby participated in the search of her apartment.

6    Plaintiff states that the officers were in possession of the door key "prior to their actual possession of the warrant for 112 Fordham Rd." (AC at 2).

7    Plaintiff has attached a copy of Mr. Leslie's "Waiver and Stipulation." (AC Ex. CM/ECF p.25-26). Plaintiff claims that this document was obtained after she asked for the return of the money several times from the District Attorney's Office, the Citizen Review Board, and the Syracuse Police Department. (AC at 7). When she failed to get a "truthful" response, she contacted Feldman, Kramer & Monaco, P.C. (*Id.*) The document was sent to the attorneys' office after the firm wrote a letter of inquiry. (*Id.*)

8    Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

9    Plaintiff states that she works from home, and could not work for the time that the officers were searching her apartment. (AC at 10).

10    Apparently, on the day that the officers searched plaintiff's apartment, they found a "weed roach" and gave plaintiff an appearance ticket, which was later dismissed after plaintiff appeared in court. (AC at 10). Plaintiff seeks lost income for the time that it took to appear in court. (*Id.*)

11    It is unclear whether plaintiff meant to name PO Rigby as a defendant herein. He is mentioned briefly in the body of the complaint and was apparently present during the Marcellus St. search, but is not listed in the caption of the complaint, and plaintiff submitted no proposed summons for PO Rigby. In addition, it does not appear from the facts as stated by plaintiff that PO Rigby was involved in obtaining the search warrant for plaintiff's apartment, nor is it even apparent that he was present during the search of plaintiff's apartment. Thus, plaintiff does not state any claims against PO Rigby, and to the extent that she meant to name him as a defendant, the AC should be dismissed as against him.

12    Article 13-a is entitled "Proceeds of a Crime -Forfeiture." N.Y. Civ. Prac. L. & R. Art. 13-a

13    Although not relevant to the court's decision because it is based on absolute immunity of the prosecutor, regardless of whether Mr. Leslie's assertions in the document were correct, the court notes that plaintiff's statement herein is contrary to her son's **sworn** assertion in the document. Plaintiff states that ADA Chase told plaintiff that they were waiting to hear from Mr. Leslie's attorney regarding whether he was going to sign the forfeiture document. (AC at 6). Plaintiff claims that her son signed the document "under duress." Plaintiff cannot assert any claims regarding her son, and in any event, her son was, by her own statement, represented by counsel during the matter.

14    Plaintiff requests only damages, including a return of the $40,000.00 as relief in this action. She does not seem to be asking for any form of injunctive relief. Even though plaintiff asks for a "return" of money, the Eleventh Amendment does not "recognize a distinction 'between monetary damages and money in which plaintiff has a property interest.' " *Local 851 of Internat'l Broth. of Teamsters v. Thyssen Haniel Logistics, Inc.*, 90 F. Supp. 2d 237, 249-50 (E.D.N.Y. 2000) (quoting *Yorktown Medical Lab., Inc. v. Perales*, 949 F.2d 84, 87-88 (2d Cir. 1991)). The District Attorney could have been the proper party in a declaratory judgment under

**Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)**

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 96 of 140

New York State law under N.Y. Civ. Prac. L & R. 1327 (Proceedings to Determine Adverse Claims), which plaintiff could have filed within six months of the stipulation, signed by Mr. Leslie.

15    To the extent that the complaint could be interpreted as suing either ADA Chase or DA Fitzpatrick in their "official capacities," the Eleventh Amendment would bar any such suit. *See Blessinger v. City of New York*, No. 17-CV-108, 2017 WL 3841873, at *1-2 (S.D.N.Y. Sept. 1, 2017) (prosecutors are entitled to Eleventh Amendment immunity when they are acting in their prosecutorial capacity because they are acting as state officials rather than city or county employees) (citing *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007) and *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) (when prosecuting a criminal matter, a district attorney in New York State represents the State not the County)).

16    Although plaintiff has included a proposed summons for Sgt. Llukaci, this individual is not listed in the caption of the AC, nor is he included in the section of the form-AC which lists the individual Syracuse Police Officers. (AC ¶ 3(c)) for whom she has included identification numbers. In any event, plaintiff's only allegations against Sgt. Llukaci are that he sent defendants Proud and Summers to Mr. Leslie's Marcellus St. home after the parole officers found contraband therein. Plaintiff does not allege that he was personally involved in any of the conduct that she claims violated her constitutional rights. He was not at either residence and was not involved in obtaining the allegedly invalid warrant. Thus, to the extent that plaintiff is trying to sue Sgt. Llukaci, the AC may be dismissed as against this defendant.

17    The court does note that section 1311(7) provides that an innocent owner may challenge the forfeiture and regain the forfeited property if the owner never received notice of the forfeiture. In addition, section 1327 provides for an "interested person" to bring a proceeding to determine adverse claims, even after the forfeiture action was settled by stipulation. *See Tupi Cambios, S.A. v. Morganthau*, 48 A.D.2d 278 (1st Dep't 2008). In *Tupi Cambios*, the District Attorney was the proper "defendant" in New York State Court.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 4963112
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,

v.

NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886
|
Signed 10/08/2019

**Attorneys and Law Firms**

Laytonia Flagg, Syracuse, NY, pro se.

### DECISION & ORDER

THOMAS J. McAVOY, Senior United States District Judge

### I. INTRODUCTION

 **\*1** This pro se action brought pursuant to 42 U.S.C. § 1983
was referred to the Hon. Andrew T. Baxter, United States
Magistrate Judge, for a Report and Recommendation pursuant
to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In his Order
and Report-Recommendation dated August 15, 2019 (Dkt.
No. 7), Magistrate Judge Baxter grants Plaintiff's application
to proceed in forma pauperis, and examines the sufficiency of
the allegations set forth in the Amended Complaint ("AC") in
light of 28 U.S.C. § 1915. He recommends that the AC (Dkt.
No. 3) be dismissed in its entirety as against defendants N.Y.S.
Division of Parole, Syracuse Police Department, William J.
Fitzpatrick, and Sean Chase; that to the extent that the AC
may be read as naming Sgt. Llukaci or PO Rigby, the AC be

dismissed without prejudice for failure to state a claim; and
that if the Court adopts these recommendations that the case
be returned to him for further proceedings, including an order
serving the remaining defendants Saben, Summers, Proud,
and Curran. No objections to the Report-Recommendation
have been filed, and the time to do so has expired.

### II. DISCUSSION

After examining the record, this Court has determined that the
Order and Report-Recommendation is not subject to attack
for plain error or manifest injustice.

### III. CONCLUSION

Accordingly, the Court **ACCEPTS and ADOPTS** the
recommendations in the Order and Report-Recommendation
(Dkt. No. 7) for the reasons stated therein. Therefore, it is
hereby

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 3)
is **DISMISSED IN ITS ENTIRETY** as against defendants
N.Y.S. DIVISION OF PAROLE, SYRACUSE POLICE
DEPARTMENT, WILLIAM J. FITZPATRICK, and SEAN
CHASE, and it is further

**ORDERED** that to the extent the Amended Complaint may
be read as naming SGT. LLUKACI or PO RIGBY, it is
**DISMISSED WITHOUT PREJUDICE** for failure to state
a claim, and it is further

**ORDERED** that the case be returned to Magistrate Judge
Baxter for further proceedings, including an order serving the
remaining defendants: SABEN, SUMMERS, PROUD, and
CURRAN.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4963112

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 2641432
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Mendelssohn PEREZ, Plaintiff,
v.
Ruddy DE LA CRUZ, et al., Defendants.

No. 09 Civ. 264(JPO).
|
June 12, 2013.

*ORDER ADOPTING REPORT AND RECOMMENDATION*

J. PAUL OETKEN, District Judge.

**\*1** In this action, *pro se* Plaintiff Mendelssohn Perez asserts several claims under the civil rights statutes, together with several common law claims, against defendants MTA Police Officer "John de la Cruz," Ruddy de la Cruz, Dolca de la Cruz, and the "de la Cruz family." Before the Court is the motion for summary judgment of Defendants Ruddy and Dolca de la Cruz—the only remaining defendants. Plaintiff Perez also moves to amend his Complaint. For the reasons that follow, Magistrate Judge Michael H. Dolinger's Report and Recommendation of February 20, 2013 is adopted in its entirety, and summary judgment is granted in part and denied in part; and Plaintiff's motion to amend is denied.

**I. Standard of Review**

"Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." *Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 766 (2d Cir.2002); *accord Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) ("As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."). Accordingly, whenever parties fail to object to a Magistrate Judge's Report and Recommendation ("R & R"), the Court reviews its findings for clear error. *See, e .g., Johnson v. Reno,* 143 F.Supp.2d 389, 391 (S.D.N.Y.2001) ("If neither party objects to the report, the Court 'need only satisfy itself that there is no clear error on the face of the record.' " (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985) (citations omitted)).

**II. Conclusion and Order**

Here, Judge Dolinger issued his decision on February 20, 2013, notifying the parties that they had 14 days within which to object to his findings. (*See* R & R at 39.) To date, neither party has asserted any objection to Judge Dolinger's R & R.

Upon review of the record and Judge Dolinger's careful and thoughtful analysis, the Court finds that there is no clear error on the face of the record.

Accordingly, Judge Dolinger's Report and Recommendation is hereby adopted in full, and Defendants' motion for summary judgment is GRANTED on all claims, with the exception of Plaintiff's claims against Ruddy de la Cruz arising from the Fourth Amendment and common law for false arrest and unlawful search, as to which the motion for summary judgment is DENIED. Plaintiff's motion to amend is denied.

SO ORDERED.

*REPORT & RECOMMENDATION*
*and MEMORANDUM & ORDER*

MICHAEL H. DOLINGER, United States Magistrate Judge.

TO THE HONORABLE J. PAUL OETKEN, U.S.D.J.:
*Pro se* plaintiff Mendelssohn Perez has filed this lawsuit against defendants MTA Police Officer "John de la Cruz," Ruddy de la Cruz, Dolca de la Cruz, and the "de la Cruz family." [1] Plaintiff asserts a variety of claims under the civil rights statutes, including false arrest, and a number of common-law claims, including negligence and intentional infliction of emotional distress. (Am.Compl.¶¶ 1, 16–28, 36–64). Plaintiff's claims are apparently based on a long-running dispute over his handling of a saxophone that was left in his custody by Ruddy de la Cruz. (*See id.* ¶ 11; Answer to Am. Compl. ("Answer") (docket no. 29) ¶¶ 11, 15).

**\*2** After an apparent comedy of errors during discovery and its aftermath, defendants Ruddy and Dolca de la Cruz—the remaining defendants in the case—have moved for summary judgment. Plaintiff, in turn, has opposed the motion and has filed what he styles a motion to amend the complaint. He also appears to seek an order to compel discovery, which we liberally construe as an application for relief under Rule

56(f). For the reasons that follow, we deny plaintiff's motion to amend and recommend that defendants' motion for summary judgment be granted in part and denied in part.

### I. *Prior Proceedings*

On July 29, 2008, plaintiff submitted a complaint against MTA Police Officer "John de la Cruz," numerous other officers, and Ruddy de la Cruz. (*See* Compl. (docket no. 2)). Following the partial dismissal of the initial pleading, plaintiff filed an amended complaint on July 13, 2009, naming Ruddy de la Cruz and "John de la Cruz" and adding as a defendant Dolca de la Cruz. (Am. Compl. (docket no. 28)). The amended complaint also named as a defendant the "de la Cruz family," which plaintiff characterizes as an "unincorporated association." (*Id.* at ¶ 48).

In the amended complaint and in the course of a pretrial conference held on October 5, 2009, plaintiff and defendants' counsel offered varying accounts of the events that gave rise to the complaint. Plaintiff apparently runs, or had run, a musical instrument repair business out of a basement apartment in Washington Heights, in Manhattan. At some point in 2005, Ruddy de la Cruz gave either one or two saxophones to the plaintiff for repair, and, for whatever reason, neglected to claim one of the saxophones for more than a year. When Ruddy did return to pick up the saxophone, the plaintiff claimed that he no longer had it in his possession, and he has subsequently asserted that he had already donated it to the Salvation Army in 2007. (Oct, 5, 2009 Conference Tr. ("Tr.") at 10–12; Pl.'s "Joint Pre–Trial Order" ¶ iv). Ruddy de la Cruz commenced an action against Perez in New York City Civil Court to recover the cost of the missing instrument, and he won a $12,000.00 judgment against the plaintiff, apparently on default. (Def. Mem. in Supp. of Summ. J. Mot. 1; *see also* Pl.'s "Joint Pre–Trial Order" Ex. D).

According to plaintiff, in March 2007 Ruddy de la Cruz and an MTA officer (who plaintiff apparently understood to be Ruddy's relative by the name of John de la Cruz), entered plaintiff's premises and demanded the return of Ruddy's saxophone. He alleges that, while armed, they threatened him with physical injury, and then conducted a search of the premises, looking for the instrument. (Am.Compl.¶¶ 8–14, 69). Plaintiff states that "Defendants' racial and ethnic animus was clearly expressed" during this invasion of his business, though he does not specify in what manner, (*Id.* ¶ 78). Plaintiff reports that he was trapped in the premises while this search was conducted, and he characterizes these individuals' conduct as "an illegal home invasion to effect

robbery-extortion." (*Id.* ¶ 14). He suggests that the MTA officer was paid by the de la Cruz family to lend his uniformed assistance. (*See id.* ¶ 17–18). Additionally, plaintiff alleges that members of the de la Cruz family—he does not specify who—harassed his relatives by phone and mailed a package to plaintiff's mother in the Dominican Republic, all of which conduct was accompanied by unspecified threats against plaintiff and his family, (Am. Compl. ¶ 15; [2] *see also* Pl.'s "Joint Pre–Trial Order" ¶ iv). Plaintiff asserted nine claims—(i) false arrest, (ii) false imprisonment, (iii) intentional infliction of emotional distress, (iv) negligence, (v) "civil rights deprivation" in violation of 42 U.S.C. § 1983, (vi) racial discrimination in violation of 42 U.S.C. § 1981, (vii) racial discrimination in violation of 42 U.S.C. § 1982, (viii) "hate crimes" or "conspiracy with racial animus," and (ix) "extortion." The majority of the claims were asserted against all named defendants. However, the § 1983 claim was asserted only against the MTA officer and the State of New York, and the negligence claim was asserted only against the de la Cruz family. [3]

**\*3** Ruddy and Dolca de la Cruz answered the amended complaint, denying all of its pertinent allegations. (*See* Answer). As further articulated by their attorney at our October 5, 2005 conference and in their portion of the joint pre-trial order, they agree that there was at least one encounter between Ruddy de la Cruz and the plaintiff concerning the saxophone. Counsel reported that at some point her client had gone with his son-in-law to Perez's premises and, faced with Perez's insistence that he no longer had the saxophone, de la Cruz left the premises and encountered an unknown MTA officer, whom he persuaded to intervene to attempt to resolve the dispute. (Tr. 6). According to counsel, the officer attempted to mediate the dispute but was unsuccessful. De la Cruz denied having searched the premises, threatened plaintiff or sent any packages to plaintiff's family members. (*Id.* at 6–8; *see also* Defs.' Resp. to Interrogs. 19–20; Pl.'s "Joint Pre–Trial Order" Ex. B).

As for the mysterious MTA officer (referred to by plaintiff as "John de la Cruz"), plaintiff never served him. [4] Accordingly, his claims against that individual have been dismissed without prejudice. (*See* Report & Recommendation, dated Feb. 16, 2011 (docket no. 41); Mem. & Order, dated Mar. 14, 2011 (docket no. 42)).

The parties apparently pursued some discovery efforts from each other, though with little success. Thus, defendants objected to most of plaintiff's interrogatories and document

requests (Decl. Of Priveterre in Opp'n to Pl.'s Mot. For Summ. J. ¶ 5 & Ex. E), and plaintiff never responded at all to defendants' discovery requests. (*Id.* ¶ 6 & Ex. F). Nonetheless, the court-imposed discovery deadline of December 31, 2009 (*see* Order, dated Oct. 5, 2009 (docket no. 18)) passed with no applications or communications from either side to the court. Plaintiff did file a motion on May 13, 2010, complaining that defendants had not responded to his discovery requests and seeking to compel a response—not mentioning that he had in fact previously received responses (albeit most of which consisted of objections). We granted plaintiff's motion by endorsed order dated June 7, 2010, since defendants had not filed any response to it. (Endorsed Order, dated June 7, 2010 (docket no. 31)). Our order required that defendants' discovery responses be served by June 21, 2010, but we subsequently learned that defendants had already served their responses on plaintiff by February 28, 2010. (Priveterre's June 14, 2010 letter to Ct.; Defs.' Aff., June 18, 2010; *see also* Priveterre Decl. ¶ 5 & Ex. E). As for defendants, they never sought any relief from the court for discovery derelictions by plaintiff.

In April 2010—well before plaintiff's belated discovery motion, with the discovery deadline of December 31, 2009 having long since passed and with no indication that either side was pursuing further discovery—we directed that the litigants submit a joint pre-trial order by June 25, 2010. (Order, dated Apr. 22, 010. (docket no. 27)). No such pre-trial order was forthcoming, and we therefore issued an order to plaintiff, directing him to show cause by July 30, 2010 why the case should not be dismissed for lack of prosecution. (Order, dated July 1, 2010 (docket no. 32)). In lieu of such a response, on August 19, 2010, plaintiff filed what he styled a summary-judgment motion, in the course of which he reported that discovery was complete. (*See* Pl.'s Mot. For Summ. J. 4–6). Defendants initially did not respond to the motion, but we directed that they provide such a response (Order, dated Oct. 15, 2010 (docket no. 38)), and they did eventually comply with that order. (*See* Defs.' Opp'n to Pl. Summ. J. Mot.). Based on the complete absence of any evidentiary proffer by plaintiff in support of his summary-judgment motion, the court denied the motion. (*See* Report & Recommendation, dated Feb. 16, 2011; Mem. & Order, dated Mar. 14, 2011).

**\*4** After the denial of plaintiff's motion for summary judgment, we again ordered the parties to submit a joint pre-trial order, this time by Friday, May 20, 2011. (Order, dated Mar. 16, 2011 (docket no. 44)). As part of the order, we directed plaintiff to provide defendants' attorney with a list of his claims, his contentions of fact, a list of his expected trial witnesses and his trial exhibits. We further ordered defendants to provide equivalent information to plaintiff. Finally, we ordered that defendants' counsel arrange for the preparation of the final version of the joint pre-trial order after a meeting between plaintiff and defendants' counsel to attempt to agree on stipulations of fact and the admissibility of exhibits. (*Id.*).

It does not appear that any of this took place. Instead, plaintiff submitted directly to the court his portion of a joint pre-trial order, containing his contentions of fact, the witnesses he intended to call, and a number of exhibits that seem irrelevant to anything that is in dispute in this case. (*See* Pl.'s "Joint Pre–Trial Order"). Similarly, defendants' counsel submitted their own part of the joint pre-trial order directly to the court. (*See* Defs.' "Joint Pre–Trial Order"). This submission mentioned defendants' contentions of fact, listed the witnesses they intended to call, and specified the exhibits that they intended to introduce. (*See id.*).

After submission of the two proposed pre-trial orders, defendants filed the current motion for summary judgment. Initially, however, the defendants' counsel neglected to serve a Rule 56.2 notice on plaintiff. We therefore provided this notice to plaintiff by order dated September 19, 2011 and extended the plaintiff's time to file opposing papers. Plaintiff subsequently filed opposition papers, which seem to consist largely of extracts or summaries of court decisions and commentaries concerning standards under Rule 56. (Order, dated Sep. 19, 2011 (docket no. 48); *see* Pl.'s Opp'n to Def. Summ. J. Mot.). As part of his response, plaintiff seeks to amend his complaint, and he also seeks to compel discovery from defendants, though he offers no specifics as to the factual basis for either request. (Pl.'s Opp'n to Def. Summ. J. Mot.).

*ANALYSIS*

We first address plaintiff's motion to amend, and then assess the defendants' summary judgment motion.

## A. *The Motion to Amend*

Plaintiff seeks leave to file what amounts to a second amended complaint. (*See* Pl.'s Opp'n to Def. Summ. J. Mot. at App. "Proposed Amended Complaint Civil Rights Suit—"Jury Trial Demanded—'Jim Crow Laws' " ("Proposed 2d Am. Compl.")). He does not explain either the substance of the changes that he seeks to make from his current pleading or to justify the timing of the application, but a comparison of

the draft pleading with the first amended complaint reflects that he is seeking to add several new claims, including one for abuse of process and one or more for violation of various provisions of the New York State Constitution. He also proposes to add a number of defendants, including the City of New York and Police Commissioner Ray Kelly, as well as to reinsert claims against the dismissed unknown defendant "John de la Cruz." (*See* Proposed 2d Am. Compl. 1). Predictably, defendants have not responded to this motion, but we nonetheless deny it.

**\*5** Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend the complaint] when justice so requires." The court may, however, deny an amendment "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007).

Plaintiff filed his original complaint in early 2009. He subsequently amended it, and, more than two years later, he has sought to amend it again. We deny the application for at least two reasons. First, the proposed application is futile and, second, plaintiff's extraordinary delay is unexplained and the addition of new claims and parties at this stage would unjustifiably prejudice defendants and would unreasonably frustrate the court's efforts to bring this case to a close.

The question of futility usually turns on whether the proposed new allegations serve a purpose, that is, whether they state a viable new claim against a current defendant or add a party against whom such a claim is stated. *See, e.g., New Majority Holdings, LLC v. Ghaida,* 2012 WL 4741950, \*1–2 (S.D.N.Y. Oct.3, 2012). The proposed new complaint would add Commissioner Kelly and the City as defendants, but it offers no clue as to why either of them should be a defendant in this case. Similarly, plaintiff would again add the mysterious MTA officer after his prior dismissal, even while admitting in the pleading that plaintiff still has no information as to this persons's true identity. Furthermore, to the extent that plaintiff would include a claim for abuse of process, he fails to justify that addition, since the complaint does not allege any facts that would support such a claim. To articulate a claim for abuse of process, a plaintiff must allege that a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New*

*York,* 331 F.3d 63, 76 (2d Cir.2003) (quoting *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994)). Plaintiff does not allege that any defendant used such legal process, whether for a good or bad reason. Finally, to the extent that plaintiff would invoke various provisions of the New York State Constitution, he offers no factual basis for asserting them against the current defendants in this case.

As for the timing of plaintiff's application, it was made well after the filing of defendants' Rule 56 motion and long after the close of the discovery period. In comparable circumstances, the Second Circuit has upheld the denial of a motion to amend where the party "waited more than three years to seek an amendment, and did so only after confronted with a motion for summary judgment." *City of New York v. Group Health Inc.,* 649 F.3d 151, 158 (2d Cir.2011). *See also Longman v. Wachovia Bank, N.A.,* 702 F.3d 148, 151 (2d Cir.2012). That is precisely the case here.

**\*6** In sum, plaintiff's application to amend his complaint is denied.

### B. *Defendants' Summary–Judgment Motion*

Before assessing defendants' summary-judgment motion, we briefly summarize the basic standards that govern requests for summary-judgment relief. We then turn to an evaluation of the party's arguments, organizing our discussion on a claim-by-claim basis.

### 1. *Summary–Judgment Standards*

The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York,* 366 F.3d 138, 148 (2d Cir.2004). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Shade v. Hous. Auth.,* 251 F.3d 307, 314 (2d Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party."

*Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986); *see, e.g., Anderson,* 477 U.S. at 255; *Howley v. Town of Stratford,* 217 F.3d 141, 150–51 (2d Cir.2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the "materials in the record, including depositions, documents, electronically stored information, affidavits, stipulations ... or other materials" that demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *see, e.g., Celotex,* 477 U.S. at 323; *Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir.2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy his initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. *See, e.g., Celotex,* 477 U.S. at 322–23, 325; *PepsiCo, Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir.2002); *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). If the movant fails to meet his initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Giannullo v. City of New York,* 322 F.3d 139, 140–41 (2d Cir.2003).

If the moving party carries his initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact. *See, e.g., Beard v. Banks,* 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); *Celotex,* 477 U.S. at 323–24; *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001). In doing so, the opposing party cannot rest merely on allegations or denials of the factual assertions of the movant, Fed.R.Civ.P. 56(e) (requiring that an affidavit or declaration submitted to oppose a motion "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated"); *see, e.g., Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 374 F.3d 56, 59–60 (2d Cir.2004), nor can he rely on his pleadings or on merely conclusory factual allegations. *See, e.g., Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 75 (2d Cir.2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. *See, e.g., Celotex,* 477 U.S.

at 324; *Scott v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.2d 522, 525–26 (2d Cir.1994). In other words, he must demonstrate that there is sufficient evidence for a reasonable jury to find in his favor. *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 455–56 (2d Cir.2007) (citing *Anderson,* 477 U.S. at 249).

**\*7** We note that, as a general matter, we must take care to construe a *pro se* litigant's papers liberally, in deference to his *pro se* status. *See Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988) (affording "special solicitude" to *pro se* litigants "confronted with motions for summary judgment"); *Salahuddin v. Couqhlin,* 999 F.Supp. 526, 535 (S.D.N.Y.1998) (noting that *pro se* litigants are to be given "special latitude on summary judgment motions") (internal quotation marks omitted) (quoting *Reyes v. Koehler,* 815 F.Supp. 109, 112 (S.D.N.Y.1993)). This does not, however, "relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment," *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (internal quotation marks omitted). In particular, "a *pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome [or prevail on] a motion for summary judgment ." *Lyerly v. Koenigsmann,* 2006 WL 1997709, \*2 (S.D.N.Y. July 17, 2006) (internal quotation marks omitted) (quoting *Odom v. Keane,* 1997 WL 576099, \*3 (S.D.N.Y. Sept. 17, 1997)).

### 2. *Assessment of the Motion*

In addressing the defendants' motion, we encounter certain procedural and substantive peculiarities ascribable to both sides' respective submissions. Defendants' papers contain no evidence and no citations to evidence pertinent to the claims at issue in this case. Rather, their counsel merely asserts, in conclusory fashion, in a series of paragraphs in a Rule 56.1 Statement that there is no evidence to support plaintiff's various factual contentions about his encounter with Ruddy de la Cruz and the unidentified MTA officer. In neither this document nor in a separate declaration does counsel proffer what the facts are, much less cite to any pertinent evidence. (*See generally* Defs.' Rule 56.1 Statement).

In opposition, plaintiff has supplied a stack of pages, akin to a memorandum of law, that ignore the specific facts and instead contain a series of quotations from various court decisions and commentaries pertaining to the standards for summary judgment and the requirements for motion papers under Rule 56. Liberally construed, we may interpret this

submission as tantamount to an argument that defendants have not met their initial burden on summary judgment. (*See* Pl.'s Opp'n to Def. Summ. J. Mot. 24, 37). In addition, at the conclusion of this part of plaintiff's submission, he alludes to the facts assertedly found in his "memorandum of law" (*id.* at 47), though he included nothing on the current motion that refers explicitly to the facts. Notwithstanding that failing, we may again liberally interpret this statement by plaintiff as seeking to incorporate his papers in support of his earlier, and unsuccessful, summary-judgment motion, which did contain a recitation of his version of the encounter. *See Crum v. Dodrill,* 562 F.Supp.2d 366, 376 (N.D.N.Y.2008) (court may conduct independent review of record to identify factual dispute when a party is *pro se* ). Finally, plaintiff includes (1) an affidavit from a man named William F. Bankhead, who reports that he witnessed plaintiff file a complaint with the New York City Police Department in June or July 2009, about the 2007 incident (referred to as a "physical attack by Ruddy de la Cruz," "accompanied by a rogue cop") and (2) a copy of correspondence that plaintiff apparently sent to the MTA referring to a "Corrupt Cop of MTA Using the Name 'De La Cruz,' a Male." (*See* Pl.'s Opp'n to Def. Summ. J. Mot. Ex. C).

**\*8** At the outset, it appears that defendants failed to meet their initial Rule 56 burden since they have not sought (1) to demonstrate what the undisputed material facts are, and (2) to establish that, based on those facts, they are entitled to judgment as a matter of law. Indeed, their Rule 56.1 statement is not evidence, *see, e.g., Giannullo,* 322 F.3d at 140, and, as noted, it does not refer to any evidence and does not articulate the facts that defendants regard as material.

Rule 56 contemplates that a party moving for judgment will proffer admissible evidence of the material facts, *see, e.g., id.* at 140–41; *see also Vermont Teddy Bear Co. v. 1– 800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004), and defendants have failed to do so. That alone may be a proper basis to deny the motion. [5]

Liberally construing plaintiff's papers, we conclude that he has shown at least a triable dispute of material fact as to what occurred during his encounter with defendant Ruddy de la Cruz. In this regard, we look beyond the inadequate papers of both sides on the current Rule 56 motion and examine various sources of more specific factual contentions by the litigants, including plaintiff's own prior summary-judgment motion, the respective pre-trial order submissions of the parties made before the current motion was filed, and the respective factual summaries by the two sides at our pretrial conference. [6]

In plaintiff's Rule 56 motion, he recounts that Ruddy de la Cruz and another person invaded his work place, demanded the return of the saxophone, went on an unauthorized search of the premises in an apparent effort to find it, threatened him with physical harm, and, apparently, at some point, physically restrained him from leaving. (Pl.'s Summ. J. Mot. (docket no. 33) 3–4). He further recounts that unidentified persons from Ruddy de la Cruz's family threatened plaintiff and his family on multiple occasions. (*Id.* at 4). In plaintiff's portion of the joint pre-trial order he recounted in substance the same series of alleged events (*see* Pl.'s "Joint Pre–Trial Order" ¶ iv), and in his appearance before the court at our conference he reiterated in substance the same account. (Tr. 9–12).

It bears mention that defendants have conceded that Ruddy de la Cruz left his saxophone with plaintiff for an overhaul, that he did not return for it until a year and three months had passed, that plaintiff told de la Cruz that he could not locate the instrument or claimed that he had given it away, that de la Cruz had then later returned to plaintiff's premises with a relative in an effort to retrieve his instrument after plaintiff had initially failed to produce it, that at some point de la Cruz left the premises and found an MTA officer nearby who was a complete stranger and inveigled him to assist in attempting to retrieve the instrument, and that the officer had tried unsuccessfully to mediate between plaintiff and de la Cruz. (*Id.* at 6–7).

**\*9** Given the absence of any question that there was an encounter of some nature between de la Cruz and Perez, and that an MTA officer was somehow involved, and in view of the starkly differing versions of what occurred, there can be little doubt that there are disputes of fact that are subject to trial if they are material to one or more of the claims asserted by plaintiff. To determine materiality, we briefly assess the claims pressed by Perez.

### a. *Claims Under 42 U.S.C. § 1983*

Defendants move for summary judgment on any claim asserted under section 1983—presumably for false arrest and false imprisonment—on the ground that plaintiff has not proffered any evidence that defendants were acting under color of state law, either by themselves or in concert with a government agent. (*See* Def. Mem. in Supp. of Summ. J. Mot. 5–7). We disagree.

To maintain an action under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution

and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). There is no dispute that Ruddy and Dolca de la Cruz are not government agents; indeed, plaintiff himself classifies them as real estate brokers. (*See* Am. Compl. ¶ 5). Plaintiff attempts to sustain the claims by asserting that Ruddy de la Cruz acted in concert with an MTA Police Officer, whom he refers to in the complaint as "John de la Cruz." (*See id.* at ¶ 4). As noted, although "John de la Cruz" has been dismissed from this case as a result of the plaintiff's inability to identify and serve this individual (*see* Mem. & Order, dated Mar. 14, 2011 (docket no. 43)), defendants have admitted through their counsel that at some point during the encounter that triggered this lawsuit, Ruddy de la Cruz met an MTA officer and brought him into plaintiff's premises in an apparent effort to persuade Perez to surrender the saxophone. Although the parties' versions of the encounter differ, if plaintiff persuades the trier of fact that the two men searched his premises without authorization and prevented him from leaving while doing so, the trier of fact could find sufficient evidence that Ruddy de la Cruz acted in concert with a government official, under color of law. Such a finding could potentially support a conclusion that Ruddy de la Cruz, in conjunction with the officer, violated plaintiff's Fourth and Fourteenth Amendment rights to be free from an unreasonable arrest or search. *See generally Brentwood Acad. v. Tennessee Secondary School Athletics Ass'n,* 531 U.S. 288, 295–97, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (standards for assessing "under color of state law"); *Adickes,* 398 U.S. at 152 (acting in concert under section 1983).

Since this is the only ground on which defendant Ruddy de la Cruz seeks summary judgment on these claims (*see* Def. Mem. in Supp. of Summ. J. Mot. 4–7), this aspect of his motion should be denied with respect to Mr. de la Cruz.

 **\*10** However, because plaintiff has failed to articulate any factual basis for inferring any involvement by defendant Dolca de la Cruz in the event involving the MTA officer, summary judgment on plaintiff's 1983 claims against her is warranted. In addition, while both parties seem to agree that a male relative of Ruddy de la Cruz—possibly his son-in-law (Tr. 6)—participated in the encounter with the MTA officer, no such individual was ever named in the complaint or the amended complaint, nor was anyone else served. Clearly, there is no legal basis for imposing legal liability on an unserved "family" based on the conduct of an unidentified individual family member. In short, the 1983

claims cannot survive against the ambiguously-identified "de la Cruz family."

 b. *Common–Law False Arrest & False Imprisonment*
Defendants also move for summary judgment on plaintiff's common-law false-arrest and false-imprisonment claims. (*Id.* at 7–8). Under New York law, the elements of false arrest and false imprisonment are substantially the same. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). To prevail, the plaintiff must prove that "(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir.1995); *accord Savino,* 331 F.3d at 75.

If credence is given to plaintiff's account that he was detained while Ruddy de la Cruz and the MTA officer searched his premises, then a trier of fact could find an intent to confine plaintiff, that he was conscious of and did not consent to that confinement, and that the confinement was not privileged. Accordingly, summary judgment cannot be granted to Ruddy de la Cruz on these claims.

As to defendants Dolca de la Cruz and "the de la Cruz family," summary judgment is appropriate for the same reasons as are articulated with respect to the section 1983 claims.

 c. *Intentional Infliction of Emotional Distress*
Plaintiff's third claim is for intentional infliction of emotional distress. To sustain such a claim, he must show "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996); *see also Howell v. New York Post Co.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993). Defendants seek summary judgment on this claim, contending that plaintiff cannot satisfy the first element, intent. (Def. Mem. in Supp. of Summ. J. Mot. 10–11). We agree.

The burden to establish the requisite conduct is substantial. *Howell,* 81 N.Y.2d at 122, 596 N.Y.S.2d at 353, 612 N.E.2d 699. Plaintiff must show that the defendant engaged in conduct " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society].' " *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d

Cir.1985) (quoting *Restatement of Torts, Second, § 46* cmt. d (1965)); *see Fisher v. Maloney,* 43 N.Y.2d 553, 558, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215 (1978); *Murphy v. Am. Home Products Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (1983). Plaintiff fails, as a matter of law, to meet this standard.

**\*11** In substance, plaintiff proffers a factual narrative in which Ruddy de la Cruz, accompanied by another individual, came to plaintiff's premises—which were commercial in nature and, presumably, partly available to the public—and demanded the return of his saxophone, and, upon being told by Perez that he no longer had possession of it, insisted on searching the premises to see if they could locate it. Whether this episode involved the commission of one or more torts —constitutional or otherwise—these facts do not remotely approach the type of misconduct that would qualify as intentional infliction of emotional distress. *See, e.g., Collom v. Village of Freeport,* 691 F.Supp. 637, 641 (E.D.N.Y.1988); *Arrington v. Liz Claiborne, Inc.,* 260 A.D.2d 267, 268, 688 N.Y.S.2d 544, 547 (1st Dep't 1999); *Navarro v. Fed. Paper Bd. Co.,* 185 A.D.2d 590, 594, 586 N.Y.S.2d 381, 384 (3d Dep't 1992). [7]

In short, this claim is subject to summary judgment in favor of all defendants.

#### d. *Negligence*

Plaintiff asserts a claim for negligence based on the purported negligent hiring, retention, training, and supervision of MTA Police Officer "John de la Cruz." In this portion of his pleading, plaintiff refers to "The De La Cruz Family" as a unit and purports to impose liability upon them based on the doctrine of respondeat superior. (Am.Compl.¶ 45).

Whether these allegations are treated as an attempt to assert a constitutional or a common-law claim, plaintiff cannot sustain his negligence claim. If he were asserting a constitutional claim, he would have to name the MTA—the presumptive government employer of the MTA officer—and would have to establish not mere negligence by its agent, but deliberate indifference by the defendant agency to the rights of the public. *See, e.g., Rivera v. Metro. Transit Auth.,* 750 F.Supp.2d 456, 464 (S.D.N.Y.2010); *Ellison v. City of New Rochelle,* 62 A.D.3d 830, 833, 879 N.Y.S.2d 200, 203 (2d Dep't 2009). He does not plead such a claim. Indeed, the MTA is not named as a defendant, and plaintiff purports to assert the claim only against the "de la Cruz Family." Plaintiff also fails to offer

even a hint of a factual basis for his asserted claim in his pleading, in his motion papers, and in his portion of the joint pre-trial order.

If we read the claim as based on common-law negligence, it fares no better. The MTA officer referred to by both sides was presumably an employee of the MTA, not of Ruddy de la Cruz or the "de la Cruz Family," whatever that term may refer to. Plaintiff also does not proffer any evidence that the "de la Cruz" family or any named defendant acted negligently; rather, he asserts that Ruddy de la Cruz engaged in intentional tortious conduct.

To the extent that plaintiff attempts to suggest that members of the de la Cruz family bribed a corrupt MTA officer (*see* Am. Compl. ¶¶ 17–18, 45–53)—a suggestion for which there is no apparent factual support—plaintiff's claim for negligent hiring is clearly off-point.

**\*12** Accordingly, summary judgment on this claim must be granted in favor of all defendants.

#### e. *The Conspiracy Claims*

Plaintiff's next two claims, asserted against all defendants, are for conspiracy under 42 U.S.C. §§ 1981 and 1982 [8] and for conspiracy "with racial animus." (Am.Compl.11– 13). Defendants' motion targets this set of claims, although it mis-characterizes them as being asserted under section 1983. (Def. Mem. in Supp. of Summ. J. Mot. 11–12). Plaintiff cannot demonstrate a factual basis for invocation of the cited statutory provisions, and his reference to "hate crimes" in the next section of his complaint cannot survive as a separate claim.

Section 1981(a) provides that,

> All person within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes,

licenses and exactions of every kind, and to no other.

Similarly, section 1982 specifies that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

To sustain a claim under section 1981, the plaintiff must demonstrate a racially-based interference with his right to contract or maintain a contractual relationship or benefit from a contract. *See, e.g., Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 475–77, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006). As for claims under section 1982, the plaintiff must show a racially-based deprivation of property or property rights, that is, most notably discrimination in the rental or sale of property. *See generally Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 437–41, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); *see also Tennessee v. Lane,* 541 U.S. 509, 561, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004).

Plaintiff in this case can satisfy neither set of requirements. Though he alludes to racial epithets uttered by the individuals who allegedly invaded and searched his business, he fails to demonstrate any denial of a right to enter into a contract or to establish or maintain a contractual relationship, or to purchase or rent personal or real property, as a result of racial animus.

Reading plaintiff's pleading liberally, we infer that he may be seeking to assert a claim under 42 U.S.C. § 1985(3), which provides, in part:

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein

do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**\*13** "To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999); *see also Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir.1988) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). As this wording suggests, the action that is the subject of the conspiracy must be motivated by some class-based discriminatory intent or racial animus. *See Thomas,* 165 F.3d at 146; *Gleason v. McBride,* 869 F.2d 688, 695 (2d Cir.1989).

Plaintiff offers no evidence that any defendant—acting with or without the MTA officer—conspired to deprive him of his civil rights as a result of racial or other class-based animus. That is fatal to this version of the conspiracy claim. *See, e.g., Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993) (noting "an essential element to each cause of action is a requirement that the alleged discrimination took place because of the individual's race").

Although the complaint contains a separately worded set of allegations in support of a claim for a conspiracy founded on "racial animus," or a "hate crimes" violation," (Am.Compl.11), we note that plaintiff's set of purely conclusory allegations does not save any variant of his conspiracy theories. *See, e.g., Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 617, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987) (pleading "racial discrimination" without specifics is inadequate). At the summary-judgment stage the plaintiff must proffer potentially admissible evidence sufficient to

create a triable issue of fact, and in this instance Perez entirely fails to do so.

Finally, we note that "New York does not recognize civil conspiracy to commit a tort as an independent cause of action." *Steir v. Schreiber,* 25 A.D.3d 519, 522, 810 N.Y.S.2d 431, 434 (1st Dep't 2006). Hence, even if plaintiff's allegations were read as an attempt to state, much less support, a claim under state law, he fails to articulate a viable claim.

As a result, summary judgment for all defendants must be granted on plaintiff's conspiracy claims, however they may be characterized.

#### f. *Extortion*

Finally, plaintiff asserts a claim for what he labels as "extortion." (Am.Compl.13). Extortion is defined under the federal criminal code as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Similarly, state law defines the crime as occurring when a person compels or induces another to deliver property to himself or a third person by instilling fear in the complainant that the actor will otherwise cause the complainant physical injury or cause damage to complainant's property, among other things. N.Y. Penal Law § 155.05(2)(e) (viii).

**\*14** However, the commission of a crime does not necessarily yield a civil claim, *see, e.g., Daniel v. Safir,* 135 F.Supp.2d 367, 376 (E.D.N.Y.2001); *Nat'l Trust Co. v. Gleason,* 77 N.Y. 400 (1879), and the law simply does not recognize a civil claim premised on tortious extortion. In any event, plaintiff fails to allege, much less offer evidence for, a claim that would yield civil liability by Ruddy de la Cruz based on plaintiff's stated theory. He has asserted that de la Cruz insisted on searching his premises for the saxophone and temporarily deprived him of his ability to depart. That does not yield a separate claim for the coerced surrender by Perez of his property to de la Cruz. There is no dispute that the saxophone in question belonged to Ruddy de la Cruz, and that Perez never surrendered the saxophone to de la Cruz; indeed, plaintiff has represented that he gave it away to the Salvation Army before de la Cruz ever came to claim it. If he means to refer to possible efforts by de la Cruz to collect on his state court judgment, he has offered no evidence of such efforts, and in any event a judgment creditor is entitled to pursue the seizure of property owned by the judgment debtor in order to

satisfy the judgment. *See Bud–Lee Ski Centers, Inc. v. State,* 116 A.D.2d 715, 716, 497 N.Y.S.2d 768, 770 (2d Dep't 1986).

Plaintiff offers no other factual basis on which to sustain a claim against any of the other defendants, and summary judgment is therefore appropriate as to all defendants.

#### g. *Plaintiff's Possible Rule 56(f) Application*

Plaintiff's motion papers, at least in their initial title, include a request to compel discovery. That said, the only item in his papers pertinent to discovery is a copy of a document labeled "Plaintiff's Request for Production of Documents, Admissions, Interrogatories to Defendant." (*See* Pl.'s Opp'n to Def. Summ. J. Mot. B). There is no indication when or whether that document had previously been served on defendants, and no explanation as to the relationship of any of the requests in that document to the issues posed by the summary-judgment motion.

If this submission were deemed, as plaintiff describes it, to be an effort to compel discovery, it would fail both because it came long after the close of the discovery period and because plaintiff fails to demonstrate the propriety of his discovery requests.

Even if we construe this aspect of plaintiff's submission liberally as a Rule 56(f) affidavit requesting additional discovery, plaintiff fails to justify such a request. A Rule 56(f) motion must specify "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,* 891 F.2d 414, 422 (2d Cir.1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985). Plaintiff does not meet these requirements.

**\*15** It is not clear from plaintiff's opposition papers which facts he might seek in discovery that would create a genuine issue of material fact. Other than a reference to his efforts to obtain from the MTA an identification of the purported "John de la Cruz," plaintiff does not reference any other facts pertinent to the discovery issue. It follows that he also does not show how such information might create a genuine issue of material fact, nor does he demonstrate what efforts he previously made to obtain those facts, or why those attempts were unsuccessful. Plaintiff simply cannot prevail on a Rule 56(f) motion.

*CONCLUSION*

For the reasons stated, we deny plaintiff's motion to amend the complaint and we recommend that defendants' motion for summary judgment be granted in part and denied in part. Specifically, we recommend that the court retain for trial only plaintiff's claims against Ruddy de la Cruz arising under the Fourth Amendment and common law for false arrest and unlawful search, and that all other claims, including all claims against Dolca de la Cruz and the "de la Cruz family," be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable J. Paul Oetken, Room 2101, 40 Foley Square, New York, New York, 10007, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 72, 6(a), 6(d).

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2641432

## Footnotes

1    The initial complaint named Ruddy and John De La Cruz as well as several other defendants whom this court dismissed *sua sponte.* (Compl., Jan. 12, 2009; Order of Partial Dismissal, dated Jan. 12, 2009 (docket no. 3)). Plaintiff moved to amend the complaint to add Dolca De La Cruz as a defendant through a letter to the court dated July 13, 2009. We granted that motion by endorsed order. (Endorsed Order, dated Oct. 27, 2009 (docket no. 23)). In his amended complaint, plaintiff also makes allegations against the State of New York, which he failed to list in the caption as a named defendant and which, in any case, was never served. (*See* Am. Compl. ¶¶ 61–62, 76).

2    The amended complaint includes two paragraphs numbered 15. We refer here to the first.

3    Plaintiff fails to identify which individuals are members of the association that he identifies as the "de la Cruz family." (*See generally* Am. Compl.). In the absence of any reference to other specified individuals, we interpret plaintiff's references to the "de la Cruz family" to include, jointly, defendants Ruddy and Dolca de la Cruz.

4    Indeed, as reflected in plaintiff's Rule 56 opposition papers, he sought identifying information from the MTA, which advised him that it had no employee named John de la Cruz. (Pl.'s Opp'n to Def. Summ. J. Mot. Ex. A).

5    This conclusion is not in tension with the observation that to survive summary judgment, the party with the burden of proof must offer evidence sufficient to demonstrate a triable issue as to the material facts. *See, e.g., Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir.2011). In seeking summary judgment, the moving party must at least specify what underlying facts he contends are beyond dispute and material to the other side's claims. In this case the parties appear to agree that there was an encounter as Ruddy de la Cruz sought unsuccessfully to recover his saxophone, but they disagree as to what occurred during that encounter. Defendants' motion papers, however, offer no hint of their version of the encounter.

6    In various contexts the courts have agreed that they may look beyond the immediately relevant court documents when seeking information as to the substance of a *pro se* plaintiff's case. *See, e.g., Omoniyi v.*

*Dep't of Homeland Sec.,* 2012 WL 892197, *5 (S.D.N.Y. Mar.13, 2012) (citing cases) (court may look to motion submissions by plaintiff in opposition to motion to dismiss as a supplement to his complaint). In addition, for *pro se* plaintiffs, courts have relied for summary-judgment motions on papers that did not constitute affidavits or declarations. *See, e .g., Robles v. Khahaifa,* 2012 WL 2401574, *7 (W.D.N.Y. June 25, 2012); *Jackson v. Ricks,* 2006 WL 2023570, *9 n. 10 (N.D.N.Y. July 18, 2006).

7    We note that plaintiff has alleged that "defendants"—not otherwise identified, but presumably members of the de la Cruz family who, at a minimum, we understand to include Ruddy and Dolca de la Cruz—had telephoned him and conveyed unspecified threats, and that someone in the de la Cruz family had mailed an unspecified package to plaintiff's mother in the Dominican Republic. (Am.Compl.¶ 15). These vague pleading allegations do not assist plaintiff's resistance to defendants' summary-judgment motion.

8    One of the preceding claims listed in the complaint was under section 1983 for "civil rights deprivation," but was asserted only against the defendant MTA officer. (Am.Compl.9). Since the unknown and unserved "John de la Cruz" was dismissed from the case, this claim is no longer operative.

---

**End of Document**                                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    12

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 110 of 140

Johnson v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 1175139
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Chester JOHNSON, Plaintiff,

v.

The CITY OF NEW YORK, Defendant.

16-CV-2879 (PKC)(LB)
|
Signed 03/05/2018

**Attorneys and Law Firms**

Chester Johnson, Brooklyn, NY, pro se.

David Allen Cooper, Cherie N. Brown, New York City Law Department, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

PAMELA K. CHEN, United States District Judge

\*1 Plaintiff Chester Johnson, appearing *pro se* and proceeding *in forma pauperis*, brings this action, pursuant to 42 U.S.C. §§ 1982, 1983, 1985(2) & (3), 1986, 2000a, and 2000aa, as well as New York law, against the City of New York, alleging that members of the New York City Police Department ("NYPD") seized his rare coins during his arrest on May 30, 2013, and failed to properly voucher them for safekeeping or otherwise return them to him. For the reasons stated herein, Defendant's motion to dismiss is granted.

## BACKGROUND

### I. Relevant Facts

On May 30, 2013, Plaintiff was arrested by NYPD Officer Ronald Sanchez after Plaintiff's estranged wife filed a report alleging that Plaintiff "placed a firearm to her head and threatened to kill her." (Complaint ("Compl."), Dkt. 2, at 3, 13-14.)[1],[2] Officer Sanchez searched Plaintiff's home and vehicles pursuant to search warrants issued on May 28, 2013. (*Id.* at 16-18.) Plaintiff states that on or about June 2, 2013, he became aware that his "rare numismatic/sentimental coins" were seized during the search. (*Id.* at 3, 21.) Plaintiff then made "[n]umerous [unsuccessful] attempts ... to immediately recover the sentimental heirloom[s]." (*Id.* at 3.)

On August 27, 2013, Plaintiff filed a Notice of Claim with the City of New York after Plaintiff's family was "inform[ed] ... [that] the requested property was no longer at the precinct but ha[d] been given to the New York City Police Property Clerk's Office." (*Id.* at 4, 29-32, 35-37.) In his Notice of Claim, Plaintiff stated that the missing coins were worth three million dollars. (*Id.* at 31.) According to Plaintiff, the Property Clerk informed him that the Clerk's Office was not in possession of Plaintiff's coins "and indicated no record existed of such personal property." (*Id.*) Plaintiff later learned, through discovery, that Defendant was, in fact, in possession of Plaintiff's coins and that they had been deposited at Chase Bank in alleged violation of the NYPD patrol guide, which states that "[c]urrency with numismatic/sentimental value will not be deposited in a bank." (*Id.* at 4-5, 61 (emphasis in original), 54-59 (Chase Bank receipts), 61-63 (NYPD Patrol Guide).)

Plaintiff also filed a complaint with the Civil Complaint Review Board sometime in 2013 against Officer Sanchez, alleging "theft or negligent handling of vouching complainant's personal property." (*Id.* at 33-34.) In addition to his vouchered coins, Plaintiff also alleges that there were "three special buffalo nickels in the collection" that were "not registered at all on any voucher." (*Id.* at 33 (emphasis omitted).) Plaintiff also stated that his coins were incorrectly marked as "forfeiture". (*Id.* at 34, 52.)

### II. Procedural History

\*2 On July 7, 2014, Plaintiff, proceeding *pro se*, filed a complaint against the "City of New York (NYPD)" in Kings County Civil Court, Index No. CV-039525-14/KI, alleging that his rare coins were seized by members of the NYPD during his arrest on May 30, 2013[3] in violation of the due process clauses of the Fifth and Fourteenth Amendments, as well as New York state law. (Dkt. 33-3 at 8, 12; Dkt. 33-4 at 3, 5-6.) Plaintiff filed a motion for summary judgment in that action on September 9, 2015, and it is currently pending. (Dkt. 33-2 at 3.)

On July 30, 2015, Plaintiff pled guilty to weapon possession in the third degree. (Compl. at 5.) Plaintiff is currently at liberty. (Dkt. 37.) On April 5, 2016, Plaintiff filed the instant federal complaint. (Dkt. 2.) On January 30, 2017, Defendant filed its motion to dismiss. (Dkt. 31.)

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 111 of 140

Johnson v. City of New York, Not Reported in Fed. Supp. (2018)

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

"In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). At the same time, pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

### A. Section 1983

Plaintiff has failed to state a claim for municipal liability against the City of New York under 42 U.S.C. § 1983.[4] A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-level employee solely on the basis of respondeat superior. *Smith v. City of New York*, 290 F. Supp. 2d 317, 321 (E.D.N.Y. 2003) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691, 694 (1978)). In order to establish the liability of such defendants in an action under § 1983 for unconstitutional acts by such employees, "a plaintiff must show that the violation of [his] constitutional rights resulted from a municipal custom or policy." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79 (1986)).

**\*3** "To state an unconstitutional deprivation of property claim under 42 U.S.C. Section 1983, however, it is not enough to have been deprived of property under color of state law. The property deprivation must also have been without due process of law, for it is only against such lawless deprivations that the Fourteenth Amendment protects." *Barrett v. United States*, 651 F. Supp. 615, 620 (S.D.N.Y. 1986) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)). "Deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under § 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." *David v. N.Y.P.D. 42nd Precinct Warrant Squad*, No. 02–cv–2581, 2004 WL 1878777, at \*5 (S.D.N.Y. Aug. 23, 2004) (collecting cases); *see also Davis v. N.Y.*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (summary order) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).[5] Here, Plaintiff has not claimed that any alleged deprivation of his property was authorized or the result of an established State procedure. Moreover, there exist adequate State post-deprivation remedies that Plaintiff could have used, such as, bringing a State law claim in the Court of Claims. *See Davis*, 311 Fed.Appx. at 400; *Wahid v. Mogelnicki*, No. 15–cv–2869, 2017 WL 2198960, at \*2 (E.D.N.Y. May 17, 2017) ("New York has adequate state post-deprivation remedies" that allow "a plaintiff [to] bring a state law claim for negligence, replevin or conversion with the Court of Claims"). Thus, Plaintiff's deprivation of property claim fails as a matter of law and is dismissed. *See, e.g., Wahid*, 2017 WL 2198960, at \*2 (dismissing plaintiff's deprivation of property claim, given New York's adequate post-deprivation remedies and plaintiff's failure to indicate that the deprivation was authorized or the result of an established State procedure); *Alloul v. City of N.Y.*, No. 09–cv–7726, 2010 WL 5297215, at \*6 (S.D.N.Y. Dec. 21, 2010) (dismissing plaintiff's deprivation of property interest claim based on the towing and subsequent destruction of plaintiff's car because "there [wa]s no evidence that either the towing or the destruction of [the] car was anything other than a 'random and unauthorized' act" and plaintiff failed to utilize a constitutionally adequate post-deprivation remedy, *i.e.*, pursue a State court action based on negligence or conversion).

Johnson v. City of New York, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 112 of 140

### B. Sections 1982, 1985, and 1986

Plaintiff's claims under sections 1982 and 1985(3) also fail as a matter of law because Plaintiff fails to allege that Defendant's actions were motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 829 (1983)); *see Gomez-Perez v. Potter,* 553 U.S. 474, 479 (2008) ("While § 1982 does not use the phrase 'discrimination based on race,' that is its plain meaning."); *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971) (holding that § 1985(3) is not "a general federal tort law" but "requir[es] intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"). [6], [7]

**\*4** In light of the dismissal of Plaintiff's section 1985 claim, Plaintiff's section 1986 claim is also dismissed because "a § 1986 claim must be predicated upon a valid § 1985 claim." *Mian,* 7 F.3d at 1088; *see also Dacey v. Dorsey,* 568 F.2d 275, 277 (2d Cir.), *cert. denied,* 436 U.S. 906 (1978).

### LEAVE TO AMEND

A *pro se* complaint should not be dismissed without the Court granting leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (internal brackets and quotation marks omitted). The Court, therefore, permits Plaintiff thirty (30) days in which to amend the Complaint. If Plaintiff elects to do so, he must comply with Fed. R. Civ. P. 8, which means that he must name proper defendant(s) and "must demonstrate [each] defendant's direct or personal involvement" in the actions that are allege have caused the deprivation his constitutional rights. *Victory v. Pataki,* 814 F.3d 47, 67 (2d Cir. 2016) (citing *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006)).

### CONCLUSION

For the reasons stated herein, the Complaint is dismissed. Plaintiff is granted thirty (30) days from the date of this Order to file an amended complaint. If Plaintiff does not file an amended complaint within thirty (30) days, judgment dismissing the case shall enter.

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2018 WL 1175139

### Footnotes

1   In deciding a motion to dismiss under Rule 12(b)(6), the court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993). The Court also must assume as true the allegations in the complaint. *Littlejohn v. City of N.Y.,* 795 F.3d 297, 306–07 (2d Cir. 2015).

2   All page numbers refer to the pagination generated by the CM/ECF system and not the document's internal pagination.

3   According to Plaintiff, Defendant "confessed" during a court conference "that every coin was not checked for any numismatic value despite such coins being in a safe and that Plaintiff's coins were deposited into the bank." (Compl. at 4.)

4   Defendant argues that this Court should abstain from exercising jurisdiction over this action "as a nearly identical action is currently pending in state court." (Dkt. 34 at 11-16); *see also Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800 (1976). After considering the balance of factors, the Court declines to so abstain. *See Colorado River*, 424 U.S. at 813 (holding that abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it") (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) (emphasis omitted)).

5    Under this standard, even if Plaintiff had identified Officer Sanchez or other individual officers as defendants, his claims would still fail.

6    Additionally, to state a claim under section 1985, Plaintiff must also demonstrate that "the constitutional injury resulted from a governmental policy, practice, or custom." *Davis v. Town of Hempstead,* 208 F.3d 202, 202 (2d Cir. 2000) (summary order) ("A county or municipality is liable under Section 1983 or Section 1985 only if the constitutional injury resulted from a governmental policy, practice, or custom.").

7    Although Plaintiff alleges a violation of section 1985(2), which "prohibits conspiracies intending to deter witnesses from participating in state or federal judicial proceedings", it is not relevant to this action. *Cooke v. Deschaine*, No. 3:16-CV-138 (SRU), 2016 WL 7256676, at *5 (D. Conn. Dec. 15, 2016), *adhered to on reconsideration,* No. 3:16-CV-138 (SRU), 2017 WL 1628400 (D. Conn. Apr. 28, 2017) (citing 42 U.S.C. § 1985(2)). This is similarly true of Plaintiff's claim under section 2000a, which "guarantees individuals full and equal enjoyment of places of public accommodation without race-based[, color, religion, or national origin] discrimination," *Gibbs–Alfano v. Burton,* 281 F.3d 12, 16 (2d Cir. 2002) (citing 41 U.S.C. § 2000a), and his claim under section 2000aa, which "prohibits the government from searching for and seizing work product materials and other documents possessed by an individual engaged in public communication," *United States v. Hunter*, 13 F. Supp. 2d 574, 582 (D. Vt. 1998) (citing 42 U.S.C. § 2000aa).

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 3835117
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Laura ROMAN–MALONE, Plaintiff,
v.
CITY OF NEW YORK, Sgt. Vega, Sgt. Polci,
Sgt. Peragine, Sgt. Cadet, Lt. Colella, Lt. Scala,
Capt. Simonetti, Capt. Cedric Raymond, in their
individual and professional Capacities, Defendants.

No. 11 Civ. 8560(PAC).
|
July 25, 2013.

OPINION & ORDER

Honorable PAUL A. CROTTY, District Judge.

**\*1** Laura Roman–Malone ("Plaintiff") brings this action against her former employer, the City of New York and various former supervisors and coworkers at the New York Police Department ("NYPD") alleging discrimination based on race, national origin, and gender, hostile work environment; and retaliation for engaging in protected activity. She alleges violations of 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, New York State Human Rights Law § 290, *et seq.* ("NYSHRL"), New York City Human Rights Law, Administrative Code § 8–101, *et. seq.* ("NYCHRL"), as well as the First Amendment, and due process and equal protection under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. Defendants move for dismissal pursuant to Fed.R.Civ.P. Rule 12(b)(6). For the reasons discussed below, Defendants' motion is GRANTED and Plaintiff's claims are dismissed.

BACKGROUND

Roman–Malone, a Hispanic and African American woman, is a former officer of the NYPD. After twenty years of service, Plaintiff retired on April 30, 2011. Plaintiff alleges that throughout her tenure at the 72nd Precinct in Brooklyn, New York, beginning in 2002, her supervisors issued her numerous command disciplines, assigned her to a prison van detail on July 30, 2007, transferred her to a foot post detail in

September 2009, and scolded and otherwise upbraided her on the basis of her gender, national origin, and race. Roman–Malone further asserts that such action was taken against her in retaliation for initiating a discrimination suit against the NYPD in 1999, filing an OEEO complaint against Captain Raymond, and making complaints against her supervisors. The 1999 suit resulted in a monetary settlement in Roman–Malone's favor. (Am.Compl.¶ 25.)

Plaintiff identifies several examples of allegedly discriminatory and retaliatory conduct. (1) In 2008, Sergeant Polci issued Plaintiff a command discipline, purportedly in retaliation for her complaints that Sergeant Polci ordered prisoners to be transported in an unsafe manner. (2) On July 10, 2009, Sergeant Vega "approached Plaintiff and began to berate Plaintiff and pointed her finger in Plaintiff's face" in connection with transferring a call to Sergeant Vega. (*Id.* ¶ 28.) After Roman–Malone complained to Captain Raymond about Sergeant Vega's "unprofessional conduct," on August 4, 2009, Sergeant Vega listed her in the Department's Violation Log and backdated the entry to July 10, 2009. (*Id.* ¶¶ 32, 31.) Roman–Malone filed another complaint against Sergeant Vega, this time for backdating the violation. (*Id.* ¶ 32.) Roman–Malone attempted to file a complaint with the OEEO on August 7, 2009, but it was not accepted. (*Id.* ¶ 35.) (3) On September 24, 2009, Lieutenant Scala "became irate and began to yell at Plaintiff" and later issued her a command discipline when she explained that she had directed two officers to chain several prisoners for transport. (*Id.* ¶ 36.) Roman–Malone was immediately placed on a foot post detail and reassigned to Squad C3. Plaintiff asserts that the assignment was retaliatory, since foot post is "usually given to rookies, less senior officers and officers who have been placed on some type of modification." (*Id .* ¶ 46.) On September 29, 2009, Plaintiff filed an OEEO complaint, after which the command discipline was dismissed. (*Id.* ¶ 49.) (4) Roman–Malone also alleges that she was disciplined more harshly than similarly situated officers. She compares herself, for example, to male Officer Mendez, who had not filed any complaints. In addition, Captain Simonetti removed Plaintiff from her tour after she was involved in a verbal altercation with a white female police officer. Both were issued command disciplines, but while Roman–Malone was placed on a prison van detail, the other officer was assigned to the detective squad. (5) Roman–Malone contends that Sergeant Cadet and Lieutenant Ortiz retaliated against her by informing her that she would not have a steady partner, did not deserve a steady partner, and warned her that she would get negative evaluations from her supervisors. (*Id .* ¶ 53.)

They also told younger officers that she was a bad influence. Roman–Malone further claims that another officer overhead Lieutenant Colella and Sergeant Pergaine say that they would make the last few months of her employment miserable. (*Id.* ¶ 54.) (6) On January 7, 2011, approximately three months before she retired, Roman–Malone was issued fast-tracked command discipline "for failing to take proper police action." (*Id.* ¶ 56.) The command discipline was dismissed after her complaint to the deputy inspector.

### DISCUSSION

**\*2** When considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and construe the complaint in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 572, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks omitted). The Court only "assess[es] the legal feasibility of the complaint"; it does not "assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways,* 662 F.3d 593, 596 (2d Cir.2011) (internal quotation marks omitted). To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (citation omitted).

#### I. Title VII Claims Are Time–Barred

A Title VII action must be brought within 90 days of a claimant's or his counsel's receipt of a right-to-sue letter. *See* 42 U.S.C. § 2000e–5(f)(1). A document is presumed to be received three days after its mailing. *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525 (2d Cir.1996). This presumption may be rebutted by "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail ...." *Id.* at 526.

Roman–Malone filed her complaint with the EEOC, which issued its right to sue letter on August 4, 2011. To be timely, the action had to be filed within ninety days of Plaintiff or her counsel's receipt of the letter. Both claim that they did not receive the EEOC's letter until August 25, 2011. In a pre-motion letter to the Court, counsel contends that the three-day presumption does not apply to him because the letter was improperly addressed, which resulted in significantly delaying its receipt. (Mashhadian Dec. Ex. B.) Assuming that these circumstances rebut the three-day presumption for Roman–Malone's counsel, they say nothing of Plaintiff's own receipt of the EEOC letter. Plaintiff asserts that she received the letter, dated August 4, 2011, on August 25, 2011, but fails to explain the three-week delay or provide any admissible evidence from which one can infer that the notice was either not mailed when dated or took longer than three days to reach her. Accordingly, the Court will apply the three-day presumption and assume that Roman–Malone received her letter on August 8, 2011. [1]

The ninety-day limitations period begins to run the earlier of the plaintiff's or counsel's receipt of the right-to-sue letter. *See Tiberio v. Allergy Asthma Immunology of Rochester,* 664 F.3d 35, 38 (2d Cir.2011) (per curiam) ("[T]he 90–day limitations period set forth in 42 U.S.C. § 2000e–5(f)(1) begins to run on the date that a right-to-sue letter is first received *either* by the claimant or by counsel, *whichever is earlier.*" ) (emphasis added). Plaintiff's presumed receipt is earlier than her counsel's. Ninety days of August 8, 2011 was November 6, 2011. Since the action was not commenced until November 23, 2011, it was more than two weeks late. Accordingly, Roman–Malone's Title VII claims are time-barred and dismissed. (Dkt. No. 1.) [2]

#### II. Statutes of Limitations for § 1981 and § 1983 Claims

**\*3** The statute of limitations is three years for § 1983 claims and four years for § 1981 claims. *See Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda,* 572 F.3d 93, 94 (2d Cir.2009) (§ 1983); *Lawson v. Rochester City Sch. Dist.,* 446 Fed. Appx. 327, 328 (2d Cir. Oct.28, 2011) (§ 1981). Since Plaintiff filed her complaint on November 23, 2011, any § 1983 claims can go back to November 23, 2008 and § 1981 claims to November 23, 2007. Any incidents prior to those dates are time-barred. The limitations periods exclude one incident—Plaintiff's assignment as a prison van operator on July 30, 2007. (Am.Compl.¶ 27.) [3] The "continuing violations exception," which permits recovery for discriminatory acts that occur outside the limitations period, does not apply, because Roman–Malone's assignment as a prison van operator is a discrete rather than continuing act. *See Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997) (noting that a job transfer or discontinuance of a

particular job assignment is a "discrete act" that cannot form the basis of a continuing violation claim).

### III. Liability Under 1983 for Violations of the First Amendment and Procedural Due Process

Section 1983 permits action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes,* 526 U.S. 687, 749 n. 9, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). Plaintiff tries to conceal the weaknesses of her claims, mainly the § 1983 claim, by concocting a blend of alleged violations of the First Amendment, and due process and equal protection under the Fourteenth Amendment, against multiple defendants. (Am.Compl.¶ 63.) On closer inspection, however, these claims fail.

To state a claim for a violation of procedural due process, Plaintiff must allege that she was deprived a protected interest in liberty or property, without adequate notice or opportunity to be heard. *Stewart v. City of New York,* 2012 U.S. Dist. LEXIS 96998, at *42, 2012 WL 2849779 (S.D.N.Y July 10, 2012). Roman–Malone fails to allege a loss of a protected property interest. She asserts that her assignment to foot post diminished her ability to earn overtime (thereby affecting other benefits) (Am.Compl.¶ 47), but overtime pay is not a constitutionally protected property interest. *See id* . at *43. Further, she has not pled inadequate process, i.e., an inadequate procedure for processing grievances. Thus, Plaintiff cannot sustain a § 1983 claim on the basis of a denial of procedural due process.

To state a First Amendment retaliation claim as a public employee, a plaintiff must allege that "(1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection existed between the speech and the adverse employment action "so that it can be said that his speech was a motivating factor in the determination." *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 382 (2d Cir.2003). The amended complaint fails at the first step of the analysis because Roman–Malone's complaint dealt only with her own grievances, and not matters of public import. Her complaints were "personal in nature and

generally related to her own situation." *Saulpaugh v. Monroe Cmty. Hosp.,* 4 F.3d 134, 143 (2d Cir.1993). Accordingly, her § 1983 claim is dismissed to the extent that it relies on a First Amendment violation. [4]

### IV. Liability Under § 1981 and § 1983 for Discrimination and Retaliation

**\*4** While Plaintiff's Title VII claims are dismissed as time-barred, discrimination and retaliation claims under § 1981 and § 1983 are analyzed under the Title VII burden-shifting framework. [5] Plaintiff does not distinguish her § 1981 and § 1983 claims on the one hand and her Title VII claims on the other. Accordingly, the Court will treat them together, except that her gender-based allegations under § 1981 are dismissed, since "[a]ny claim of gender discrimination [is] plainly outside the scope of § 1981, which deals with discrimination on the basis of race or alienage." *Walker v. N.Y. City Dep't of Corr.,* 2008 U.S. Dist. LEXIS 97109, at *31, 2008 WL 4974425 (S.D.N.Y. Nov. 18, 2008) (quoting *Hawkins v. 1115 Legal Serv. Care,* 163 F.3d 684, 693 (2d Cir.1998)). Individual liability under both § 1983 and § 1981 are predicated on the personal involvement of each defendant. *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 229 (2d Cir.2004). When analyzing Roman–Malone's claims, therefore, the Court considers the personal involvement of each defendant.

#### a. Discrimination Claims

In *McDonnell–Douglas Corp. v. Green,* the Supreme Court set forth a burden-shifting framework that governs discrimination cases. 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, Plaintiff must present facts to establish a prima facie case that she suffered from an adverse employment action due to membership in a protected class. Then, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its action. *Id.* Once the employer has satisfied its burden of production, the burden shifts back to the plaintiff to show that the proffered explanation is pretextual. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

To establish a prima facie case of discrimination, a claimant must show: "(1) he belonged to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003).

To survive a motion to dismiss, employment discrimination plaintiffs need not plead a prima facie case or satisfy the burden-shifting framework of *McDonnell Douglas* ....' *Swierkiewicz v. Sorema NA.,* 534 U.S. 506, 507, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Nevertheless, plaintiffs must plead enough facts to state a discrimination claim that is plausible on its face. *See Hedges v. Town of Madison,* 456 F. App'x 22, 23 (2d Cir.2012). A claim is properly dismissed if a plaintiff has failed to plead facts that would create an inference of an adverse employment action based upon membership in a protected class. *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir.2007).

i. Lack of Race, National Origin and Gender Animus

As an initial matter, Plaintiff did not oppose Defendants' contention that Sergeant Peragine, Sergeant Cadet, Lieutenant Colla, and Captain Raymond were not personally involved in any of the allegedly discriminatory actions taken against her. Since she failed to respond to Defendants' argument, she has abandoned any discrimination claims against these individuals. *See Lipton v. Cnty. of Orange,* 315 F.Supp.2d 434, 446 (S.D.N.Y.2004). Even if the Court were to examine these claims on the merits, they fail because Roman–Malone does not allege improper animus.

**\*5** With respect to national origin, there are no indications that the any of the defendants took action against Roman–Malone because she or her ancestors are from Puerto Rico. Defendants never commented about this fact; in fact, there are no circumstances that would permit the inference that they even knew of her place of origin.

The amended complaint similarly fails to raise an inference that any of the defendants' actions were motivated by Roman–Malone's gender. The sole incident on which she relies involved only Sergeant Vega. Plaintiff alleges that Sergeant Vega berated her in public, and "never treated similarly situated male officers in such a demeaning manner." (Am.Compl.¶ 28.) By itself, this does not plausibly support an inference of discriminatory animus. *See Sanders v. Grenadier Realty, Inc.,* 367 Fed. Appx. 173, 175 (2d Cir.2010) (noting that threadbare recitation that non-black residents were granted subsidies "stops short of the line between possibility and plausibility of entitlement to relief.").

With respect to racial discrimination, the complaint's only express reference to racial animus is that "under Defendant Captain Simonetti's direction and supervision plaintiff was issued a number of command disciplines and minor violations that were not given to similarly situated Caucasian officers." (Am.Compl.¶ 40.) The Amended Complaint fails to identify the other Caucasian employees or explain how they were similarly situated to Plaintiff. Her conclusory assertion that the command disciplines were motivated by discriminatory intent will not do.

Plaintiff alludes to racial animus in her pleading that Captain Simonetti placed her on a punitive prisoner van detail after Plaintiff had a verbal altercation with a white female officer. (Am.Compl.¶ 39.)[6] While Plaintiff was removed from her tour, the other unnamed officer was (at some unspecified time) assigned to the detective squad. (*Id.*) First, the amended complaint does not state that Captain Simonetti assigned the white officer to the detective squad or knew about the other's purportedly preferential treatment. Roman–Malone does not mention that she applied for the detective squad or expressed interest in that position and was passed over. Other than that Plaintiff was more "experienced," the complaint does not explain how or why the female white officer was similarly situated to her. The promotion of a single white officer at some unspecified point subsequent to the incident does not raise the inference that Roman–Malone's assignment was racially motivated. Since Plaintiff has failed to plausibly allege racial animus, her discrimination claims are dismissed.

ii. Failure to Plead an Adverse Employment Action

Plaintiff has also failed to meet the standard for an adverse employment action. For an employer's actions to be an "adverse employment action," there must be a "materially adverse change in the terms and conditions of ... employment ....'' *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000).

**\*6** Roman–Malone identifies the following as adverse employment actions: (1) Sergeant Vega "berate[d] Plaintiff and pointed her finger in Plaintiff's face in the presence of other police officers in the area ... and told Plaintiff to "grow up"; (2) Lieutenant Scala "became irate and began to yell at Plaintiff, in the presence of ... two officers and three prisoners, for having placed chains on the prisoners that were being transported"; (3) Plaintiff was reassigned as a prison van operator; (4) Sergeant Polci placed Plaintiff on a foot post detail on September 25, 2009; and (5) Plaintiff was issued an unspecified number of command disciplines. (P. Opp. at 12–13, Am. Compl. ¶¶ 27, 28, 36, 37, 39–41, 44–46).

As for the first two challenged actions, being chastised in public is not an adverse employment action. *Smalls v. Allstate Ins. Co.,* 396 F.Supp.2d 364, 371 (S.D.N.Y.2005) ("[B]eing yelled at [and] receiving unfair criticism ... do not rise to the level of adverse employment actions ... because they [do] not have a material impact on the terms and conditions of Plaintiff's employment."). Plaintiff's third challenged action of being reassigned as a prison van operator is time barred, and cannot be considered.

As to Plaintiff's fourth action of assignment to a foot post, strictly lateral transfers are not actionable if the new position is not inferior in terms of salary, work schedule or responsibilities. *See Mishk v. Destefano,* 5 F.Supp.2d 194, 202 (S.D.N.Y.1998). Plaintiff alleges that she was reassigned to Squad C3 on September 28, 2009, but does not provide any basis for comparison between her previous duties and her new ones in C3. (Am.Compl.¶ 46.) Roman–Malone does not contend that she lost any salary or suffered any "materially significant disadvantage" with respect to her transfer to Squad C3. *See Galabya,* 202 F.3d at 641. She does contend, however, that for three whole days from "September 25, 2009 ... [Plaintiff] was immediately placed on foot post by Sgt. Polci up until September 28, 2009." (Am.Compl.¶ 46.) She continues that "[s]aid assignment to foot post severally reduced Plaintiff's ability to earn overtime and therefore materially affected her pension and other benefits during the last couple of years prior to retirement in 2011." (*Id.* ¶ 37.) It is far from clear how a three-day assignment could materially affect her pension and overtime throughout "the last couple years" of her employment. Without more, the Court cannot credit this assertion of a loss of privileges.

The command disciplines that Roman–Malone received do not amount to adverse employment action. *See Jackson v. N.Y. Dep't of Labor,* 709 F.Supp.2d 218, 228 (S.D.N.Y.2010) (noting that disciplinary notices alone do not are insufficient when they do not result in other action). Plaintiff does not allege that she suffered any subsequent employment consequences, such as assignment to another position, suspension, or loss of vacation days. Indeed, command disciplines are frequently attached as dogs without teeth. In fact, after she filed a complaint with OEEO, the plaintiff alleges that "the command discipline charges were dismissed." (Am.Compl.¶ 50.) *See Barounis v. New York City Police Dep't,* 2012 U.S. Dist. LEXIS 176477, at *44–45, 2012 WL 6194190 (S.D.N.Y. Dec. 12, 2012) (holding that being placed in the minor violations log, being yelled at in front of co-workers, and being issued a command discipline do

not amount to adverse employment action as such measures did not result in penalties, or a loss of benefits or time); *Rothenberger v. New York City Police Dep't,* 2008 U.S. Dist. LEXIS 113124, at *12 (E.D.N.Y. Mar. 27, 2008) (finding that plaintiff did not suffer adverse employment action from four command disciplines and a letter of re-instruction where plaintiff conceded that no action was taken or penalty imposed as a result); *accord Anemone v. Metro Transp. Auth.,* 410 F.Supp.2d 255 (S.D.N.Y.2006).

### b. Retaliation Claims

**\*7** To establish a prima facie retaliation claim, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir.2005) (quotation marks omitted).

"Protected activity" refers to action taken in opposition to statutorily prohibited discrimination or participation in any Title VII proceeding. *Deravin v. Kerik,* 335 F.3d 195, 204 (2d Cir.2003); *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000) (citing 42 U.S.C. § 2000e–3).[7] In the context of Title VII's anti-retaliatory provisions, "adverse employment action" applies broadly to encompass retaliatory acts that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines,* 593 F.3d 159, 162 (2d Cir.2010). This standard requires a lesser showing than "adverse employment action" in the anti-discrimination context, and is not limited to actions that affect the terms and conditions of employment. *Id.* at 165.

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000).

The Court need not consider whether the acts of which Roman–Malone complains are retaliatory adverse employment actions because Plaintiff failed to plausibly allege that she participated in protected activity that was causally related to any action taken against her.

There is no dispute that Roman–Malone has sufficiently pled that she engaged in protected activity by initiating a federal civil action against the NYPD in July 1999 for its alleged discrimination and retaliation and by filing an OEEO complaint against Captain Raymond when he was at the 75th Precinct for making derogatory comments to female police officers. (Am.Compl.¶¶ 26, 35.) Nonetheless, these acts do not support a claim of retaliation because they are not plausibly connected to any adverse acts. The lawsuit in 1999, which occurred years prior to any of the acts of which Roman–Malone complains, is too temporally remote to suggest an improper motive. *See Kirkweg v. N.Y.C. Dep't of Educ.,* 2013 U.S. Dist. LEXIS 55042, at *15, 2013 WL 1651710 (S.D.N.Y. Apr. 4, 2013) ("When a plaintiff relies on temporal proximity to demonstrate causation, the proximity must be 'very close.' "). As for Plaintiff's complaint to OEEO concerning Captain Raymond, she does not provide a date for her complaint. Plaintiff does, however, allude to filing the OEEO complaint when they were both at the 75th Precinct; she transferred to the 72n<sup>d</sup> Precinct in 2002. (Am.Compl.¶¶ 21, 26.) To the extent she complained prior to 2002, as with Roman–Malone's 1999 lawsuit, this incident is too attenuated from any command discipline that Captain Raymond may have issued seven years later, on September 24, 2009, to support retaliatory intent. The Amended Complaint does not suggest that Captain Raymond, D.I. Pintos, and Lieutenant Scala issued a command discipline for reasons other than their dissatisfaction with Roman–Malone's handling of the chaining of the prisoners. (Am.Compl.¶¶ 36, 37, 44, 45.) Roman–Malone states that she complained "in the past" that Lieutenant Scala "verbally abused three female employees." (*Id.* ¶ 42.) Even assuming that she complained that the scolding was gender-related, she does not provide an approximate time frame for her complaint, and thus cannot rely on timing to support an inference of causation.

**\*8** While Plaintiff alleges other complaints to her supervisors as examples of protected activities, she has failed to demonstrate that she complained about any statutorily-prohibited, unlawful discriminatory employment practice. *Cruz,* 202 F.3d at 566; *Clemente v. N.Y. State Div. of Parole,* 684 F.Supp.2d 366, 373 (S.D.N.Y.2010). Plaintiff contends that Sergeant Vega reported her in the Violation Log on August 5, 2009 (backdated to July 10, 2009) in retaliation for complaining to a commanding officer about Sergeant Vega's unprofessional conduct. (Am.Compl.¶¶ 28–31.) Such "unprofessional conduct" is not statutorily prohibited. Even if Sergeant Vega's shouting at Plaintiff subjectively sounded

in discrimination because Sergeant Vega "never treated similarly situated male officers in such a demeaning manner," the complaint fails to allege that she alerted the defendants to the fact that her complaints of "unprofessionalism" were based on discriminatory conduct. *See Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir.1998) (requiring as implicit in protected activity that employer "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by" anti-discrimination laws). Roman–Malone also alleges that Sergeant Polci issued her a command discipline for complaining to Inspector Pintos that Sergeant Polci ordered the transportation of prisoners in an "unsafe manner." (Am.Compl.¶ 41.) Plaintiff may have complained about Sergeant Polci's failure to do his job, but not about discrimination. Plaintiff refers to other "complaints to supervisors" but does not discuss the subject of her grievances. (*See id.* ¶¶ 43, 45, 48, 49.) These vague allegations are insufficient to form the basis of a retaliation claim.

Plaintiff asserts that on August 7, 2009, she filed a complaint with the OEEO of the NYPD, which the OEEO refused to accept. (Am.Compl.¶ 35.) As with her other allegations, Roman–Malone does not explain what she complained about. To the extent that her complaint related to Sergeant Vega's backdating of her entry in the Violation Log, the underlying conduct was not discriminatory. Because Roman–Malone has not demonstrated that she participated in protected activity that caused the acts of which she complains, her retaliation claims are dismissed.

### V. Hostile Work Environment Claims and Constructive Discharge

Individuals may be liable under § 1981 and § 1983 in their individual capacities for certain discriminatory acts that give rise to a hostile work environment. *Patterson,* 375 F.3d at 226. To establish a hostile work environment, a plaintiff must show that she was subjected to hostility because of her membership in a protected class. *Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 240 (2d Cir.2007). As discussed above, Plaintiff has failed to raise a plausible inference that she was treated differently on account of her national origin, race, or gender.

**\*9** Plaintiff contends that as a result of a hostile work environment, she was "forced to retire and constructively discharged from the NYPD in 201 1." (Am.Compl.¶ 24.) "Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff 'must show working conditions so intolerable that a reasonable person

would have felt compelled to resign.' " *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 725 (2d Cir.2010). "This standard is higher than the standard for establishing a hostile work environment." *Id.* Since Roman–Malone has failed to sufficiently plead that she was exposed to a hostile work environment, her constructive discharge claims fail as well.

### VI. State and New York City Claims

When "all federal-law claims are eliminated before trial, [a] balance of [judicial economy, convenience, fairness, and comity considerations] ... will point towards declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Since Plaintiff's federal claims (Title VII, § 1981, and § 1983) are dismissed, the Court declines to exercise jurisdiction over her NYSHRL and NYCHRL claims.

### VII. Leave to Amend

Leave to file an amended complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. *Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Roman–Malone has requested leave to amend the complaint. [8] The Court grants leave to replead her claims, except for the following three claims which are dismissed with prejudice: (1) Title VII claim because it is barred by Plaintiff's failure to initiate suit within the required 90 days of receiving her EEOC right-to-sue letter; (2) any allegations arising out of Plaintiff's "prison van operator" assignment on July 30, 2007 because they are time-barred under the relevant statutes; (3) her gender-based allegations under § 1981 because they are not cognizable under that statute.

### CONCLUSION

Defendants' motion to dismiss is granted. The court grants leave to amend the complaint within THIRTY (30) DAYS of this Order. The Clerk of Court is directed to terminate the motion at docket number 24.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 3835117

---

## Footnotes

1    Since August 7, 2011 was a Sunday, the Court presumes receipt on Monday August 8, 2011. This difference is not material, however, because this action did not begin until November 23, 2011, more than two weeks late.

2    Title VII applies to employers, and not to individual supervisors. *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 608 n. 8 (2d Cir.2006). Plaintiff's Title VII claims against the individual defendants are dismissed as well because there is no individual liability.

3    Plaintiff asserts that Sgt. Polci wrongfully issued her a command discipline "on or about 2008" without specifying a precise date. (Am.Compl.¶ 41.) This incident falls within the four-year limitations period for Plaintiff's § 1981 claim. For the purposes of analyzing the § 1983 claim, at the pleading stage, the Court will construe this ambiguity in Plaintiff's favor and assume that this act falls within the three-year period.

4    Plaintiff appears to assert a § 1983 claim against the City and "individual defendants" both in their individual and official capacities, and fails to specify whether she is suing the City under § 1981. (Am.Compl.¶¶ 1, 12–19, 60–65.) In any event, Roman–Malone has not adequately alleged a governmental policy or custom, specifically, that the City sanctioned or ordered the challenged acts or that there was a "widespread practice ...

so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (internal quotation marks omitted). Setting aside Plaintiff's conclusory assertion that the defendants "act[ed] under color of state and local law, custom and usage," she has pled no facts from which one can infer that the acts of which she complains were the result of a policy or custom, as opposed to isolated acts of its employees. (Am.Compl.¶¶ 10, 63.) Accordingly, any § 1981 and § 1983 claims against the City and the individual defendants in their official capacities are dismissed. *See Patterson v. Cnty. of Oneida,* 375 F.3d 206, 226 (2d Cir.2004) (§ 1981); *Monnell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1987) ( § 1983).

5    Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens ..." 42 U.S.C. § 1981(a). "This section ... outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson, 375 F.3d at 224 (2d Cir.2004).* Discrimination and retaliation claims under § 1981 are treated co-extensively with their Title VII counterparts. *Croswell v. Triborough Bridge & Tunnel Auth.,* 2007 U.S. Dist. LEXIS 58343, at *24 n. 17, 2007 WL 2274252 (S.D.N.Y. Aug. 7, 2007) (citing *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 105 (2d Cir.2001) (§ 1981 retaliation claim)); *see Ruiz v. Cnty. of Rockland,* 609 F.3d 486, 491 (2d Cir.2010) (§ 1981 discrimination claim). A § 1983 claim that arises out of discrimination may be grounded in the Equal Protection Clause, and is analyzed under the Title VII framework. *Annis v. Cnty. of Westchester,* 136 F.3d 239, 245 (2d Cir.1998). By contrast, claims of retaliation may not be actionable as equal protection claims under § 1983. *Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir.1995).

6    Plaintiff does not provide a date for this assignment. It is unclear if this is the same "prison van operator" assignment that Plaintiff was given on July 30, 2007 allegedly in retaliation for filing her lawsuit against the NYPD in July 1999. (Am.Compl.¶¶ 25, 27.) If so, it is time-barred under the various statutes of limitations.

7    42 U.S.C. § 2000e–3(a) provides, in relevant part, that it "shall be an unlawful employment practice for an employer to discriminate against any of his employees ..., because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

    An "unlawful employment practice," in turn, is defined as an action by an employer that discriminates against any individual with respect to compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex or national origin. 42 U.S.C. § 2000–2(a)(1).

8    Plaintiff referred the Court to a proposed amended complaint attached as "Exhibit C," which appears on ECF to be an unrelated document. (Dkt. No. 29.)

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 1878777

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Lennox DAVID a/k/a Robert Rome

Rowe a/k/a Renwick Williams, Plaintiff,

v.

N.Y.P.D. 42ND PRECINCT WARRANT SQUAD,

Detective Perez # 25509, and Partner, Defendants.

No. 02 Civ. 2581(DC).

|

Aug. 23, 2004.

**Attorneys and Law Firms**

Lennox David, Pike County Correctional Facility, Lords Valley, Pennsylvania, Plaintiff pro se.

Michael A. Cardozo, Corporation Counsel of the City of New York, By: Jordan M. Smith, New York, New York, for Defendants.

*MEMORANDUM DECISION*

CHIN, J.

**\*1** *Pro se* plaintiff Lennox David [1] brings this action for compensatory and punitive damages pursuant to 42 U.S.C. § 1983 against certain New York City Police Officers and the New York Police Department 42nd Precinct Warrant Squad. David alleges that his constitutional rights were violated because he was deprived of his right of access to the courts. David principally alleges that defendants lost his legal papers, thereby interfering with his right of access to the courts, and deprived him of his property without due process in violation of the Fourteenth Amendment.

Both parties moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, defendants' motion is granted and this complaint is dismissed. Plaintiff's motion is denied.

*BACKGROUND*

A. *The Facts* [2]

1. *Plaintiff's Loss of Property*

On the morning of December 29, 2000, David was an inmate on Rikers Island in the custody of the New York City Department of Corrections. David had been imprisoned on Rikers Island for approximately eight months and was due to be released that day. [3] (David Dep. at 20; Def. 56.1 Statement ¶ 1). While waiting in a holding area to be released, David learned that he was going to be transferred to the New York City Police Department's 42nd Precinct because of an outstanding warrant from the Bronx. [4] (David Dep. at 20; Def. 56.1 Statement ¶ 6). David's property was placed in a white canvas bag and sent with him to the 42nd Precinct. (Def. 56.1 Statement ¶¶ 7, 10).

David's property consisted of various personal items and clothing, a medical file, a U.S. District Court *pro se* manual, photocopies of legal cases, and "all of his legal work." (*Id.* ¶ 8; David Dep. at 23–24). David's "legal work" included (1) information in connection with a pending lawsuit, *David v. Murray,* discussed below, and (2) approximately six pages of legal materials relating to a planned class action suit that included, among other things, the names and addresses of his witnesses. [5] (David Dep. at 25–26). The bag containing David's property was not labeled, although some of the legal papers inside the bag listed various names used by him. (Def. 56.1 Statement ¶ 9).

David contends that the bag remained in his view in the front of the cell while he was waiting at the 42nd Precinct to go to Bronx Criminal Court in connection with the outstanding warrant. (*Id.* ¶ 12; David Dep. at 43). While preparing to leave the 42nd Precinct, David informed two members of the 42nd Precinct Warrant Squad that his property was with him and was told that one of the officers would bring his bag to the van that was transporting David to court. (David Dep. at 45). David identified the two police officers as "Perez" and "Pete Finley." (*Id.*). As they were boarding the van, Finley informed David that he should not worry about his property and that it would still be there "even if its [sic] three years from now." (*Id.* at 45–46). David requested a receipt but was never provided with one. (*Id.*).

**\*2** At approximately 10:00 a.m. on December 29, 2000, David was taken to Bronx Criminal Court. (Def. 56.1 Statement ¶ 11). His property was not transported with him to court. (*Id.* ¶ 15). While Perez and Finley waited with David

for his case to be called, David again asked about his property. The two officers informed David that they would bring it to him and that, in the alternative, he could return to the 42nd Precinct after the judge released him to retrieve his property. (David Dep. at 47).

David was remanded on December 29, 2000, as a result of the outstanding warrant. (Def. 56.1 Statement ¶ 16). During the detention hearing, David attempted one last time to speak to Perez and Finley about his property, but was unsuccessful. [6] David continued to ask anyone who would listen about the location of his property, and while at least one court officer attempted to assist him in retrieving his property, it was to no avail. (*Id.* at 48–50).

David later attempted to locate the address of the 42nd Precinct from various sources and individuals at the Department of Corrections facility to which he was remanded. (David Dep. at 50–51; Def. 56.1 Statement ¶ 18). David had access to telephones and presumably, mail, but did not ask anyone outside the jail for assistance in locating the address for the 42nd Precinct. (Def. 56.1 Statement ¶¶ 18–21).

2. *David v. Murray, No. 00 Civ. 7169(HB)*
The legal papers that were lost included papers from an on-going case filed on September 22, 2000, and assigned to Judge Baer, *David v. Murray,* No. 00 Civ. 7169(HB). David alleged in his complaint before Judge Baer that he had been unjustly placed in a segregated housing unit while in custody at the Otis Bantum Correctional Center on Rikers Island on June 5, 1998. (David Dep. at 30). According to the docket sheet, on October 13, 2000, Judge Baer sent David an order informing him that he had until January 10, 2001, to serve defendants or the case would be dismissed. On February 28, 2001, Judge Baer dismissed the case because defendants had not been served. On March 16, 2001, in response to his request, the *Pro Se* Office informed David that copies of the materials in his case were available to him for fifty cents per page. (David Dep. at 38; Smith Decl. Ex. E). On September 20, 2001, David appealed this order of dismissal, and on February 5, 2002, the record on appeal was certified and transmitted to the Second Circuit Court of Appeals. [7]

B. *Prior Proceedings*
David commenced this action by submitting his complaint to the Court's *Pro Se* Office. Plaintiff was granted in forma pauperis status and the complaint was filed on April 4, 2002.

The complaint purports to assert a claim under 42 U.S.C. § 1983. David sues the 42nd Precinct Bronx Warrant Squad, Detective Perez, and "Partner." During the course of the case, without formally seeking leave to amend his complaint, David added the City of New York as a defendant in his papers. The gravamen of his claim appears to be that the police officers refused to give him a receipt for his property and his property was never returned to him. He seeks $15 million in damages for the "inconven[ie]nce" the Warrant Squad put him through. (Compl. Part IV and signature page).

**\*3** The parties engaged in discovery and these motions followed. I consider all the materials received to date, including several letter submissions by plaintiff.

*DISCUSSION*

David does not, in his complaint, deposition testimony, or other submissions, articulate the legal claims that he is asserting or the legal theories on which he is proceeding. Given the most liberal construction, his complaint appears to assert two federal claims that he could be cognizable under § 1983:(1) interference with his right of access to the courts, and (2) deprivation of his personal property without due process of law.

Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56 on three grounds. First, they argue that plaintiff's loss of legal papers does not deprive him of access to the courts. Second, defendants contend that plaintiff was not deprived of his property without due process of law. Third, defendants argue that the N.Y.P.D. 42nd Precinct Bronx Warrant Squad is not a suable entity and that even if plaintiff were allowed to amend his complaint to name the City of New York as a defendant, plaintiff has failed to state a cause of action against the municipality. Plaintiff argues that he is entitled to summary judgment based on discovery violations by defendants and because defendants do not dispute that plaintiff's property was lost. (Pl. Answer to Summ. J. of Opposing Mot. at 4).

A. *Summary Judgment Standard*
The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 585–87 (1986). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). To create an issue for trial, there must be sufficient evidence in the record to support a jury verdict in the nonmoving party's favor. *See id.* Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* 477 U.S. at 248; *see Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991). A factual issue is genuine if it can reasonably be resolved in favor of either party. *Anderson,* 477 U.S. at 250. A fact is material if it can affect the outcome of the action based on the governing law. *Id.* at 248.

The party seeking summary judgment must demonstrate the absence of genuine issues of material fact, and then the nonmoving party must set forth facts proving that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–24 (1986). To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. The nonmoving party "must present concrete particulars and cannot succeed with purely conclusory allegations." *Fitch v. R.J. Reynolds Tobacco Co .,* 675 F.Supp. 133, 136 (S.D.N.Y.1987) (internal quotations omitted). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson,* 477 U .S. at 249–50. As the Court held in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted). A plaintiff must provide the court with some basis to believe that his "version of relevant events is not fanciful." *Christian Dior–New York, Inc. v. Koret, Inc.,* 792 F.2d 34, 38 (2d Cir.1986) (internal quotations omitted).

### B. *Denial of Access to the Courts*

**\*4** To state a claim under § 1983, a plaintiff must allege that: (1) the defendants acted under "color of state law" (2) to deprive the plaintiff of a right, privilege, or immunity guaranteed by the Constitution or the laws of the United States. *Shabazz v. Vacco,* No. 97 Civ. 3761(DC), 1998 WL 901737, at \*2 (S.D.N.Y. Dec. 28, 1998) (citing *Pitchell v. Callan,* 13 F.3d 545, 547–58 (2d Cir.1994)); *see also Am. Mfrs. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999).

An inmate has a constitutional right to reasonable access to the courts. *See Dugar v. Coughlin,* 613 F.Supp. 849, 853 (S.D.N.Y.1985). Government officials must provide prisoners " 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." ' *Lewis v. Casey,* 518 U.S. 343, 351 (1996) (quoting *Bounds v. Smith,* 430 U.S. 817, 825 (1977)). Depriving a prisoner of his *pro se* work product can constitute a violation of an inmate's right to reasonable access to the courts. *Morello v. James,* 810 F.2d 344, 346–347 (2d Cir.1987) (improper to dismiss claim based in part on "theft and removal" of *pro se* brief and research).

To prevail on a claim for denial of access to the courts in a lost property case, a plaintiff must demonstrate that (1) defendants deliberately and maliciously deprived him of legal materials, and (2) he suffered injury by showing that the alleged deprivation resulted in an actual impairment of a legal claim. *Lewis,* 518 U.S. at 351; *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995); *Duff v. Coughlin,* 794 F.Supp. 521, 524 (S.D.N.Y.1992).

Here, David contends that defendants deprived him of his legal materials, thereby interfering with his right of access to the courts in two respects: (1) he was unable to serve the defendants in *David v. Murray,* and (2) his materials in the class action were lost. I address each claim in turn.

In *David v. Murray,* Judge Baer dismissed David's claim without prejudice on February 28, 2001, for the failure of the plaintiff to comply with Fed. R. Civ. Proc. Rule 4(m). (Smith Decl. Ex. D). No reasonable juror could find, however, that this dismissal resulted from the loss of David's personal property. David's lawsuit had been pending for three months when his papers were lost, and he did not effectuate service even when he still had the property. In addition, he had more than three additional months to re-file the action after it was dismissed by Judge Baer before the statute of limitations expired, but he did not do so.[8] Moreover, David does not allege that there were any documents or papers in the lost bag that would have assisted him with service in that case or that the loss of legal papers had any effect on service in that case. In this case, David has submitted papers, been deposed, and corresponded extensively with the Court, and he has yet to proffer any evidence of any actual injury as a result of the loss of his legal materials. *See Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) ("plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim") (internal citations

and quotations omitted); *Santiago v. N.Y.C. Dep't of Corr.,* No. 97 Civ. 9190(LBS) (GWG), 2003 WL 1563773 *5–6 (S.D.N.Y. March 6, 2003) ("evidence showing that the loss of the materials harmed his ability to pursue an actual legal claim" is required in response to a summary judgement motion); *Thomas v. Thomas,* No. 97 Civ. 4541(LAP), 2000 WL 307391 *3 (S.D .N.Y. March 23, 2000) (same).

 **\*5** David also alleged in his deposition testimony that he lost approximately six pages of materials relating to an apparent class action suit.[9] (David Dep. at 24–27). David had unsuccessfully attempted to file this claim at some point before December 29, 2000. (David Dep. at 25, 27). Here, David must show that the loss of his bag "hindered his efforts to pursue a legal claim." *Lewis,* 518 U.S. at 351. David has not alleged or put forth any evidence to suggest that his efforts to pursue this legal claim were "hindered" in any way. *See Thomas,* 2000 WL 307391 at *3. Admittedly, having to recreate a complaint that was lost at the hands of defendants is an inconvenience, but this alone cannot be said to violate a constitutional right. *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995). Indeed, in his complaint plaintiff complained only of "inconven[ie]nce."

On the evidence presented, I conclude that no reasonable jury could find for plaintiff on this issue. Accordingly, plaintiff's claims for interference with his right of access to the courts must be dismissed.

C. *Deprivation of Property Without Due Process*
Deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under § 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a "random and unauthorized" act. *See Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990) (adequate post-deprivation remedy is defense to § 1983 claim based on "random and unauthorized" deprivation but not to claim "where the deprivation complained of results from the operation of established state procedures"); *Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (intentional deprivation of property not actionable under § 1983 if meaningful post-deprivation remedy available under state law); *Parratt v. Taylor,* 451 U.S. 527, 542–43 (1981) (negligent deprivation of property not actionable under § 1983 where post-deprivation remedy available), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986); *Dove v. City of New York,* No. 99 Civ. 3020(DC), 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000) (dismissing § 1983 claim because New York

provided an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion); *Mejia v. New York City Dep't of Corrections,* No. 96 Civ. 2306(JG), 1999 WL 138306, at *4 (E.D.N.Y. Mar. 5, 1999) (dismissing prisoner's § 1983 claim for "random and unauthorized" deprivation of property).

David filed a Notice of Claim against the City on March 19, 2001, but he never filed a lawsuit in state court. (Smith Decl. Ex. C; David Dep. at 58–59). David has not indicated why he did not pursue a lawsuit against the City nor has he alleged that this available post-deprivation remedy is not adequate. In addition, David also has not shown that the deprivation of his property was the result of an established state procedure rather than a "random and unauthorized" act—or failure to act—by officers Perez and Finley. Because New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion, David's § 1983 due process claim for the loss of his property is dismissed as well. *See Dove,* 2000 WL 342682, at *3; *Cook v. City of New York,* 607 F.Supp. 702, 704 (S.D.N.Y.1985).

D. *Claims Against the Municipality*
 **\*6** Even assuming David has asserted viable legal claims, the complaint must be dismissed as to the Warrant Squad and the City (even assuming the City is a defendant). The Warrant Squad is part of the Police Department, which is an agency of the City that has not been granted the authority to sue or be sued. *See* New York City Charter §§ 396, 431–40; *East Coast Novelty Co. v. New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992). The claims against the Warrant Squad and the Police Department must be dismissed on this basis alone. Plaintiff apparently realized this error and changed the caption in all papers and correspondence in this case to add the City of New York as a defendant.

Municipalities can be held liable under § 1983 for deprivations of federal rights or violations of the Constitution. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478 (1986); *Monell v. City of New York Dept. of Social Servs.,* 436 U.S. 658, 691 (1978). An obvious precondition to a successful § 1983 claim against a municipality is an underlying constitutional violation. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Higgins v. City of Johnstown,* 20 F.Supp.2d 422, 427 n. 4 (N.D.N .Y.1998). As discussed above, David has failed to present evidence from which a jury could find an underlying constitutional injury. Even assuming there is an underlying constitutional injury, he has not presented evidence of a pattern, practice, or custom or

other basis that would support *Monell* liability on the part of the City. Accordingly, no municipal liability exists and the claims against the City of New York are dismissed.

E. *Plaintiff's Cross–Motion*

David asserts in his cross-motion that he is entitled to summary judgment because "defendant's [sic] have not yet given plaintiff just the two detectives that he asked for in the discovery and is trying to take advantage of plaintiff because plaintiff is doing his case *pro se."* (Pl. Answer to Summ. J. of Opposing Mot. at 3). On April 22, 2004, I denied a request by David to compel defendants to comply with certain discovery requests because defendants were in compliance. In addition, David had the opportunity to depose any of the officers identified in defendants' discovery and he has not done so. *See* Court's Order of Sept. 12, 2003, directing plaintiff to serve proper notice if he wished to take depositions.

In further support of his motion for summary judgment against defendants, David asserts that defendants "didn't denied [sic] that they took plaintiff property so that makes the plaintiff allegation true and this is a genuine issue to be tried in the court of law." (*Id.* at 4). As stated herein, even assuming defendants were responsible for the loss of David's property, David's complaint must be dismissed, for no viable claim has been presented as a matter of law.

*CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment pursuant to Rule 56 is granted and plaintiff's cross-motion is denied. The complaint is dismissed with prejudice. The Clerk of the Court shall enter judgment accordingly and close the case.

**\*7** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 1878777

---

**Footnotes**

1    Over time, David has used several aliases, including Mark Andrews, Augustine Vicenteno, Winford Barrett, Milton Bradley, Brian Kolter, David Lennox, Ben Hill, Wilford Jones, Wilfred Jones, Mark S. Lee, Lee Mark, Peter Merlin, Willie McGee, Horis L. Ortiz, Andrew Horten, Boris Horten, Mitch Terry, Robert Torres, Renwick Williams, B. Williams, and Rurick L. Williams. (David Dep. at 9–11). The Summons in this case uses Robert Rome Rowe, a/k/a Lennox David, a/k/a Renwick Williams, but Lennox David is apparently plaintiff's birth name. (David Dep. at 9–10). Accordingly, plaintiff will be referred to herein as David.

2    While both parties moved for summary judgment, the facts are construed in the light most favorable to David, who is *pro se*. Where indicated, certain facts are taken from defendants' Local Civil Rule 56.1 Statement of Undisputed Facts. Plaintiff was served with defendants' moving papers, including Local Rule 56.2 Notice to *Pro Se* Litigants Opposing Motion for Summary Judgment. Plaintiff did not controvert any of defendants' version of the facts. Accordingly, these facts are admitted for purposes of this motion. *Almonte v. Florio,* No. 02 Civ. 6722(SAS), 2004 WL 60306 at \*1 (S.D.N.Y. Jan. 13, 2004). Certain facts are also drawn from David's deposition, the transcript of which was submitted by defendants.

3    David was incarcerated under the name Renwick Williams. (Def. 56.1 Statement ¶ 3).

4    The outstanding arrest warrant was under the name Robert Rome. (David Dep. at 62–63).

5    The six pages of materials that David lost had been returned to him by an unspecified "court" because of defects in filing. (David Dep. at 24–27).

6    David's frustration with what he perceived as a lack of concern on the part of Perez and Finley is evident from his deposition testimony about this last exchange: "I was trying to speak to the officers and the court officers

were trying to pull me back and they didn't want to hear, and I dropped myself on the floor, because I wanted to find out, I wanted my property. I wasn't going anywhere without my property." (David Dep. at 48).

7   Although over two and a half years have passed, it appears from the docket sheet that this appeal is still pending.

8   Section 1983 claims have a three-year statute of limitations. *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002). The incident giving rise to David's claim in front of Judge Baer allegedly took place on June 5, 1998. (David Dep. at 30).

9   David was seeking to file a class action lawsuit with other inmates against C–73 (a cell block on Rikers Island) and a female officer who "endangered me and a couple guys that I knew where I slept at. She took the phones and said that I was the one that caused the problem former [sic] to take the phone, which I don't know why people like to pick on me." (David Dep. at 25–26).

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 128 of 140

Winters v. New York, Not Reported in Fed. Supp. (2020)

2020 WL 6586364
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Michael WINTERS, Plaintiff,
v.
The State of NEW YORK; Governor
Andrew Cuomo, Defendants.

20-CV-8128 (LLS)
|
Signed 11/09/2020

**Attorneys and Law Firms**

Michael Winters, Peekskill, NY, pro se.

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

**\*1** Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights. He also seeks to bring criminal charges against Defendants under 18 U.S.C. §§ 241, 242. By order dated October 14, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* ("IFP"). For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)

(internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

The following allegations are taken from the complaint. On October 8, 2019, Yorktown Police Officers "surrounded" and "raided" Plaintiff's grandmother's house, where Plaintiff was staying at the time. (ECF No. 2, at 5.) The officers were enforcing an "Extreme Risk Protection Order"[1] ("ERPO") that was issued for Plaintiff "based on an affidavit that was self-notarized by two of [Plaintiff's] cousins," who are attorneys.[2] (*Id.*) The affidavits "contained a completely fabricated story" which was "nothing short of libel" and "conspiracy." (*Id.*) Several pages of the affidavits were "clearly ghostwritten" by Plaintiff's cousins and were not written by "the other people who signed them." (*Id.*) A search warrant was "somehow granted" and the police confiscated "prop guns and air rifles and only one actual firearm." (*Id.*) Plaintiff maintains that the affidavit "had no evidence of an imminent threat, unless having to explain the US Constitution to a lawyer ([his] cousin Christen) in a text message counts as one." (*Id.*)

**\*2** Plaintiff states that he was never charged with a crime, detained in jail, or interrogated. "Nothing was properly investigated and there was no trial before [his] Constitutional

Winters v. New York, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 129 of 140

Rights were violated and suspended and [he] was essentially made a victim of armed robbery by the State." (*Id.*)

Plaintiff asserts that by signing the ERPO law, Governor Cuomo "knowingly and willingly" deprived New Yorkers of their constitutional rights and "facilitated the use of tyrannical force by the State to ensure such deprivation." (*Id.* at 6.) The law "allows for the circumvention, misuse, and abuse of the judicial system" in a way that "will surely disproportionately affect other minorities and the poor." [3] (*Id.*) Plaintiff further argues that the ERPO law does not require "hard evidence," but rather "allows for hearsay, conjecture, and complete, malicious lies." (*Id.*) And, "[l]ike many other gun laws, this one blatantly defies federal laws and tries to supersede them," which is unconstitutional. (*Id.*)

Plaintiff alleges that execution of the ERPO caused him extreme emotional distress and anxiety that led to stomach problems and put him "into a situation where [he] wound up in a car crash in the snow on [his] way to file a previous damages claim and totaled the vehicle." (*Id.*)

He seeks repeal of the ERPO law, "immediate return" of his "property," criminal charges against his cousins and Governor Cuomo, and $17.88 million in money damages. (*Id.*)

## DISCUSSION

### A. Criminal claims

The Court must dismiss Plaintiff's claims arising under 18 U.S.C. §§ 241, 242, which are federal criminal statutes. Plaintiff cannot initiate the arrest and prosecution of an individual in this Court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct prosecuting attorneys to initiate a criminal proceeding against Defendant, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses any claims Plaintiff may be asserting in which he seeks criminal charges for failure to state a claim. *See* 28 U.S.C § 1915(e)(2)(B)(ii).

### B. Section 1983 claims against the State of New York and Governor Cuomo

Because Plaintiff alleges that Defendants have violated his federal constitutional rights, the Court construes his remaining claims as arising under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

The Court must dismiss Plaintiff's § 1983 claims against the State of New York and Governor Cuomo because these claims are barred by the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366.

**\*3** New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's § 1983 claims against the State of New York and Governor Cuomo are therefore barred by the Eleventh Amendment and are dismissed.

### C. Fourth Amendment claims

The Court construes Plaintiff's allegations that police officers raided his home and confiscated his property as arising under the Fourth Amendment. The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable," *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal citation omitted), but searches and seizures conducted "pursuant to a warrant issued by a neutral magistrate [are] presumed reasonable because such warrants may issue only upon a showing of probable cause," *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007); *see also Messerschmidt v.*

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 130 of 140

Winters v. New York, Not Reported in Fed. Supp. (2020)

*Millender*, 565 U.S. 535, 546 (2012) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]");*Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) ("[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause."). A plaintiff may overcome this presumption if he can "show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994).

Here, Plaintiff states that the police had a warrant, but he alleges that the warrant was obtained based on false statements. Beyond conclusory assertions, however, Plaintiff does not allege any facts suggesting that information contained in the affidavits or other underlying documents was false or that the warrant was based on such false information. Plaintiff does not plausibly plead facts to overcome the presumption that the officers' search of her residence and seizure of property pursuant to the search warrant was reasonable. Moreover, Plaintiff fails to name as a defendant any individual state actor who was personally involved in any alleged violation of this rights under the Fourth Amendment.

In any amended complaint, Plaintiff must provide the names of the individual officers involved in the search and seizure and allege facts suggesting that the officers' reliance on the warrant was not reasonable because it was facially invalid, or it was procured through fraud or other misrepresentations. Unsupported assertions that the police officers "illegally" or "unlawfully" searched Plaintiff's residence and seized property are not sufficient to state a claim.

### D. Deprivation of property

**\*4** Plaintiff also seeks the return of property confiscated by the police. A claim for deprivation of property is not cognizable in federal court if the state courts provide a remedy for the deprivation of that property. [4] *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) (citations omitted). New York provides such an adequate post-deprivation remedy. *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983). Because Plaintiff does not

allege facts suggesting that his remedy under state law is in any way inadequate or inappropriate, *see Butler v. Castro*, 896 F.2d 698, 700-04 (2d Cir. 1990), his claim with respect to the seized property must be dismissed.

### E. Second Amendment claim

The Court construes Plaintiff's allegations as asserting a claim that the ERPO violates his right to bear arms under the Second Amendment. The Court further construes his request for "repeal" of the ERPO as seeking prospective injunctive relief under the *Ex Parte Young* exception to sovereign immunity. 209 U.S. 123 (1908).

In analyzing challenges under the Second Amendment, courts in the Second Circuit engage in a two-step inquiry. First, the court must consider "whether the restriction burdens conduct protected by the Second Amendment." *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015) ("NYRP"). Second, if the challenged restriction does burden Second Amendment rights, the court "must determine and apply the appropriate level of scrutiny." *Id.*

The Second Amendment protects "only the sorts of weapons that are (1) in common use and (2) typically possessed by law-abiding citizens for lawful purposes." *Id.* at 254-55 (internal quotation marks and citations omitted). In determining the level of scrutiny that applies, courts look to two factors: (1) "how close the law comes to the core of the Second Amendment Right and (2) the severity of the law's burden on the right." (*Id.* at 258) (internal quotation marks and citations omitted); "[H]eightened scrutiny is triggered *only* by those restrictions that ... operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for ... lawful purposes." *Id.* at 259 (internal quotation marks and citations omitted, second ellipses in original); *see Abekassis v. New York City, New York*, ECF 1:19-CV-8004, 20, 2020 WL 4570594, at \*9 (S.D.N.Y. Aug. 7, 2020) (holding that good moral character factors in the New York State gun licensing scheme "do not implicate the Second Amendment's core, because they deny such possession only to persons who are found not to be "law-abiding and responsible") (appeal filed Sept. 8, 2020).

If the court determines that heightened scrutiny is appropriate in a Second Amendment case, intermediate scrutiny applies and the key question is whether the challenged statute is "substantially related to the achievement of an important governmental interest." *Id.* at 261 (internal quotation marks and citations omitted). It is generally beyond question that

**Winters v. New York, Not Reported in Fed. Supp. (2020)**

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 131 of 140

states have "substantial, indeed compelling, governmental interests in public safety and crime prevention." *Id.* (internal quotation marks and citation omitted).

**\*5** Should Plaintiff wish to pursue a constitutional challenge to the ERPO under the Second Amendment, he must reallege his claims in any amended complaint and name as defendants the state official or officials who he seeks to enjoin from violating his Second Amendment rights.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid § 1983 claim, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

First, Plaintiff must name as the defendants in the caption [5] and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint. [6] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses

for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

**a)** give the names and titles of all relevant persons;

**b)** describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

**c)** give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

**d)** give the location where each relevant event occurred;

**e)** describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

**f)** state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

**\*6** Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief.

**Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.**

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 20-CV-8128 (LLS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 132 of 140

Winters v. New York, Not Reported in Fed. Supp. (2020)

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____                    ____ Civ. _____ ( ____ )

_(In the space above enter the full name(s) of the plaintiff(s).)_

**AMENDED**
**COMPLAINT**

-against-

_____

_____

_____                    Jury Trial:  ☐ Yes    ☐ No

_____                                     _(check one)_

_____

_____

_____

_____

_(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)_

**I.       Parties in this complaint:**

A.       List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff       Name _____
                Street Address _____
                County, City _____
                State & Zip Code _____
                Telephone Number _____

B.       List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

_Rev. 12/2009_                                                                        1

---

Defendant No. 1       Name _____
                      Street Address _____
                      County, City _____
                      State & Zip Code _____
                      Telephone Number _____

Defendant No. 2       Name _____
                      Street Address _____
                      County, City _____
                      State & Zip Code _____
                      Telephone Number _____

Defendant No. 3       Name _____
                      Street Address _____
                      County, City _____
                      State & Zip Code _____
                      Telephone Number _____

Defendant No. 4       Name _____
                      Street Address _____
                      County, City _____
                      State & Zip Code _____
                      Telephone Number _____

**II.       Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.       What is the basis for federal court jurisdiction? _(check all that apply)_

         ☐ Federal Questions                    ☐ Diversity of Citizenship

B.       If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____

         _____

         _____

C.       If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

         Plaintiff(s) state(s) of citizenship _____

         Defendant(s) state(s) of citizenship _____

_Rev. 12/2009_                                              2

**III.       Statement of Claim:**

State as briefly as possible the _facts_ of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.       Where did the events giving rise to your claim(s) occur? _____

B.       What date and approximate time did the events giving rise to your claim(s) occur? _____

         _____

C.       Facts: _____

| What happened to you? | _____ |
|---|---|
| Who did what? | _____ |
| Was anyone else involved? | _____ |
| Who else saw what happened? | _____ |

**IV.       Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____

_____

_____

_____

_Rev. 12/2009_                                              3

Winters v. New York, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 133 of 140

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are
seeking, and the basis for such compensation. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ____ day of _____, 20___.

        Signature of Plaintiff    _____

        Mailing Address          _____

                                 _____

        Telephone Number         _____

        Fax Number (if you have one)  _____

Note:    All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners
         must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering
this complaint to prison authorities to be mailed to the Pro Se Office of the United States District Court for
the Southern District of New York.

        Signature of Plaintiff:   _____

        Inmate Number             _____

*Rev. 12/2000*                    *4*

**All Citations**

Not Reported in Fed. Supp., 2020 WL 6586364

## Footnotes

1    An ERPO is a "court-issued order of protection prohibiting a person from purchasing, possessing or
     attempting to purchase or possess a firearm, rifle or shotgun." N.Y. C.P.L.R. § 6340(1).

2    Plaintiff further alleges that his cousins had the police visit the house twice the week before the raid and then
     twice the week after the raid. Plaintiff alleges that "nothing was confiscated" and asserts that this "constitutes
     harassment." (*Id.*)

3    Plaintiff fails to allege any facts suggesting that the law was enforced against him on the basis of his race
     or any other protected characteristic.

4    A deprivation of property without due process claim under the Fourteenth Amendment is distinct from
     the unlawful seizure of property claim under the Fourth Amendment claim discussed above. The Fourth
     Amendment deals with the seizure of the property itself, rather than the defendants' later refusal to return the
     property, which would fall under Fourteenth Amendment. *See Fox v. Van Oosterum*, 176 F.3d 342, 350-51
     (2d Cir. 1999) (citing *Soldal v. Cook County, Ill.*, 506 U.S. 56, 70 (1992)).

5    The caption is located on the front page of the complaint. Each individual defendant must be named in the
     caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the
     caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list"

on the first page of the Amended Complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

6      For example, a defendant may be identified as: "Yorktown Police Officer John Doe #1, searched Plaintiff's home at 3 p.m. on November 4, 2020."

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 135 of 140

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 138 of 140

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:24-cv-00067-AMN-ML   Document 7   Filed 04/19/24   Page 139 of 140

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

### CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:24-cv-00067-AMN-ML    Document 7    Filed 04/19/24    Page 140 of 140

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.